Paul F. Sorrentino (SBN 126348)
John P. Nordlund (SBN 286153)
JACKSON LEWIS LLP
225 Broadway, Suite 200
San Diego, CA 92101
Tel: 619.573.4900
Fax: 619.573.4901
SorrentinoP@jacksonlewis.com
John.Nordlund@jacksonlewis.com

Attorneys for Defendant/Counter-Claimant
JB COLLISION SERVICES, INC. dba
J&M AUTOBODY dba EL DORADO COLLISION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE SHERWIN-WILLIAMS COMPANY, f/k/a SHERWIN-WILLIAMS AUTOMOTIVE FINISHES CORP., <br><br> Plaintiff, <br><br> vs. <br><br> JB COLLISION SERVICES, INC., dba J&M AUTOBODY, and d/b/a EL DORADO COLLISION; and DOES 1 through 10, inclusive, <br><br> Defendant. | Case No.: 13-CV-1946 LAB (WVG) <br><br> **COUNTER-CLAIMANT JB COLLISION SERVICES, INC.'S COUNTERCLAIM FOR DAMAGES and DEMAND FOR JURY** |
| JB COLLISION SERVICES, INC., dba J&M AUTOBODY, and d/b/a EL DORADO COLLISION, <br><br> Counter-Claimant, <br><br> vs. <br><br> THE SHERWIN-WILLIAMS COMPANY, f/k/a SHERWIN-WILLIAMS AUTOMOTIVE FINISHES CORP, <br><br> Counter-Defendant, | |

1

COUNTERCLAIM FOR DAMAGES
CASE NO. 13-CV-1946 LAB (WVG)

# COUNTERCLAIM

Counter-Claimant JB COLLISION SERVICES, INC. dba J&M AUTOBODY dba EL DORADO COLLISION ("JB Collision") hereby submits the present Counterclaim against Counter-Defendant THE SHERWIN-WILLIAMS COMPANY, f/k/a SHERWIN-WILLIAMS AUTOMOTIVE FINISHES CORP. ("Sherwin-Williams") pursuant to Federal Rule of Civil Procedure 13, as follows:

## I.

## PARTIES

1. JB Collision is a California corporation with its principal places of business in San Diego and Poway, California. JB Collision is engaged in the business of repairing and painting automobiles.

2. Sherwin-Williams is an Ohio corporation with its principal place of business in Ohio. Sherwin-Williams is engaged in the business of selling automotive paints, coatings, and related products.

## II.

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction and supplemental jurisdiction of these Counterclaims pursuant to 28 U.S.C. §§ 1332(a)(1), 1367(a). The amount of controversy in this case exceeds a sum of $75,000.00. Further, the Parties are completely diverse; Sherwin-Williams is an Ohio corporation with a principal place of business in Ohio, and JB Collision is a California corporation with a principal place of business in California. These Counterclaims arise out of the same transactions and/or occurrences that are the subject of Sherwin-Williams's Complaint against JB Collision, and do not destroy the aforementioned diversity jurisdiction of this Court.

4. Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391(a) as set forth in Sherwin-Williams's Complaint.

///

///

## III.

## FACTUAL ALLEGATIONS

5. On or about September 10, 2008, JB Collision and Sherwin-Williams entered into a supply agreement ("Agreement") under which JB Collision agreed to exclusively purchase automotive paint and related products from Sherwin-Williams until the net amount of JB Collision's purchases of products from Sherwin-Williams equaled One-Million, Three-Hundred Thousand Dollars ($1,300,000.00) ("Term").

6. As part of the Agreement, Sherwin-Williams agreed to provide JB Collision with an advance payment in the amount of Two-Hundred Seventy-Five Thousand Dollars ($275,000.00) ("Advance"). A true and correct copy of said Agreement is attached hereto as Exhibit "1" and incorporated herein by reference.

7. Additionally, Sherwin-Williams agreed to provide JB Collision with a discount of products purchased from Sherwin-Williams.

