1
2
3
4
5
6
7

8                   UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11   THE SHERWIN-WILLIAMS          )   Civil No. 13-CV-1946-LAB (WVG)
     COMPANY,                      )              13-CV-1947-LAB (WVG)
12                                 )
                       Plaintiff,  )
13                                 )   ORDER FOLLOWING
     v.                            )   DISCOVERY HEARING
14                                 )
     JB COLLISION SERVICES, INC., *et.* )
15   *al.*,                        )
                                   )
16                     Defendants, )
                                   )
17   and                           )
                                   )
18   THE SHERWIN-WILLIAMS          )
     COMPANY,                      )
19                                 )
                       Plaintiff,  )
20                                 )
     v.                            )
21                                 )
     JTT, INC., *et. al.*,         )
22                                 )
                       Defendants. )
23                                 )
                                   )
24

25   **I. INTRODUCTION**

26           On July 23, 2014, Plaintiff The Sherwin-Williams Company (hereinafter

27   "Plaintiff"), notified the Court of a discovery dispute involving Defendants' JB

28   Collision Services, Inc., JJT, Inc., and John Tyczki (hereinafter "Defendants")

                                    1

responses to Plaintiff's written discovery requests.  Plaintiff's counsel represented to the Court that counsel had met and conferred telephonically.

On July 24, 2014, this Court Ordered the parties to file a Joint Statement for Determination of Discovery Dispute ("Joint Statement") by July 31, 2014, at 12:00 p.m. (Doc. No. 44 at 2.)  The Court set a Discovery Hearing to be held on August 8, 2014, at 7:30 a.m.  Id.  In compliance with the Court's Order, the parties filed a Joint Statement on July 31, 2014. (Doc. No. 45.)  On August 8, 2014, at 7:30 a.m., the Court convened a Discovery Hearing.  Mr. Jeffrey Wilson and Mr. Michael Murray appeared on behalf of Plaintiff, and Mr. John Nordlund appeared on behalf of Defendants.

## II. DISCUSSION

### A. DISPUTE NO. 1 - CUSTOMER INFORMATION REDACTED

#### 1. ARGUMENTS

Plaintiff argues that Defendants have produced numerous discovery documents such as repair orders and invoices, and they have redacted the identity of vehicle owners, insurers, and other third parties. (Doc. No. 45 at 2.)  Plaintiff contends that the redacted information is highly relevant for many reasons, including Plaintiff's need to investigate the circumstances that led to Defendants' submission of warranty claims on behalf of vehicle owners.  Id.

Defendants claim that they redacted the identifying information because they are concerned with their customer's third-party privacy rights in their financial, ownership, insurance, and contact information. (Doc. No. 45 at 2.)  Defendants also argue that they are concerned with potential third-party liability for disclosure of private information without a Court Order.  Id.

#### 2. COURT'S RULING

**Defendants' objections are overruled.  Defendants shall respond to Plaintiff's requests.**

The Court finds that Plaintiff has the right to the identity of the vehicle owners that Defendants claim had issues with Plaintiff's paint products, which is relevant to the

13CV1946, 13CV1947

1   claims asserted in Defendants' Second Amended Counterclaim ("SACC").  (Doc. No.
2   36.)

3                           1. **RELEVANCE OF THE REQUESTED INFORMATION**

4           The purpose of discovery is to "remove surprise from trial preparation so the
5   parties can obtain evidence necessary to evaluate and resolve their dispute."  U.S. ex
6   rel. O'Connell v. Chapman University, 245 F.R.D. 646, 648 (C.D.Cal.2007) (internal
7   quotation omitted).  Federal Rule of Civil Procedure 26(b)(1) offers guidance as to the
8   scope of discovery permitted in an action:

9           Unless otherwise limited by court order, the scope of discovery is as
10          follows: Parties may obtain discovery regarding any nonprivileged matter
            that is relevant to any party's claim or defense ... Relevant information
11          need not be admissible at the trial if the discovery appears reasonably
            calculated to lead to the discovery of admissible evidence.

