UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE SHERWIN-WILLIAMS COMPANY,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>JB COLLISION SERVICES, INC., *et. al.*,<br><br>　　　　　　Defendants,<br><br>and<br><br>THE SHERWIN-WILLIAMS COMPANY,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>JTT, INC., *et. al.*,<br><br>　　　　　　Defendants. | Civil No. 13-CV-1946-LAB(WVG)<br>　　　　　13-CV-1947-LAB(WVG)<br><br>ORDER GRANTING PLAINTIFF'S REQUEST FOR IMPOSITION OF SANCTIONS AGAINST DEFENDANTS FOR FAILURE TO PRODUCE DISCOVERY DOCUMENTS; DENYING PLAINTIFF'S REQUEST FOR AN ORDER OF CONTEMPT AGAINST DEFENDANTS<br><br>[DOC. NO. 61] |

# I. BACKGROUND

Plaintiff Sherwin-Williams ("Plaintiff") makes paints and coatings for cars. (Doc. No. 31 at 1.) Defendants JB Collision Services, Inc. ("Defendant JB Collision") and JJT, Inc. ("Defendant JJT") are auto body shops. Id. On or about September 10,

2008, Defendant JB Collision entered into a Supply Agreement with Plaintiff. (Doc. No. 1 at 2.) Pursuant to the Supply Agreement, Defendant JB Collision agreed to exclusively use Plaintiff's automotive paint and coating products from September 10, 2008, until the date upon which net sales, as defined by the Supply Agreement, totaled $1,300,000. Id. In consideration for Defendant JB Collision's agreement to exclusively purchase all of its requirements for automotive paints, coatings, and related products for the duration of the contract term, Plaintiff agreed to provide products to JB Collision at a discount. Id. at 3.

On or about May 29, 2011, Defendant JJT entered into a Supply Agreement with Plaintiff. (Doc. No. 17 at 2.) Pursuant to the Supply Agreement, Defendant JJT agreed to exclusively use Plaintiff's automotive paint and coating products from May 29, 2011, until the date upon which net sales, as defined by the Supply Agreement, totaled $250,000. Id. In addition, Defendant John Tyczki ("Defendant Tyczki") signed a guaranty on May 10, 2011, personally guaranteeing Defendant JJT's performance under the Supply Agreement. Id.

From September of 2008 until January of 2013, Defendants purchased automotive paint, coatings, and related products pursuant to the Supply Agreements with Plaintiff. (Doc. No. 1 at 3; Doc. No. 17 at 2-3.) In January of 2013, Plaintiff alleges that Defendants breached the parties' Supply Agreements by discontinuing all of their requirements for automotive paints, coatings, and related products exclusively from Plaintiff. Id. By letter dated February 28, 2013, Plaintiff notified Defendants of their breach of contract. Id.

On August 20, 2013, Plaintiff filed two complaints asserting breach of contract claims against Defendants JB Collision, JJT, and Tyczki, and Defendants filed counterclaims for breach of contract, breach of implied warranties of merchantability and fitness, concealment and fraud, intentional misrepresentation, negligent misrepresentation, breach of covenant of good faith and fair dealing, and unjust enrichment.

(Doc. No. 31 at 2.)  The crux of Defendants' counterclaims is that Plaintiff's products were not satisfactory.  Id.

## II. PLAINTIFF'S INSTANT MOTION FOR CONTEMPT AND SANCTIONS

### A. PLAINTIFF'S ARGUMENT

In its Discovery Motion, Plaintiff argues that Defendants should be held in contempt and sanctioned for withholding discovery and lying to the Court. (Doc. No. 61-1 at 5, 10-11.)  Plaintiff seeks reasonable attorney's fees for bringing its Discovery Motion.  Id.

Plaintiff claims that, on October 17, 2014, Defendants produced nearly 3,000 pages of discovery documents containing Defendants' business records and invoices with Plaintiff's competitor, Keystone Automotive ("Keystone") from 2008 to 2014. (Doc. No. 69 at 3.)  Plaintiff alleges that the records show that Defendants purchased tens of thousand of dollars of products that they have denied purchasing under oath throughout this litigation.  Id.  Plaintiff claims that Defendants' actions are in contempt of Court and reveal that they have perjured themselves.  Id.