8. Under the Agreement's terms, if JB Collision terminated the Agreement before the completion of the Term, Sherwin-Williams was entitled to a "Refund" limited to the value of the product of the value of the Advance times the quotient of the value of the Term minus the Value of Net Sales from the effective date of the Agreement divided by the value of the Term (Refund = $275,000.00 X (($1,300,000.00 − Net Sales) / 1,300,000.00))).

9. During discussions between JB Collision and Sherwin-Williams regarding entering the Agreement, Sherwin-Williams made numerous representations regarding the quality of its products, which induced JB Collision to enter into the Agreement.

10. Throughout the Term of the Agreement, JB Collision received numerous customer complaints and had to re-paint and/or re-repair many customer vehicles due to the low quality of Sherwin-Williams paint and related products, and continues to receive complaints requiring them to honor their warranty.

11. Also throughout the Term of the Agreement, JB Collision made numerous complaints to Sherwin-Williams regarding the quality of Sherwin-Williams's products,

3
COUNTERCLAIM FOR DAMAGES
CASE NO. 13-CV-1946 LAB (WVG)

and the difficulty JB Collision was having due to the complications caused by Sherwin-Williams's products' poor quality. Sherwin-Williams failed to cure the defects in product quality. In at least one instance since the termination of the Agreement, Sherwin-Williams agreed that JB Collision should re-repair a customer vehicle using a competitor's products.

12. In or about January or February 2013, as a result of the numerous customer complaints and necessary re-repairs and re-paintings of customer vehicles due to the low quality of Sherwin-Williams's products, and failure of Sherwin-Williams to effectively correct the quality issues, JB Collision discontinued its exclusive purchase of Sherwin-Williams products, after satisfying the $1.3 million purchase/sales requirement.

13. On information and belief, through interactions with various other local members of the automotive repair and painting industry, JB Collision understands that Sherwin-Williams has received numerous similar complaints regarding the quality of its paint and related products from other local members of the automotive repair and painting industry.

14. On or about February 28, 2013, Sherwin-Williams sent JB Collision a letter regarding JB Collision's discontinued exclusive use of Sherwin-Williams products.

15. Despite the fact that JB Collision satisfied the purchase/sales obligation, Sherwin-Williams has filed a suit seeking monies ignoring JB Collision's substantial performance and satisfaction of the terms of the Agreement.

16. As a result of Sherwin-Williams's material breach of the Agreement and poor quality products, JB Collision has suffered economic loss. JB Collision has spent, and will continue to spend, numerous labor hours and supplies correcting defects caused by Sherwin-Williams products. Over the course of the last five (5) years, JB Collision painted and/or repaired approximately two-hundred (200) vehicles per month using Sherwin-Williams paint and related products. Due to Sherwin-Williams's poor quality and defective products, JB Collision has incurred and will incur labor and expenses for re-painting and/or re-repairing customer vehicles including, but not limited to, the cost of

customers' car rental, and such tasks as de-trimming, stripping, primer, re-painting, correcting damage to existing body work, and detailing the customer vehicles previously repaired or painted with Sherwin-Williams paint and related products. The average cost to re-paint and/or re-repair each vehicle painted and/or repaired with Sherwin-Williams products costs approximately $2,000.00. Therefore, JB Collision estimates that the total amount of its potential costs that will be incurred from re-painting and/or re-repairing customer vehicles that were serviced using Sherwin-Williams paint and related products is approximately $20,000,000.00, without consideration for the value of lost good will and reputation.

17. JB Collision has also lost business and/or good will due to customers becoming dissatisfied with JB Collision's work due to defects caused by Sherwin-Williams products. These economic damages are in an amount to be proven at trial.

18. Additionally, JB Collision has suffered harm to its reputation amongst its customer base and within the local automotive painting and repair industry, which has led and will continue to lead to a further loss of business and good will, due to defects caused by Sherwin-Williams products.

### FIRST CAUSE OF ACTION

**(Breach of Contract)**

19. JB Collision incorporates by reference all allegations in Paragraphs 1 through 18 of the Counterclaim as if fully set forth herein.