12  Fed.R.Civ.P. 26(b)(1).

13          "Relevance for purposes of discovery is defined very broadly."  Garneau v.
14  City of Seattle, 147 F.3d 802, 812 (9th Cir.1998).  "The party seeking to compel
15  discovery has the burden of establishing that its request satisfies the relevancy
16  requirements of Rule 26(b)(1).  "Thereafter, the party opposing discovery has the
17  burden of showing that the discovery should be prohibited, and the burden of clarifying,
18  explaining or supporting its objections."  Bryant v. Ochoa, 2009 WL 1390794 at * 1
19  (S.D.Cal. May 14, 2009) (internal citation omitted).  A party opposing discovery is
20  "required to carry a heavy burden of showing" why discovery should be denied.
21  Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir.1975).

22          Plaintiff asserts that the information sought here, which includes the identity
23  of vehicle owners, insurers, and other third parties listed in Defendants' repair orders
24  and invoices, is relevant to its defense of Defendants' claims of breach of contract,
25  fraud, and misrepresentation.  The Court agrees, as the identifying information on
26  Defendants' repair orders and invoices appears reasonably calculated to lead to the
27  discovery of admissible evidence.  Defendants do not dispute the relevancy of this

28                                          3                    13CV1946, 13CV1947

1   information.  They simply assert that they do not believe that this information can be
2   disclosed absent a Court Order.

3          In sum, the information sought by Plaintiff is relevant and discoverable.

4      **B. DISPUTE NO. 2 - ROG NO. 12**

5          **1. ARGUMENTS**

6          Plaintiff's Interrogatory ("ROG") No. 12 asks Defendants to identify all paint
7   and related products purchased by Defendants from any manufacturer, distributor, or
8   seller other than Plaintiff, from January 2013 until the present, including but not limited
9   to the products, prices, dates of delivery, dates of purchase, dates of use, and name of
10  manufacturer, distributor or seller.  (Doc. No. 45 at 2.)  Plaintiff argues that the
11  information sought is highly relevant, as Defendants have placed at issue the identity
12  and quality of paint that they purchased from other suppliers after terminating
13  Plaintiff's contracts.  Plaintiff argues that Defendants rely on alleged defects in its
14  products as justification for terminating the contracts with Plaintiff, and as the basis for
15  the claims asserted in Defendants' SACC.  Id.  Plaintiff contends that Defendants
16  specifically allege that when they switched to a competitor's paint (Spies-
17  Hecker/Dupont) in March of 2013, they "did not experience these problems." Id.

18         Further, Plaintiff contends that Defendants were in an exclusive supply
19  contract for the use of Spies-Hecker paint when Defendant JB Collision entered into
20  the exclusive supply contract with Plaintiff, and that Defendants were sued in late 2012
21  for breaching that prior Spies-Hecker contract. (Doc. No. 45 at 4.) Plaintiff argues that
22  the matter was referred to arbitration in early 2013, and that Defendants stopped
23  purchasing Plaintiff's paint and resumed purchasing Spies-Hecker paint around that
24  time.  Id.  Thus, Plaintiff argues, it is entitled to investigate whether Defendants had
25  motives other than the quality of Plaintiff's products when they resumed purchasing
26  Spies-Hecker paint.  Id.

27         Defendants argue that the requested information is irrelevant to the issues in
28  this case, and that they have stated in verified responses that they solely purchased and

used Plaintiff's paint products from September 2008 through March 2013.[1/] (Doc. No. 45 at 4.)  They contend that their purchases from other manufacturers after the termination of the agreements with Plaintiff are not probative to prove contract damages, and that the product information that Plaintiff seeks is not probative as to whether Defendants have had similar problems with subsequent manufacturers.  Id. Defendants argue that the damages Plaintiff seeks are readily ascertainable from the contract terms and the parties' course of business.  Id.

Further, Defendants assert that Plaintiff's statements regarding Defendants' prior relationship with Spies-Hecker are incorrect, and that Defendant JB Collision had a contractual relationship with Keystone Automotive Industries, Inc. ("Keystone"), which involved Spies-Hecker products, until approximately late July 2008 or early September 2008.  (Doc. No. 45 at 4.)  Defendants state that Defendant JB Collision terminated the contract with Keystone in order to enter into the September 2008 agreement with Plaintiff.  Id.  They contend that Keystone did not file suit for the alleged 2008 breach of that contract until September 2012, and the four year statute of limitations was Defendant JB Collision's primary defense.  Id.  Defendants argue that they did not stop exclusively purchasing Plaintiff's paint products until March 2013, which they claim was after Defendant JB Collision completed its contract term.  Id. at 4-5.  Additionally, Defendants object that ROG No. 12 seeks confidential, proprietary, and trade secret information of Plaintiff's competitors, including, but not limited to, pricing information and discounts.  Id. at 5.