Plaintiff argues that, for months, it has sought to obtain Defendants' records reflecting any purchases of paint and associated products from sellers other than Plaintiff between September of 2008 and March of 2013. (Doc. No. 61-1 at 5.)  It claims that Defendants have repeatedly sworn under oath that no documents exist because during those years they exclusively purchased and used Plaintiff's paint and associated products.  Id.  Plaintiff asserts that Defendants told this Court the same thing in discovery dispute briefing and oral argument.  Id.  However, Plaintiff claims that the recently disclosed documents demonstrate that Defendants purchased thousands of dollars of paint and associated products from Keystone and Spies-Hecker (an Axalta/DuPont paint line) from September of 2008 through March of 2013.  Id.  Plaintiff contends that it learned of these purchases by seeking all documents used in a prior arbitration between Defendants and Keystone.  Id.  Plaintiff claims that, after confronting Defendant Tyczki with this information during deposition, it asked Defendants to produce their invoices for all purchases from Keystone between 2008

and 2013.  Id.  Plaintiff argues that, although Defendants have stated numerous times under penalty of perjury that they do not have such documents, those statements are demonstrably false as Defendants have no justification to blatantly "forget" tens of thousands of dollars of purchases.  Id. at 10.

Plaintiff claims that Defendants are in contempt of this Court's August 15, 2014, Discovery Order, which ordered, "Defendants shall respond to Plaintiff's [Request for Production of Documents] RFP No. 10.  If Defendants do not have any documents responsive to this request, they shall indicate so in a verified response."  (Doc. No. 61-1 at 10.)  Plaintiff now requests that Defendants be held in contempt and sanctioned for lying to this Court, obstructing this litigation, and continuing to withhold documents ordered to be produced by this Court on August 15, 2014.  (Doc. No. 61-1 at 5-6; citing Doc. No. 47.)

### B. DEFENDANTS' ARGUMENT

In their Opposition to Plaintiff's Discovery Motion, filed on October 17, 2014, Defendants deny lying to the Court, and state they have not purchased any paint products or coatings from any supplier other than Plaintiff during the terms of the Agreements.  (Doc. No. 70 at 2.)  Defendants note that they did purchase after-market or used vehicle parts from a competitor, which are "indisputably unrelated products." Id.  Defendants claim that they reasonably believed that these parts and other non-paint products purchased from Plaintiff's competitor did not fall within the scope of Plaintiff's discovery request, as the term "related products" was vague, ambiguous, overbroad, and undefined in the request, as stated in Defendants' objections.  Id.

Further, Defendants claim that they "did purchase products from Keystone/LKQ during the terms of the Agreements; however, these, at least under Defendants' understanding, were not paint 'or related products.'"  (Doc. No. 70 at 6.) Defendants claim that the products they did purchase from Plaintiff's competitors were after-market parts, used parts, and waste disposal products, which were not part of Defendants' Agreements with Plaintiff.  Id.  Defendants state that they used their subjective understanding when responding to these requests.  Id. at 7.

During the Discovery Hearing on October 29, 2014, Plaintiff showed the Court several sample Keystone invoices that had recently been produced by Defendants. In response, Defendants claimed that any products that they purchased from Keystone that were covered by the Supply Agreement with Plaintiff, were purchased during the time period that the parties first entered into the Supply Agreement, and therefore these purchases are justified and excusable. Defendants also represented that they only recently discovered the existence of these Keystone documents.

### C. PROCEDURAL HISTORY

On October 1, 2014, Defense counsel notified the Court of several discovery disputes, and on October 2, 2014, Plaintiff's counsel notified the Court of several additional disputes. On October 3, 2014, the Court set a briefing schedule and a Discovery Hearing. (Doc. No. 52.) On October 3, 2014, the Court held a telephonic Discovery Conference. Mr. Jeffrey Wilson and Mr. Ed Woodworth participated on behalf of Plaintiff, and Mr. Paul Sorrentino and Mr. John Nordlund participated on behalf of Defendants. During the Discovery Conference, the Court informed the parties that it would not extend the fact discovery deadline set for November 7, 2014. See Scheduling Order; Doc. No. 29 at 2. The Court advised the parties to cooperate and complete all fact discovery depositions by the fact discovery deadline, and set a schedule for the parties to follow in an effort to resolve the deposition disputes.

On October 10, 2014, Plaintiff and Defendants filed separate Motions for Determination of Discovery Disputes. (Doc. Nos. 59, 61.) On October 17, 2014, Plaintiff filed a Supplemental Brief in Support of its Motion. (Doc. No. 69.) Also on October 17, 2014, Defendants' filed an Opposition to Plaintiff's Motion (Doc. No. 70), and Plaintiff filed an Opposition to Defendants' Motion (Doc. No. 71). On October 22, 2014, Defendants filed a Reply in Support of their Discovery Motion (Doc. No. 72), and Plaintiff filed a Reply in Support of its Discovery Motion (Doc. No. 74).