20. As set forth above, Sherwin-Williams owed contractual obligations to JB Collision pursuant to the Agreement.

21. Sherwin-Williams materially breached the Agreement by supplying JB Collision with inferior paint products, which caused defects in JB Collision's repairs and paintings of its customers' vehicles.

22. JB Collision informed Sherwin-Williams of the defects of Sherwin-Williams's paint products to give Sherwin-Williams an opportunity to cure said defect. Despite the notice, Sherwin-Williams continuously failed to adequately perform under

5

the Agreement by providing JB Collision with poor quality products and services.

23. As a direct and proximate result of Sherwin-Williams's breach of the Agreement, JB Collision has suffered damages including, without limitation, the costs of repeat repairs or paint jobs on JB Collision customer vehicles made necessary by the defective Sherwin-Williams products, the lost profits caused by lost business due to loss of customers caused by Sherwin-Williams's defective products, the value of the damage to JB Collision's professional reputation in the community and amongst its customers, and the amount of attorneys' fees and costs incurred in defending against Sherwin-Williams's meritless claims against JB Collision, all in amounts to be proven at trial.

## SECOND CAUSE OF ACTION

**(Breach of Implied Warranties of Merchantability and Fitness)**

24. JB Collision incorporates by reference all allegations in Paragraphs 1 through 23 of the Counterclaim as if fully set forth herein.

25. JB Collision is in the business of automotive repairs and painting. Sherwin-Williams is in the business of selling automotive paint and related products.

26. Sherwin-Williams contracted to sell JB Collision superior quality paint and related products for use in JB Collision's paint and repair of automobiles.

27. Sherwin-Williams's products were not of the quality generally acceptable in the automotive repair and painting trade and/or did not conform to the quality established by the Parties' prior dealings and/or usage of trade.

28. JB Collision took reasonable steps to notify Sherwin-Williams within a reasonable time that Sherwin-Williams's paint and related products did not have the expected quality.

29. As a direct and proximate result of Sherwin-Williams's defective paint and related products, JB Collision has suffered damages including, without limitation, the costs of repeat repairs or paint jobs on JB Collision customer vehicles made necessary by the defective Sherwin-Williams products, the lost profits caused by lost business due to loss of customers caused by Sherwin-Williams's defective products, the value of the

6

COUNTERCLAIM FOR DAMAGES
CASE NO. 13-CV-1946 LAB (WVG)

damage to JB Collision's professional reputation in the community and amongst its customers, and the amount of attorneys' fees and costs incurred in defending against Sherwin-Williams's meritless claims against JB Collision, all in amounts to be proven at trial.

## THIRD CAUSE OF ACTION

### (Concealment/Fraud)

30. JB Collision incorporates by reference all allegations in Paragraphs 1 through 29 of the Counterclaim as if fully set forth herein.

31. Sherwin-Williams concealed information regarding the quality of its paint and related products, which harmed JB Collision financially and with regard to JB Collision's reputation.

32. Sherwin-Williams contracted to sell JB Collision paint and related products for use in JB Collision's paint and repair of automobiles.

33. Sherwin-Williams intentionally failed to disclose the poor quality and defects of Sherwin-Williams's paint and related products to JB Collision. JB Collision did not know of the low quality and defects in Sherwin-Williams's paint and related products. Sherwin-Williams acted with intent to deceive JB Collision.

34. JB Collision was induced to and reasonably relied on Sherwin-Williams's deceptive representations regarding the quality of Sherwin-Williams's paint and related product.

35. As a direct and proximate result of Sherwin-Williams's deceit and concealment, JB Collision was induced to and purchased Sherwin-Williams's defective paint and related products. In purchasing and using Sherwin-Williams's defective paint and related products, JB Collision has suffered damages including, without limitation, the costs of repeat repairs or paint jobs on JB Collision customer vehicles made necessary by the defective Sherwin-Williams products, the lost profits caused by lost business due to loss of customers caused by Sherwin-Williams's defective products, the value of the damage to JB Collision's professional community and amongst its customers, and the

amount of attorneys' fees and costs incurred in defending against Sherwin-Williams's meritless claims against JB Collision, all in amounts to be proven at trial.