## 2. COURT'S RULING

**Defendants' objections are overruled.  Defendants shall respond to Plaintiff's ROG No. 12.  If Defendants do not have any documents responsive to this request, they shall indicate so in a verified response.**

---

[1/] ROG No. 12 seeks information during the time frame of January of 2013 to the present. (Doc. No. 45 at 2.)

As discussed above, relevance for purposes of discovery is defined very broadly." Garneau, 147 F.3d at 812.  Rule 26(b)(1) allows parties to obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense, and the information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P. 26(b)(1).

The Court finds that the information sought by Plaintiff is relevant to the claims asserted in Defendants' SACC, as Defendants claim breach of contract, concealment, fraud, intentional and negligent misrepresentation, and unjust enrichment by Plaintiff. (Doc. No. 36.)  Given that Defendants terminated the Keystone contract early and entered into a contract with Plaintiff, the Court notes the suspicious circumstances involving the lawsuit against Defendants for breach of that previous contract, and Defendants' subsequent return to purchasing Spies-Hecker products.

## C. DISPUTE NO. 3 - ROG. NO. 7
### 1. ARGUMENTS

Plaintiff's ROG No. 7 asks Defendants to identify all instances of Defendants repainting vehicles because of alleged quality issues with Plaintiff's products. (Doc. No. 45 at 5.)  Defendants object on the grounds that ROG No. 7 is vague, ambiguous, and unduly burdensome. Id.  They state that the requested information is available in documents that they produced in response to Plaintiff's Requests for Production of Documents ("RFPs"), which were served concurrently with these ROGs, and it is unnecessary and unduly burdensome for Defendants to undertake the expense and effort of stating it in a ROG response.

Plaintiff argues that ROG No. 7 gets to the heart of Defendants' $20 million counterclaim, which is premised upon Defendants' need to repaint vehicles because of alleged quality problems with Plaintiff's paint products. (Doc. No. 45 at 5.)  Plaintiff states that Defendants' SACC alleges that, throughout the parties' contractual relationship, Plaintiff provided Defendants with free paint products to re-paint vehicles due to the poor quality of its paint products, but Defendants were forced to absorb the

13CV1946, 13CV1947

labor costs of repainting the vehicles.  Id; citing SACC 20(g).  Plaintiff notes that Defendants allege that they terminated the agreements with Plaintiff because of the numerous customer complaints, necessary re-repairs, and re-paintings of customer vehicles due to the low quality of its products, and Plaintiff's failure to effectively correct the quality issues.  Id; citing SACC 20(g).

Plaintiff contends that, if Defendants' re-painting and/or re-repairing customer vehicles is limited to the approximately 30 warranty claims they submitted, then Defendants must state as much in a verified ROG response, and provide the information requested for the approximately 30 instances of repainting.  (Doc. No. 45 at 7.)

Defendants argue that they cannot presently recollect all instances in which they repainted vehicles due to quality defects in Plaintiff's automotive paint products.  (Doc. No. 45 at 7.) They contend that they produced all warranty work invoices, which provide information on such repainting jobs.  Id.  Therefore, Defendants claim, it is unduly burdensome for them to undertake the task of reviewing the documents and listing the instances for Plaintiff when it can perform the same task.  Id.  Nonetheless, Defendants state that they will provide a list of repair orders, dates, and amount owed by Plaintiff for the warranty work on repaint jobs for which Defendants do have documentation.  Id.

However, Defendants argue that they do not intend to limit the number of vehicle repaints caused by defects in the quality of Plaintiff's AWX paint products to those for which warranty claims have been documented.  (Doc. No. 45 at 7.)  They claim that those documented in the warranty claims are some, but not all, of such re-paintings, but they did not maintain specific documentation of the repainting jobs as a matter of course prior to the termination of the agreements with Plaintiff.  Id. at 7-8.  Defendants contend that they are only seeking damages as to those repainting jobs for which there are warranty claims, and any future necessary warranty work, the need for which is continuous and ongoing as customers present with defective paint jobs caused by Plaintiff's AWX paint products.  Id. at 8.  Defendants claim that they expressly

13CV1946, 13CV1947

stated during meet and confer efforts that they are willing to provide supplemental responses stating the above.  Id.