On October 29, 2014, at 7:00 a.m., the Court held an in person Discovery Hearing on the record. Mr. Wilson, Mr. Woodworth, and Mr. Michael Murray appeared on behalf of Plaintiff, and Mr. Sorrentino and Mr. Nordlund appeared on

1  behalf of Defendants. Defendant, Mr. John Tyczki, was also present in the undersigned's courtroom for the Discovery Hearing.

The Court reviewed all of the briefing related to these discovery disputes, as well as the corresponding exhibits and other relevant documents filed in the consolidated cases. With the fact discovery deadline set for November 7, 2014, a mere nine days after the Discovery Hearing, the Court deemed it advisable to issue discovery rulings from the bench during the Discovery Hearing. The Court issued tentative rulings from the bench at the beginning of the Discovery Hearing. After listening to the arguments asserted by all counsel, the Court issued its final rulings from the bench and discussed its reasoning and rulings with counsel at the conclusion of the Discovery Hearing.

On October 30, 2014, the Court issued a Discovery Order memorializing its rulings, and took Plaintiff's request for a contempt Order and sanctions under advisement. (Doc. No. 85 at 7.) The Court ordered Plaintiff to lodge with the Court copies of the Keystone documents for an *in camera* review, and to highlight the products that it believed Defendants purchased in violation of their contracts with Plaintiff. Id. The Court instructed that an Order would issue after conducting an *in camera* review of the Keystone documents. Id.

### III. APPLICABLE LAW

#### A. MONETARY SANCTIONS

Pursuant to Rule 37(a)(1), "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed.R.Civ.P. 37(a)(1). This may include reimbursement of expenses on a motion to compel. Fed.R.Civ.P 37(a)(5). However, the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's non-disclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust. Fed.R.Civ.P. 37(a)(5)(A)(i)-(iii).

### B. CIVIL CONTEMPT

Rule 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules. Fed.R.Civ.P. 37; Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983) (citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976)). Rule 37(b)(2)(D) provides for civil contempt instead of, or in addition to, other sanctions. Fed.R.Civ.P. 37(b)(2)(D). Civil contempt is characterized by the court's desire to compel "a party's [ ]obedience to a specific and definite court order [after the party has] fail[ed] to take all reasonable steps within the party's power to comply." Go-Video, Inc. v. Motion Picture Ass'n of America, 10 F.3d 693, 695 (9th Cir. 1993); Gifford v. Heckler, 741 F.2d 263, 265 (9th Cir. 1984). Civil contempt is also characterized "by the court's desire ... to compensate the contemnor's adversary for the injuries which result from the noncompliance." Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 778 (9th Cir.1983). The sanction of civil contempt is designed to force the contemnors to comply with an order of the court and thus to affect discovery. Cunningham v. Hamilton County, Ohio, 527 U.S. 198, 207 (1999).

A party who has failed to comply with an order of the court to produce documents may be found in civil contempt. Fed.R.Civ.P. 37(b)(2)(D); See e.g., Lamar Fin. Corp. v. Adams, 918 F.2d 564, 567 (5th Cir.1990). "The standard for finding a party in civil contempt is well settled: "The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." FTC v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999). Once the moving party meets this standard, the burden shifts to the contemnor to demonstrate that he or she took every reasonable step to comply, and to articulate reasons why compliance was not possible. See Donovan v. Mazzola, 716 F.2d 1226, 1240 (9th Cir. 1983). To assess whether an alleged contemnor has taken "every reasonable step" to comply with the terms of a court order, the district court can consider (1) a history of noncompliance, and (2) a failure to comply despite the

pendency of a contempt motion. See Stone v. City and County of San Francisco, 968 F.2d 850, 856-57 (9th Cir. 1992).

A party's subjective intent and willfulness is irrelevant. See McComb v. Jacksonville Paper Co., 336 U.S. 187 (1949); Donovan, 716 F.2d at 1240. Thus, the disobedient party's good faith or intent in attempting to comply does not bar a finding of contempt. Stone, 968 F.2d at 857. "Generally, the minimum sanction necessary to obtain compliance is to be imposed." Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992), citing Spallone v. United States, 493 U.S. at 280.

## IV. RULING

After conducting an *in camera* review of the Keystone documents that Plaintiff provided to the Court on November 3, 2014, the Court hereby GRANTS Plaintiff's Motion for Sanctions, and DENIES Plaintiff's Motion for an Order of Contempt.