## FOURTH CAUSE OF ACTION

### (Intentional Misrepresentation)

36. JB Collision incorporates by reference all allegations in Paragraphs 1 through 35 of the Counterclaim as if fully set forth herein.

37. Sherwin-Williams intentionally and falsely represented the quality of its paint and related products, which harmed JB Collision financially and with regard to JB Collision's reputation.

38. Sherwin-Williams contracted to sell JB Collision paint and related products for use in JB Collision's paint and repair of automobiles.

39. Sherwin-Williams made representations regarding the quality of Sherwin-Williams's paint and related products to JB Collision. Sherwin-Williams knew its representations regarding the quality of its paint and related products were false at the time it made the representations, and/or made the representations with a reckless regard for the truth of their truth.

40. Sherwin-Williams intended that JB Collision rely on its misrepresentations.

41. JB Collision was induced to and reasonably relied on Sherwin-Williams's false representations regarding the quality of Sherwin-Williams's paint and related product.

42. As a direct and proximate result of Sherwin-Williams's false representations, JB Collision was induced to and purchased Sherwin-Williams's defective paint and related products. In purchasing and using Sherwin-Williams's defective paint and related products, JB Collision has suffered damages including, without limitation, the costs of repeat repairs or paint jobs on JB Collision customer vehicles made necessary by the defective Sherwin-Williams products, the lost profits caused by lost business due to loss of customers caused by Sherwin-Williams's defective products, the value of the damage to JB Collision's professional reputation in the community and amongst its

8
COUNTERCLAIM FOR DAMAGES
CASE NO. 13-CV-1946 LAB (WVG)

customers, and the amount of attorneys' fees and costs incurred in defending against Sherwin-Williams's meritless claims against JB Collision, all in amounts to be proven at trial.

## FIFTH CAUSE OF ACTION

### (Negligent Misrepresentation)

43. JB Collision incorporates by reference all allegations in Paragraphs 1 through 42 of the Counterclaim as if fully set forth herein.

44. Sherwin-Williams negligently misrepresented the quality of its paint and related products, which harmed JB Collision financially and with regard to JB Collision's reputation.

45. Sherwin-Williams contracted to sell JB Collision paint and related products for use in JB Collision's paint and repair of automobiles.

46. Sherwin-Williams made false representations regarding the quality of Sherwin-Williams's paint and related products to JB Collision. Sherwin-Williams had no reasonable basis for believing its representations regarding the quality of its paint and related products were true at the time it made the representations.

47. Sherwin-Williams intended that JB Collision rely on its misrepresentations.

48. JB Collision was induced to and reasonably relied on Sherwin-Williams's false representations regarding the quality of Sherwin-Williams's paint and related products.

49. As a direct and proximate result of Sherwin-Williams's false representations, JB Collision purchased Sherwin-Williams's defective paint and related products. In purchasing and using Sherwin-Williams's defective paint and related products, JB Collision has suffered damages including, without limitation, the costs of repeat repair or paint jobs on JB Collision customer vehicles made necessary by the defective Sherwin-Williams products, the lost profits caused by lost business due to loss of customers caused by Sherwin-Williams's defective products, the value of the damage to JB Collision's professional reputation in the community and amongst its customers,

and the amount of attorneys' fees and costs incurred in defending against Sherwin-Williams's meritless claims against JB Collision, all in amounts to be proven at trial.

### SIXTH CAUSE OF ACTION

**(Breach of Covenant of Good Faith and Fair Dealing)**

50. JB Collision incorporates by reference all allegations in Paragraphs 1 through 49 of the Counterclaim as if fully set forth herein.

51. Sherwin-Williams contracted to sell JB Collision paint and related products for use in JB Collisions paint and repair of automobiles.

52. JB Collision materially performed all or substantially all of JB Collision's duties under the Agreement.

53. All conditions required for Sherwin-Williams's full performance under the Agreement had occurred.

54. Sherwin-Williams unfairly interfered with JB Collisions right to receive the benefit of the Agreement by making false representations regarding the quality of Sherwin-Williams's paint and related products to JB Collision, and by supplying JB Collision with defective products.