## 2. COURT'S RULING

**Defendants' objections are overruled.  Defendants shall respond to Plaintiff's ROG No. 7.**

The Court finds that ROG No. 7 goes to the heart of this lawsuit, as Defendants claim that they had to repaint vehicles due to Plaintiff's poor quality paint products.  The Court also acknowledges that Defendants have asserted that they did not retain documents.  If Defendants only have information related to the warranty claims, then Defendants shall state that they do not have any other documents, and that they did not keep these records.   If records ever do become available, Defendants shall immediately supplement their response to ROG No. 7.

If they have not done so already, Defendants shall provide Plaintiff with a list of repair orders, dates, and amounts owed by Plaintiff for the warranty work on repainting jobs for which Defendants do have documentation.

## D. DISPUTE NO. 4 - RFP NO. 10

### 1. ARGUMENTS

Plaintiff's RFP No. 10 seeks all documents which constitute, reflect upon, or relate to all paint and related product purchases by Defendants from any manufacturer or seller other than Plaintiff, from September 2008/May 2011 until the present.  (Doc. No. 45 at 8.)  Defendants object to this request on the grounds that RFP No. 10 seeks information and/or documents protected by attorney-client and/or work product privileges, seeks confidential information of third-parties, such as product pricing and proprietary information, and is compound, overbroad, vague, ambiguous, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Id. at 8-9.  Further, Defendants argue that the request seeks documents regarding non-Sherwin-Williams paint products for a period of time after the termination of the supply agreement with Plaintiff.  Id. at 9.

13CV1946, 13CV1947

Defendants also responded that, for the time period of September 10, 2008, to March 2013, Defendant JB Collision, and from May 2011 to March 2013, Defendant JJT, exclusively purchased and used Plaintiff's paint and related products, and, therefore no responsive documents exist. (Doc. No. 45 at 9.) Defendants stated that, for the period of time thereafter, no documents will be produced. Id.

Plaintiff sets forth the same arguments that it asserts in support of ROG No. 12. (Doc. No. 45 at 9-10.)

### 2. COURT'S RULING

**Defendants' objections are overruled. Defendants shall respond to Plaintiff's RFP No. 10. If Defendants do not have any documents responsive to this request, they shall indicate so in a verified response.**

As discussed above, relevance for purposes of discovery is defined very broadly." Garneau, 147 F.3d at 812. Rule 26(b)(1) allows parties to obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense, and the information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1).

The Court finds that the information sought by Plaintiff is relevant to the claims asserted in Defendants' SACC, as Defendants claim breach of contract, concealment, fraud, intentional and negligent misrepresentation, and unjust enrichment by Plaintiff. (Doc. No. 36.) Given that Defendants terminated the Keystone contract early and entered into a contract with Plaintiff, the Court notes the suspicious circumstances involving the lawsuit against Defendants for breach of that previous contract, and Defendants' subsequent return to purchasing Spies-Hecker products.

### E. POSSIBLE DISPUTE REGARDING DOCUMENT DESIGNATIONS

During the Discovery Hearing, Defendants notified the Court that they disagree with some of the "Attorneys' Eyes Only" designations made by Plaintiff during its document production. Defendants sought guidance from the Court on how to proceed with this dispute.

13CV1946, 13CV1947

1        The Court hereby ORDERS the parties to meet and confer in good faith in an

2   attempt to resolve the dispute.  If a dispute remains after good faith meet and confer

3   efforts, the parties shall contact the Court to seek guidance on how to proceed.

4        Counsel are reminded that the protective order in place in this action allows

5   for a producing party to designate as "Highly Confidential/Attorneys' Eyes Only," any

6   confidential information or material which it <u>reasonably believes</u> constitutes a trade

7   secret or other highly confidential research, development, or commercial information,

8   the disclosure of which to the other party or public could cause the producing party

9   competitive harm.  (Protective Order, Doc. No. 35 at 3.)  The parties are on notice that,

10  should a dispute regarding the designation of documents be brought to the Court's

11  attention, the Court will not look favorably upon the over-designation or blanket

12  designations of documents.

13  **III. <u>CONCLUSION</u>**

14       On or before **<u>August 27, 2014</u>**, Defendants shall produce to Plaintiff all

15  discovery responses in compliance with this Order.

16  IT IS SO ORDERED.

17  DATED:  August 15, 2014

 

Hon. William V. Gallo
U.S. Magistrate Judge

13CV1946, 13CV1947