### A. MONETARY SANCTIONS

Sanctions are appropriate and shall be imposed against Defendants for their failure to produce the Keystone invoices in response to Plaintiff's discovery requests, and in violation of this Court's August 15, 2014, Discovery Order. (Doc. No. 47.) In it's Discovery Order, the Court stated,

> Plaintiff's RFP No. 10 seeks all documents which constitute, reflect upon, or relate to all paint and related product purchases by Defendants from any manufacturer or seller other than Plaintiff, from September 2008/May 2011 until the present. (Doc. No. 45 at 8.) Defendants object to this request on the grounds that RFP No. 10 seeks information and/or documents protected by attorney-client and/or work product privileges, seeks confidential information of third-parties, such as product pricing and proprietary information, and is compound, overbroad, vague, ambiguous, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Id. at 8-9. Further, Defendants argue that the request seeks documents regarding non-Sherwin-Williams paint products for a period of time after the termination of the supply agreement with Plaintiff. Id. at 9.

(Doc. No. 47 at 8.)

The Court noted that, "Defendants also responded that, for the time period of September 10, 2008, to March 2013, Defendant JB Collision, and from May 2011 to

March 2013, Defendant JJT, exclusively purchased and used Plaintiff's paint and related products, and, therefore no responsive documents exist." (Doc. No. 47 at 9; citing Doc. No. 45 at 9.) The Court also noted, "Defendants stated that, for the period of time thereafter, no documents will be produced." Id; citing Doc. No. 45 at 9.

The Court overruled Defendants' objections and ordered Defendants to respond to Plaintiff's RFP No. 10. (Doc. No. 47 at 9.) The Court noted,

> If Defendants do not have any documents responsive to this request, they shall indicate so in a verified response...The Court finds that the information sought by Plaintiff is relevant to the claims asserted in Defendants' SACC, as Defendants claim breach of contract, concealment, fraud, intentional and negligent misrepresentation, and unjust enrichment by Plaintiff. (Doc. No. 36.) Given that Defendants terminated the Keystone contract early and entered into a contract with Plaintiff, the Court notes the suspicious circumstances involving the lawsuit against Defendants for breach of that previous contract, and Defendants' subsequent return to purchasing Spies-Hecker products.

(Doc. No. 47 at 9.)

After conducting an *in camera* review of the Keystone documents, the Court finds that the Keystone documents clearly fall within Plaintiff's RFP No. 10, and the Court unequivocally ordered Defendants to respond to this request. (Doc. No. 47 at 9.) Thus, the Court finds that Defendants have withheld responsive documents from Plaintiff and clearly violated this Court's August 15, 2014, Order.

Additionally, the Court finds that Defendants made false representations to Plaintiff and to the Court regarding the existence of these Keystone documents. The documents show numerous supply purchases covered by the Supply Agreements, made by Defendants from Keystone during the relevant contract periods. Therefore, Defendants cannot dispute that they made multiple false representations to the Court and Plaintiff that they had no responsive documents to RFP No. 10. Defendants' excuse at the Discovery Hearing that they only recently found all of these documents confirms that Defendants did not diligently search for the documents as required by the Federal Rules of Civil Procedure. Fed.R.Civ.P. 34.

Moreover, Defendants' excuse that Defendants only purchased Keystone products during the very early transitional periods after entering into the contracts with

Plaintiff is clearly false as the Keystone documents evidence purchases at the beginning, middle, and towards the end of the contract periods. Further, Defendants' excuse that they only purchased these items from Keystone because Plaintiff did not timely keep inventory in stock in no way justifies their failure to disclose these documents.

Although Defendants have asserted several excuses in a belated attempt to justify their failure to disclose relevant, responsive, Court-ordered documents, no excuse justifies Defendants' withholding of these documents. Either Defendants were derelict in their obligation to search for the documents, or Defendants were intentionally deceptive to Plaintiff and the Court by withholding these documents. Either way, Plaintiff was prejudiced by the withholding, and sanctions are deserving.

### B. CIVIL CONTEMPT

The Court has not been provided with any evidence that Defendants were purposefully evasive, and thus, the Court will not hold Defense counsel or Defendants in contempt. However, monetary sanctions are indeed appropriate and warranted for such a gross violation of Defendants' discovery obligations. Defendants are on notice that, should the Court be presented with evidence of additional discovery violations, an order of contempt will likely issue.

### C. PLAINTIFF SHALL SUBMIT TIME CALCULATIONS

On or before **November 21, 2014**, Plaintiff is directed to submit to the Court detailed time calculations and descriptions of activities in attempting to obtain these documents, and in filing its Motion to Compel and corresponding briefing.

IT IS SO ORDERED.

DATED: November 14, 2014

Hon. William V. Gallo
U.S. Magistrate Judge