55. As a direct and proximate result of Sherwin-Williams's false representations and supply of defective products, JB Collision has suffered damages including, without limitation, the costs of repeat repair or paint jobs on JB Collision customer vehicles made necessary by the defective Sherwin-Williams products, the lost profits caused by lost business due to loss of customers caused by Sherwin-Williams's defective products, the value of the damage to JB Collision's professional reputation in the community and amongst its customers, and the amount of attorneys' fees and costs incurred in defending against Sherwin-Williams's meritless claims against JB Collision, all in amounts to be proven at trial.

### SEVENTH CAUSE OF ACTION

**(Unjust Enrichment)**

56. JB Collision incorporates by reference all allegations in Paragraphs 1

10
COUNTERCLAIM FOR DAMAGES
CASE NO. 13-CV-1946 LAB (WVG)

through 55 of the Counterclaim as if fully set forth herein.

57. As part of the Agreement, JB Collision agreed to exclusively purchase, and paid for, Sherwin-Williams paint and related products. JB Collision reasonably expected quality paint and related products in consideration for the Agreement.

58. Sherwin-Williams acknowledged, accepted, and derived benefits from the Agreement and JB Collision's performance under the Agreement.

59. JB Collision did indeed purchase and use Sherwin-Williams products, which were poor quality and defective. JB Collision was harmed by Sherwin-Williams financially, professionally, and in its reputation.

60. It is inequitable for Sherwin-Williams to enjoy the benefit of the payments pursuant to the Agreement, while JB Collision did not derive the expected benefit, and has and will suffer actual harm from the Sherwin-Williams products.

**WHEREFORE,** JB Collision respectfully requests that the Court grant judgment in its favor against Sherwin-Williams in an amount to be proved at trial, plus interest at the legal rate, attorneys' fees, costs of suit, and all other relief as the Court deems just and proper.

## JURY DEMAND

JB Collision demands trial by jury on all issues so triable.

DATED: October 1, 2013          JACKSON LEWIS LLP


By: /s/Paul F. Sorrentino
**Paul F. Sorrentino, Esq.**
SorrentinoP@jacksonlewis.com
**John P. Nordlund, Esq.**
John.Nordlund@jacksonlewis.com
Attorneys for COUNTER-CLAIMANT
JB COLLISION SERVICES, INC. dba
J&M AUTOBODY dba EL DORADO
COLLISION

4822-8395-3430, v. 1

# EXHIBIT 1

# SUPPLY AGREEMENT

"Sherwin-Williams"
Sherwin-Williams Automotive
Finishes Corp.
4440 Warrensville Center Road
Warrensville Heights, Ohio 44128
Attn: Controller

"Customer"
JB Collision Services, Inc.
dba J & M Autobody & dba El Dorado Collision
9126 Dowdy Drive
Poway, CA 92126
Attn: _John Tyczki_

"Effective Date": _September 10_, 2008

1. **TERM OF AGREEMENT**. The term of this Supply Agreement ("Agreement") shall commence on the Effective Date and shall continue until the date upon which Net Sales (as hereinafter defined) is equal to One Million Three Hundred Thousand and 00/100 Dollars ($1,300,000.00) (the "Term"). For the purposes of this Agreement, "Net Sales" shall mean the gross sales of SW Paint Products (as hereinafter defined) by Sherwin-Williams to Customer during the period commencing on the Effective Date of this Agreement and continuing thereafter, minus all credits, discounts, rebates, incentives, allowances, returns, freight, bad debt, sales taxes and/or similar taxes.

2. **SALE OF PRODUCTS**.
   (A) During the Term, Customer shall use automotive paints and coatings manufactured and sold by Sherwin-Williams under the "Sherwin-Williams" label ("SW Paint Products").
   (B) During the Term, Customer shall purchase from Sherwin-Williams all of Customer's requirements for all Products (defined below) used by Customer at all automotive collision repair and refinish facilities owned and/or operated by Customer, now or in the future, including, without limitation, the facilities located at the following addresses:
     (i) J & M Autobody, 9126 Dowdy Drive, San Diego, CA 92126; and
     (ii) El Dorado Collision, 12502 Poway Road, Poway, CA 92064;
     (individually referred to herein as a "Body Shop" and collectively referred to herein as the "Body Shops").
   (C) "Products" shall mean all automotive paints, coatings and related products, including, without limitation, the following:
     (i) primers (including, without limitation, solvent-based, water-based, single component, two component, urethane, epoxy and surface treatment);
     (ii) top coats (including, without limitation, solvent-based, water-based, single stage, base coats, low VOC single stage and low VOC base coats);
     (iii) hardeners;
     (iv) solvents (including, without limitation, reducers, accelerators and retarders);
     (v) abrasives, tapes, adhesives; and
     (vi) all other associated products.

3. **PRICE FOR PRODUCTS**. The price for the SW Paint Products purchased by Customer shall be the prices specified on the Refinisher Price List of Sherwin-Williams in effect at the time of purchase. The price for those associated products listed on the 3M Yellow Price Sheet shall be the prices set forth under the single user full case column of such price sheet at the time of purchase, less thirty percent (30%). The price for all other Products shall be the prices in effect at the time of purchase. Customer shall be responsible for the payment of all applicable federal, state and local sales, use and similar taxes.

4. **PAYMENT**. The payment terms for all Products purchased by Customer pursuant to this Agreement shall be thirty (30) days from the date of Sherwin-Williams' statement. Customer shall remit all payments for Products in the form of cash or a check. Customer shall be entitled to a two percent (2%) discount on all invoices for which payment in full is received by Sherwin-Williams within fifteen (15) days following the date of the statement upon which such invoices first appear.

5. **ADVANCE**.
   (A) Within thirty (30) days after the Effective Date, Sherwin-Williams shall provide an advance to Customer in the amount of Two Hundred Seventy-Five Thousand and 00/100 Dollars ($275,000.00) ("Advance").
   (B) Upon the occurrence of any of the following events ("Acceleration Event(s)"), Customer shall pay the amount of the Refund (as hereinafter defined) to Sherwin-Williams, without notice or demand:
     (i) if Customer fails to pay any amount owing pursuant to this Agreement or breaches any other covenant or obligation under this Agreement;
     (ii) if Customer terminates this Agreement for any reason prior to the expiration of its Term (provided, however, that nothing in this Agreement shall be construed as giving Customer the right to terminate this Agreement prior to the expiration of its Term);
     (iii) if there is any affirmative act of insolvency by Customer, or any filing by or against Customer under any bankruptcy or insolvency law or statute or any law for the relief of, or relating to, debtors;
     (iv) if any Body Shop ceases or substantially curtails operations;
     (v) if Customer sells or otherwise disposes of all or a substantial portion of any Body Shop's business or assets;

(vi) if there occurs a change in the ownership or control of more than ten percent (10%) of the business or assets of or ownership interests in Customer (whether in a single transaction or in a series of transactions); or

(vii) if Customer for any reason ceases purchasing (or purchasing its requirements for) Products from Sherwin-Williams, or is purchasing merely a *de minimis* amount of Products for the primary purpose of avoiding operation of this provision.

(C) For the purposes of this Agreement, the amount of the Refund shall be calculated as follows.

Refund = $275,000.00 X [($1,300,000.00 – the Net Sales during the period commencing on the Effective Date and ending on the date of the Acceleration Event)]
$1,300,000.00]

6. **REBATE.** Each month during the Term of this Agreement, Sherwin-Williams shall issue a rebate to Customer. The amount of each monthly rebate shall be equal to Five Hundred and 00/100 Dollars ($500.00). Sherwin-Williams shall issue each monthly rebate within thirty (30) days following the end of the applicable month. Each rebate shall be issued in the form of a merchandise credit to Customer's account with Sherwin-Williams.

7. **REPRESENTATIONS AND WARRANTIES; COVENANTS.** Customer represents, warrants and/or covenants each of the following to Sherwin-Williams and acknowledges that Sherwin-Williams is relying on such representations, warranties and covenants.

(A) Customer is a corporation, duly organized, validly existing and in good standing under the laws of the State of California. Customer has the corporate power and authority to:
  (i) enter into this Agreement; and
  (ii) execute, deliver and perform this Agreement and each other agreement and document delivered by Customer to Sherwin-Williams in connection herewith.

(B) Neither the execution and delivery by Customer of this Agreement, nor the fulfillment of or compliance by Customer with the terms and provisions of this Agreement will, with the passage of time, the giving of notice, or otherwise:
  (i) conflict with, result in the breach of, constitute a default under or result in violation of, the Articles of Incorporation or Bylaws of Customer; or
  (ii) conflict with, result in a breach of, constitute a default under, or result in any violation of any agreement, contract, instrument, statute, law, rule or regulation to which Customer is a party or is otherwise subject or bound.

(C) Customer shall comply with all applicable federal, state, local, and foreign laws, statutes, executive orders, licensing and/or permitting requirements, governmental orders, rules and regulations (collectively referred to herein as "Laws") relating in any way to this Agreement and/or the conduct of its business including, but not limited to, all Laws relating to the:
  (i) labor, equipment, and facilities used in connection with the conduct of its business; and
  (ii) protection of the public health and safety and of the environment.

(D) There is no action, suit, investigation, or proceeding pending or, to the knowledge of Customer, threatened against or involving Customer, which could have a material effect on Customer's business, property, assets, financial condition, or ability to transact business. There is no state of facts or events that could reasonably be expected to form the basis for such a claim, litigation, investigation, or proceeding. No arbitration, award, judgment, order, decree or similar restriction is outstanding against Customer or any of its assets, businesses, or products.

(E) Customer shall at all times maintain, protect, and preserve its property used or useful in the conduct of its business and will keep the same in good condition and repair (normal wear and tear excepted).

(F) Customer shall promptly give notice to Sherwin-Williams of:
  (i) the occurrence of any Acceleration Event;
  (ii) any default or event of default under any contractual obligation of Customer which, if not cured or if adversely determined, as the case may be, could have a material effect on the business, operations, property or financial or other condition of Customer or the ability of Customer to continue to transact business;
  (iii) any default of Customer under this Agreement;
  (iv) any litigation, investigation or proceeding which may exist at any time between Customer and any governmental authority or third party which, if not cured or if adversely determined, as the case may be, could have a material effect on the business, operations, property or financial or other condition of Customer or on Customer's ability to transact business; and
  (v) any material change in the business, operations, property, or financial or other condition of Customer.

Each notice pursuant to this Section 7(F) shall be in accordance with Section 10 and shall be accompanied by a statement of Customer setting forth details of the occurrences referenced to therein and stating what action Customer proposes to take with respect thereto.

(G) Customer shall keep proper books of record and account in conformity with generally accepted accounting principles and the requirements of all Laws shall be made of all dealings and transactions in relation to its business and activities. Customer shall furnish to Sherwin-Williams such information regarding the financial condition of Customer as Sherwin-Williams may reasonably request from time-to-time.

(H) Customer agrees to indemnify, defend, and hold Sherwin-Williams and each of its affiliates (collectively, "Indemnified Parties") harmless from and against any claim, loss, damage, liability (whether strict or otherwise), fine penalty, assessment or expense (including reasonable attorneys fees)(collectively "Losses") incurred by any Indemnified Party resulting from or arising out of:

(i) any inaccuracy in or breach of any representation or warranty by Customer in this Agreement; and
(ii) any breach or nonperformance of any covenant or obligation made or incurred by Customer in this Agreement.

Anything to the contrary contained in this Agreement notwithstanding, the indemnification obligations set forth in this Section 7(H) shall continue indefinitely.

(I) Customer shall maintain all information relating to this Agreement in strict confidence and shall not disclose the information contained in this Agreement to any person, corporation, firm or entity except as required by law or by generally accepted accounting principles.

(J) Customer has received an offer to purchase products of like grade and quality to the Products from another supplier upon the terms and conditions set forth in this Agreement and acknowledges and agrees that Sherwin-Williams has offered the terms and conditions set forth in this Agreement in order to meet such competitive offer.

8. **WARRANTIES**. Customer will be entitled to participate in any product warranty program offered by Sherwin-Williams for which Customer qualifies. EXCEPT AS PROVIDED IN A WARRANTY PROGRAM REFERRED TO IN THE PRECEDING SENTENCE IN WHICH CUSTOMER IS PARTICIPATING, SHERWIN-WILLIAMS DISCLAIMS ALL WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, ORAL OR WRITTEN, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTY OF MERCHANTABILITY AND THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL SHERWIN-WILLIAMS BE LIABLE FOR SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES.

9. **NOTICES**. Any communication between Sherwin-Williams and Customer regarding the terms of this Agreement shall be in writing and shall be sent by reputable overnight courier or by certified mail, return receipt requested, to the appropriate party at the address set forth at the beginning of this Agreement. Either party may change the address for notice by sending a notice in the manner provided herein.

10. **MISCELLANEOUS**. The only manner in which this Agreement may be amended or modified is by a written document, signed by an authorized officer of Sherwin-Williams and signed on behalf of Customer, that specifically states it is an amendment or modification of this Agreement. No waiver of either party's rights under this Agreement shall be effective unless made in a writing signed by an authorized officer of Sherwin-Williams and signed on behalf of Customer. The waiver of a breach of any provision of this Agreement shall not constitute a waiver of a prior, concurrent or subsequent breach of the same provision or of any other provision. This Agreement shall be governed by the internal laws of the State of Ohio. In the event any provision of this Agreement is held to be illegal or otherwise unenforceable for any reason, such provision shall be severed from this Agreement, but the entire Agreement shall not fail on account thereof, and the balance of the Agreement shall remain in full force and effect. In no event shall the provisions in this Agreement relating to the repayment of the Refund be construed as liquidated damages or as an election or limitation of remedies. This Agreement constitutes the entire understanding and agreement between the parties hereto with reference to its subject matter. No statement or agreement, oral or written, made prior to this Agreement shall vary or modify the written terms hereof. The preprinted terms and conditions contained on any purchase order or other document submitted by Customer to Sherwin-Williams shall not apply to any purchase of Products.

THIS AGREEMENT WILL NOT BE BINDING UPON SHERWIN-WILLIAMS UNTIL SIGNED BY THE PRESIDENT OR A VICE PRESIDENT OF SHERWIN-WILLIAMS AND BY CUSTOMER.

SHERWIN-WILLIAMS AUTOMOTIVE FINISHES CORP.

By: _____

Title: ___V.P. - Controller___

JB COLLISION SERVICES, INC.
dba J & M AUTOBODY and
EL DORADO COLLISION

By: _____

Title: ___President___

# PROOF OF SERVICE

UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT
CASE NAME: Sherwin-Williams v. J.B. Collision
CASE NUMBER: 13CV1946 LAB WVG

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 225 Broadway, Suite 200, San Diego, California 92101.

On October 1, 2013, I served the foregoing document(s) described as:

1. **COUNTER-CLAIMANT JB COLLISION SERVICES, INC.'S COUNTERCLAIM FOR DAMAGES and DEMAND FOR JURY**

in this action by filing with the ECF system on:

Christopher M. Cullen, Esq.
Michael K. Murray, Esq.
LANAK & HANNA, P.C.
625 The City Drive South, Suite 190
Orange, CA 92868
vmcmullen@lanak-hanna.com
mkmurray@lanak-hanna.com

Counsel for Plaintiff

(XX) **BY ELECTRONIC FILING:** I caused all of the pages of the above-entitled document(s) to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case. The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

[XX] **FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 1, 2013, San Diego, California.

_____
Susan Frost

4828-8380-9302, v. 1

---
1
PROOF OF SERVICE