1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10

11  THE SHERWIN-WILLIAMS          )  Civil No. 13-CV-1946-LAB(WVG)
    COMPANY,                      )           13-CV-1947-LAB(WVG)
12                                )
                  Plaintiff,      )  ORDER DENYING DEFENDANTS'
13  v.                            )  *EX PARTE* APPLICATION FOR
                                  )  ADDITIONAL TIME FOR
14  JB COLLISION SERVICES, INC., *et.* )  DEFENDANTS' PAINT EXPERT'S
    *al.*,                        )  SUPPLEMENTAL WRITTEN
15                                )  REPORT; GRANTING
                  Defendants,     )  DEFENDANTS' REQUEST FOR
16                                )  CLARIFICATION OF THE
    and                           )  COURT'S ORDER
17                                )
    THE SHERWIN-WILLIAMS          )  [DOC. NO. 120]
18  COMPANY,                      )
                                  )
19                Plaintiff,      )
                                  )
20  v.                            )
                                  )
21  JTT, INC., *et. al.*,         )
                                  )
22                Defendants.     )
                                  )
23  ──────────────────────────────)

24  **I. INTRODUCTION**

25        Plaintiff Sherwin-Williams ("Plaintiff") makes paints and coatings for cars.

26  (Doc. No. 31 at 1.)  Defendants JB Collision Services, Inc. ("Defendant JB Collision")

27  and JJT, Inc. ("Defendant JJT") are auto body shops.  Id.  On or about September 10,

28  2008, Defendant JB Collision entered into a Supply Agreement with Plaintiff.  (Doc.

1   No. 1 at 2.)  Pursuant to the Supply Agreement, Defendant JB Collision agreed to
2   exclusively use Plaintiff's automotive paint and coating products from September 10,
3   2008, until the date upon which net sales, as defined by the Supply Agreement, totaled
4   $1,300,000.  Id.   In consideration for Defendant JB Collision's agreement to
5   exclusively purchase all of its requirements for automotive paints, coatings, and related
6   products for the duration of the contract term, Plaintiff agreed to provide products to
7   JB Collision at a discount.  Id. at 3.

8        On or about May 29, 2011, Defendant JJT entered into a Supply Agreement
9   with Plaintiff.  (Doc. No. 17 at 2.)  Pursuant to the Supply Agreement, Defendant JJT
10  agreed to exclusively use Plaintiff's automotive paint and coating products from May
11  29, 2011, until the date upon which net sales, as defined by the Supply Agreement,
12  totaled $250,000. Id. In addition, Defendant John Tyczki ("Defendant Tyczki") signed
13  a guaranty on May 10, 2011, personally guaranteeing Defendant JJT's performance
14  under the Supply Agreement.  Id.

15       From September of 2008 until January of 2013, Defendants purchased
16  automotive paints, coatings, and related products pursuant to the Supply Agreements
17  with Plaintiff.  (Doc. No. 1 at 3; Doc. No. 17 at 2-3.)  In January of 2013, Plaintiff
18  alleges that Defendants breached the parties' Supply Agreements by discontinuing all
19  of their requirements for automotive paints, coatings, and related products exclusively
20  from Plaintiff.  Id.  By letter dated February 28, 2013, Plaintiff notified Defendants of
21  their breach of contract.  Id.

22       On August 20, 2013, Plaintiff filed two complaints asserting breach of contract
23  claims against Defendants JB Collision, JJT, and Tyczki.  On October 1, 2013, and
24  October 4, 2013, Defendants filed counterclaims for breach of contract, breach of
25  implied warranties of merchantability and fitness, concealment and fraud, intentional
26  misrepresentation, negligent misrepresentation, breach of covenant of good faith and
27  fair dealing, and unjust enrichment.  The crux of Defendants' counterclaims is that
28  Plaintiff's products were not satisfactory.

## II. CLARIFICATION OF THE COURT'S SCHEDULING ORDER

### A. DEFENDANTS' ARGUMENT

#### 1. RULE 26(a)(2)(C) v. RULE 26(a)(2)(D)

In their instant *Ex Parte* Application, Defendants claim that this Court's Scheduling Order is unclear, as it appears to reference an incorrect subsection of Federal Rule of Civil Procedure 26 in paragraph 4, which discusses supplemental expert reports. (Doc. No. 120 at 2-3.) Paragraph 4 of the Court's Scheduling Order states,

> Any party, through any expert designated, shall in accordance with Fed. R. Civ. P. 26(a)(2)(C) and Fed. R. Civ. P. 26(e), supplement any of its expert reports regarding evidence intended solely to contradict or rebut evidence on the same subject matter identified in an expert report submitted by another party. Any such supplemental reports are due on or before <u>January 16, 2015</u>.

(Doc. No. 29 at 2.)

Defendants note that Rule 26(a)(2)(C), although referenced in paragraph 4, refers to witnesses who do not provide a written report. (Doc. No. 120 at 2.) Thus, Defendants argue, it is unclear as to whether the Court intended for the parties' designated experts to file supplemental reports, given the fact that 26(a)(2)(C) does not apply to the parties' witnesses. <u>Id.</u>

#### 2. RULE 26(e) - DUTY TO SUPPLEMENT

Defendants also assert that, although the Court included a reference to Rule 26(e) in paragraph 4 of its Scheduling Order, Defendants do not believe it was the Court's intention to extinguish the parties' obligations to supplement pursuant to Rule 26(e)(2). (Doc. No. 120 at 2-3). Defendants argue that Rule 26(e), and specifically sub-paragraph (2) relating to expert witnesses, provides that for an expert whose report must be disclosed under Rule 26(a)(2)(B), which is the situation in this particular matter, the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. <u>Id.</u> at 2. Defendants note that any additions or changes to this information must be disclosed by the deadline for the party's pre-trial disclosures under Rule 26(a)(3). <u>Id.</u>

**B. PLAINTIFF'S ARGUMENT**

### 1. RULE 26(a)(2)(C) v. RULE 26(a)(2)(D)

Plaintiff argues that the Court's Scheduling Order is clear and there is no room for confusion. (Doc. No. 121 at 6.) Plaintiff argues that the Scheduling Order clearly states that a parties' expert opinion is due by December 12, 2014, and by January 16, 2015, the expert may supplement its opinion based on information provided by any other expert, solely for the purpose of contradicting or rebutting that opinion. Id. at 7.

Plaintiff agrees with Defendants that the Court's Scheduling Order incorrectly references Rule 26(a)(2)(C), and should instead reference Rule 26(a)(2)(D) in its paragraph discussing supplemental expert reports. (Doc. No. 121 at 7-8.) However, Plaintiff argues that despite the Court's typographical error, the intent of the Scheduling Order is clear. Id. Plaintiff argues that any testing that Defendants now claim they wished to perform should have been completed and included in their expert's initial report, which was due by January 16, 2015. Id. Further, Plaintiff contends that testing of unidentified wet paint samples owned by some other party is not intended to contradict or rebut Plaintiff's expert, but rather to support Defendants' own counter-claims. Id. at 8. Plaintiff claims that the Court should not extend the February 13, 2015, supplemental report deadline to allow Defendants to submit a report that was due on January 16, 2015. Id.

### 2. RULE 26(e) - DUTY TO SUPPLEMENT

Plaintiff argues that the provisions of Rule 26(e) are not license to ignore the Court's Scheduling Order. (Doc. No. 121 at 7.) It asserts that Rule 26(e)(3) provides the default deadlines for pretrial disclosures, unless the Court orders otherwise, and here, the Court set deadlines for initial and supplemental expert reports. Id.

## II. REMOVAL OF WET PAINT SAMPLES

**A. DEFENDANTS' ARGUMENT**

Defendants claim that, during a deposition of third-party witness, Kenneth Ybarra, owner of a former distributor of Plaintiff's paint products, it came to light that a third-party auto body shop, Qualtech Auto Collision, possessed samples of Plaintiff's

AWX automotive paint products that were manufactured during the relevant time period.  (Doc. No. 120 at 5.)  During the November 7, 2014 deposition, Defense counsel requested that Plaintiff not remove the wet paint samples from that shop.  Id. Defendants now claim that Plaintiff removed the wet paint samples without any prior notice to Defendants, and as a result, Defendants have had difficulty obtaining other samples of Plaintiff's AWX paint products for Defendants' paint expert to test.  Id.

Defendants argue that they could not subpoena these samples from the third-party shop because Mr. Ybarra's deposition on the fact discovery cutoff date. (Doc. No. 120 at 6.)  Defendants state that they have now been able to obtain some paint samples, but due to Plaintiff's removal of the wet paint samples from the third-party shop, they have been deprived of the opportunity to test the very products causing the same subject defects by one of Plaintiff's other customers.  Id.

Defendants seek an extension of the supplemental paint expert report deadline so that their expert's testing and results may be included in the supplemental report. (Doc. No. 120 at 6.) During the Discovery Hearing, Defendants argued that their expert wants to test wet paint samples to "augment" the initial report, not to provide new theories.  They also claim that Plaintiff's actions are tantamount to spoliation of evidence, and state that they intend to make an appropriate discovery motion.  Id. at 5, n. 2.  During the Discovery Hearing, Defense counsel noted that Defendants were not sure if they should bring the motion for spoliation before this Court or before the Honorable Larry A. Burns, the District Judge assigned to these cases.

## B. PLAINTIFF'S OPPOSITION

Plaintiff argues that Defendants now raise the issue of testing of wet paint samples three months after Plaintiff allegedly removed the paint samples, more than two months after Defendants retained their expert witness, and after Defendants produced their initial expert report. (Doc. No. 121 at 9.) Plaintiff contends that, despite having the burden of proving their defect counterclaims, Defendants' expert did not perform any testing on paint samples that were taken by both parties by scraping off chips of allegedly defective paint with a razor blade.  Id. at 3-4.  Plaintiff also claims

that Defendants' expert failed to mention the samples in his January 16, 2015, expert report. Id. at 4. Further, Plaintiff claims that Defendants' expert said nothing in his report about wanting to test wet paint samples that were never actually used by Defendants. Id.

Plaintiff also notes that in Defendants' prior *Ex Parte* Motion for Extension of Time to Prepare Expert Report (Doc. No. 109), filed on December 8, 2014, Defendants did not cite any difficulty with respect to any paint sample testing that they wished to perform. (Doc. No. 121 at 5.)  With respect to Defendants' difficulty obtaining other wet paint samples to test, Plaintiff argues that Defendants had mixing rooms full of toner for four years, purchased more than $1,000,000 in paint products from Plaintiff, and could walk into any Sherwin-Williams paint store to obtain samples. Id. at 9-10. Plaintiff also contends that Defendants met multiple times with Mr. Ybarra and could have asked him for paint samples before fact discovery closed, but did not. Further, Plaintiff argues that the toners in dispute are not relevant to the issue at hand, as Defendants seek to test outdated toners from another body shop that experienced different shop conditions.

## C. PRIOR RELEVANT COURT ORDER

On December 11, 2014, the Court granted Defendants' request for an extension of time to complete expert reports relating to quality testing of paint products. (Doc. No. 112.)  The deadline for initial expert reports was extended from December 12, 2014, to January 16, 2015, and the deadline for supplemental expert reports was extended from January 16, 2015, to February 13, 2014. Id. at 2-3.

## III. PLAINTIFF'S DOCUMENT PRODUCTION WITH ITS EXPERT REPORT

### A. DEFENDANTS' ARGUMENT

Defendants argue that Plaintiff withheld over four thousand pages of discoverable documents until it produced its paint expert's initial report on January 16, 2015. (Doc. No. 120 at 6.)  Defendants claim that these documents were responsive to their prior discovery requests and should have already been produced. Id.  Defendants

1   claim that their expert must review these documents before completing his supplemen-

2   tal written report.  Id.

3          Defendants state that they made the appropriate request for these documents

4   (PQR and supporting Analytical Reports) in March of 2014.  (Doc. No. 120 at 6-7.)

5   They argue that Plaintiff's defense to Defendants' counterclaims relies in part on

6   "application error," which is exemplified in the Formula Express program documents

7   produced in this late discovery.  Id. at 7.  Defendants contend that Plaintiff has

8   "willfully and unjustifiably withheld responsive, discoverable documents in an effort

9   to prejudice Defendants' and their designated paint expert's ability to fully analyze the

10  documents and the information contained within before the close of expert discovery."

11  Id.

12          **B. PLAINTIFF'S OPPOSITION**

13          Plaintiff claims that it had already produced most of these documents during

14  this litigation. (Doc. No. 121 at 11.)  Plaintiff states that, on January 16, 2015, Plaintiff

15  produced its paint expert's initial report and turned over facts that its expert relied on.

16  Id.  Plaintiff states that Defendants have been provided with 150 new pages of PQR

17  documentation and laboratory analyses of paint peel samples, and they have had since

18  January 16, 2015 to review the documents.  Id. at 12.  Plaintiff also notes that

19  Defendants themselves produced over 500 pages of new documents in conjunction with

20  their disclosures.  Id. at 13.

21          Plaintiff also asserts that its document production included over 3,000 pages

22  of a PDF printout of a formula express mix spreadsheet.  Plaintiff argues that

23  Defendants never requested this information, and rather, the spreadsheet was created

24  because Plaintiff's expert wanted to do a statistical analysis to determine the number

25  of complaints compared to the number of mixes.  This generated more than 3,000 pages

26  of raw data, which Plaintiff produced to Defendants in conjunction with its expert's

27  report.

28

## IV. <u>SHIPPING MISHAP</u>

### A. <u>DEFENDANTS' ARGUMENT</u>

On February 9, 2015, Defendants claim that they were informed that their wet paint samples were damaged during shipping to their expert's office in Michigan. (Doc. No. 120 at 8.) Defendants assert that they must now obtain new wet paint sample materials and re-ship them to their expert.

Defendant claims that the first shipment of samples arrived with no problem, but the second shipment of samples was damaged. They argue that through no fault of their own, Defendants' expert will not be able to complete testing and prepare a complete supplemental expert report on time due to the shipping mishap. (Doc. No. 120 at 8.)

### B. <u>PLAINTIFF'S OPPOSITION</u>

Plaintiff argues that the products were delivered to Defendants' expert one day late, which does not provide good cause to extend deadlines by 30 days. (Doc. No. 121 at 13.) Plaintiff contends that the only way Defendants could successfully prove that their claimed injury is relevant would be to argue the paint samples were destroyed before January 16, 2015 (date of initial report), which they were not. <u>Id.</u> at 14. Plaintiff reiterates its assertion that the supplemental report is only meant to contradict or rebut initial reports, not to provide new theories or support the expert's own report. <u>Id.</u>

## V. <u>ADDITIONAL OBJECTIONS BY PLAINTIFF</u>

Plaintiff argues that Defendants' *Ex Parte* Application fails to provide any evidence that the testing of the material at issue is needed to rebut evidence of the same subject matter raised by Plaintiff in its initial expert reports. (Doc. No. 121 at 6.) Plaintiff asserts that Defendants are actually requesting a retroactive extension of the January 16, 2015 deadline to submit their case-in-chief expert report with testing the expert should have done months ago. <u>Id.</u>

Plaintiff argues that Defendants have previously asked for multiple extensions due to their own delays, including Defendants' request for an additional 14 days to disclose their expert witness on November 4, 2014, despite knowing about the deadline

13CV1946, 13CV1947

in the scheduling order for nine months. (Doc. No. 121 at 13.) Plaintiff also notes that, in December of 2014, Defendants requested additional time to produce expert reports because of the sheer volume of testing documents that they requested from Plaintiff. Id. Further, Plaintiff asserts that Defendants made no efforts to retain their own witness, perform their own testing, or secure samples for the seven months that discovery was open. Id.

Plaintiff also argues that if the Court grants Defendants' *Ex Parte* Application, it will result in prejudice. (Doc. No. 121 at 14.) Plaintiff is concerned that the Court will not be afforded enough time to adequately review and decide pretrial motions if the pretrial motion deadline is extended to April 13, 2015. Id. The Pretrial Conference is currently set before Judge Burns on July 20, 2015. (Doc. No. 29.)

## VI. APPLICABLE LAW

### A. RULE 26(a)(2)(C) v. RULE 26(a)(2)(D)

Rule 26(a)(2)(C) states,

(C) *Witnesses Who Do Not Provide a Written Report*. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
(ii) a summary of the facts and opinions to which the witness is expected to testify.

Rule 26(a)(2)(D) states,

(D) Time to Disclose Expert Testimony. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

(i) at least 90 days before the date set for trial or for the case to be ready for trial; or
(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

## B. RULE 26(e) - DUTY TO SUPPLEMENT

Rule 26(e) discusses Supplementing Disclosures and Responses. Fed.R.Civ.P. 26(e). Rule 26(e)(2) states,

> (2) *Expert Witness*. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Rule 26 governs discovery and the duty to disclose. With an expert report, "the party's duty to supplement extends to both information included in the report and to information given during the expert's deposition." Fed.R.Civ.P. 26(e)(2). However, Rule 26 creates a duty to supplement, not a right. Cueto v. Overseas Shipholding Group, Inc., 2012 WL 28357, at *2 (S.D. Cal. Jan. 4, 2012) ("In short, Rule 26 imposes a duty on Plaintiffs; it grants them no right to produce information in a belated fashion."). "Supplementing an expert report pursuant to Rule 26(e) means 'correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" Gerawan Farming, Inc. v. Rehig Pacific Co., 2013 WL 1982797, at *5 (E.D. Cal. May 13, 2013) (citing Keener v. United States, 181 F.R.D. 639, 640 (D.Mont. 1998)). The time for supplementation is not limited to the discovery period. Dayton Valley Investors v. Union Pacific R. Co., 2010 WL 3829219 (D.Nev.); see also Advisory Comm. Notes to 1993 Amendments ("Supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches."). In the context of supplementing an expert report, "[a]ny additions or changes ... must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed.R.Civ.P. 26(e)(2).

In determining whether a supplement under Rule 26(e) is appropriate, the court considers (1) whether the supplemental information corresponds to a prior Rule 26(a) disclosure and if so, (2) whether the supplemental information was available at

the time set for the initial disclosure.  <u>Carrillo v. B & J Andrews Enterprises, LLC</u>, 2013 WL 420401 (D.Nev. Jan 31, 2013).

"Although [Rule 26(e)] requires a party to 'supplement or correct' a disclosure upon information later acquired, that provision does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report...."  <u>Lindner v. Meadow Gold Dairies, Inc.</u>, 249 F.R.D. 625, 639 (D.Haw. 2008) quoting <u>Beller ex rel. Beller v. United States</u>, 221 F.R.D. 689, 695 (D.N.M. 2003) (citation omitted).  For example, courts have rejected supplemental expert reports that were significantly different from the expert's original report and effectively altered the expert's theories, or attempted to deepen and strengthen the experts' prior reports.  <u>Id.</u>  Moreover, supplementation "does not cover failures of omission because the expert did an inadequate or incomplete preparation … To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation."  <u>Akeva LLC v. Mizuno Corp.</u>, 212 F.R.D. 306, 310 (M.D.N.C. 2002) (citations omitted).

## C. STANDARD FOR MODIFYING COURT'S SCHEDULING ORDER

Rule 16(b)(4) "provides that a district court's scheduling order may be modified upon a showing of 'good cause,' an inquiry which focuses on the reasonable diligence of the moving party."  <u>Noyes v. Kelly Servs.</u>, 488 F.3d 1163, 1174 n. 6 (9th Cir.2007); citing <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 609 (9th Cir. 1992).  In <u>Johnson</u>, the Ninth Circuit explained,

> ... Rule 16(b)'s "good cause" standard primarily concerns the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed .R.Civ.P. 16 advisory committee's notes (1983 amendment) ... [T]he focus of the inquiry is upon the moving party's reasons for seeking modification.... If that party was not diligent, the inquiry should end.

<u>Johnson</u>, 975 F.2d at 609.

In part, the "good cause" standard requires the parties to demonstrate that "noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 Scheduling conference ..." Jackson v. Laureate, Inc., 186 F.R.D. 605, 608 (E.D. Cal. Jun. 16, 1999).

## VII. DISCUSSION

### A. CLARIFICATION OF THE COURT'S SCHEDULING ORDER

#### 1. RULE 26(a)(2)(C) v. RULE 26(a)(2)(D)

The parties correctly note that there is a typographical error in paragraph 4 of the Court's Scheduling Order. Rule 26(a)(2)(C) refers to witnesses who do not provide a written report, and this subsection of Rule 26 is incorrectly cited in paragraph 4, which discusses supplemental expert reports. (Doc. No. 120 at 2.)  Rule 26(a)(2)(D) should be cited in paragraph 4 of the Court's Scheduling Order, as it governs the timing for disclosure of expert testimony.  Fed.R.Civ.P. 26(a)(2)(D)(i)-(ii).

Although the Court's Scheduling Order includes a mistake, the Court's intent can be easily understood by reading paragraph 4 as a whole.  The Court clearly indicated that the purpose of supplemental expert reports was to discuss evidence intended solely to contradict or rebut evidence on the same subject matter identified in an expert report submitted by another party. (Doc. No. 29 at 2.)  Therefore, the Court agrees with Plaintiff that there is no room for confusion on this point.  Further, the Court previously granted Defendants' motion to extend the report dates for experts relating to quality testing of paint products only.  (Doc. No. 112.)  Thus, the supple-mental expert reports deadline for all other experts was January 16, 2015.  Defendants did not notify the Court of any confusion with the Scheduling Order with respect to any other supplemental expert reports.

During the Discovery Hearing, Defendants unequivocally agreed that the term "supplemental report" refers to a report intended solely to contradict or rebut opinion evidence included in an expert report.  However, despite Defendants' agreement with

that statement, they argued that their expert intends to test wet paint samples for the purpose of augmenting his initial report. By <u>augmenting</u> their initial expert report, Defendants seek to add to, expand, and strengthen their initial report. This type of supplementation of the report is against the clear language of Rule 26(a)(2)(D), case law, and paragraph 4 of this Court's Scheduling Order.

During the Discovery Conference, the Court tried to elicit from Defendants how the additional testing, if allowed, would be used to contradict or rebut an initial report produced by Plaintiff. Defendants failed to provide a clear response, and instead simply argued that Plaintiff's expert claims that the painters were the problem while Defendants assert that the paint was the problem.

## 2. <u>RULE 26(e) - DUTY TO SUPPLEMENT</u>

At the Discovery Hearing, after Defendants conceded that their expert needed additional time to augment his report although they also agreed that supplemental reports were used solely to contradict or rebut opinions provided in initial reports, Defendants argued that experts are required to supplement information. They claim that they seek clarification as to whether this Court is requiring that all testing, inspections, and document analysis be completed by the time that a supplemental report is issued, or if the Court is affirming the parties' obligations to supplement under Rule 26(e)(2). Defendants assert that if the Court is affirming the parties' obligations to supplement, then any continued testing, inspections, and document analysis not completed by the supplemental report deadline, but which simply confirms and supports the opinions of the designated experts as already disclosed in the initial expert reports, can be produced after the supplemental report deadline. (Doc. No. 120 at 3.) In other words, Defendants are asking the Court if they can continue to perform testing, inspections, and analysis well after the deadlines set forth in the Court's Scheduling Order in an effort to complete work that should have already been done. To allow this would violate the purpose of Rule 26(e), and would eviscerate any deadlines set by the Court, as it would give the parties free rein to continue testing, inspections, and analysis up through trial.

1    Based on the evidence before the Court, it appears that all of the allegedly
2    "new" information that Defendants seek to include in their expert's future
3    supplementation was available well before production of the initial report, but
4    Defendants failed to diligently retain an expert, obtain samples, conduct testing, and
5    have their expert perform the necessary analyses.  Defendants concede that their expert
6    intended to augment his report.  Defendants do not intend to correct inaccuracies or fill
7    in interstices of an incomplete report, and therefore, any such supplements are improper
8    under Rule 26(e).

9    ## B. REMOVAL OF WET PAINT SAMPLES

10    As to Defendants' allegation that Plaintiff engaged in spoliation of evidence
11    by removing wet paint samples from Qualtech Auto Collision ("Qualtech"), Plaintiff
12    counters with an argument that these samples are irrelevant, as they are from a different
13    shop and experienced different conditions.  Whether or not these wet paint samples are
14    relevant, Defendants have failed to provide the Court with a valid explanation for
15    waiting two months to bring the alleged spoliation issue to the Court's attention.  Not
16    only have Defendants violated this Court's Chambers Rules, which require parties to
17    bring any disputes to the Court's attention within 30 days, but Defendants also fail to
18    explain why this issue was not raised prior to the exchange of initial expert reports.

19    Defendants allege that Plaintiff removed the wet paint samples from Qualtech
20    in early November of 2014, and that Defense counsel learned of the removal on
21    December 12, 2014.  Initial expert reports were due on January 16, 2015, yet
22    Defendants waited until the filing of the instant *Ex Parte* Motion on February 11, 2015,
23    to notify the Court of the removal of the samples.  Defendants also fail to explain how
24    their expert's testing of these wet paint samples would be used to contradict or rebut
25    any opinion in Plaintiff's experts' reports.  Plaintiff is correct that the time to assert new
26    theories and opinions concluded on January 16, 2015.

27    If Defendants' expert thought that he needed to test wet paint samples for his
28    report, the Court is perplexed as to why Defendants did not attempt to take the samples
from Qualtech when they retained their expert on November 21, 2014.  The Court is

also confused as to why, when Defense counsel learned of the removal of the paint samples on December 12, 2014, Defendants did not ask the Court for additional time to produce an initial report.

Disputes brought at this late juncture are untimely.  In its Order Granting Defendants' *Ex Parte* Motion for Extension of Time to Prepare Paint Expert Report; Amended Case Management Conference Order, the Court clearly explained that the discovery deadline included the requirement to resolve any discovery disputes.  (Doc. No. 112.)

> "Completed" means that all discovery under Rules 30-36 of the Federal Rules of Civil Procedure must be initiated a sufficient period of time in advance of the cut-off date, so that it may be completed by the cut-off date, taking into account the times for services, notice, and response as set forth in the Federal Rules of Civil Procedure, **and any motions and the resolution of any discovery disputes**. All disputes concerning discovery shall be brought to the attention of the Magistrate Judge no later than thirty (30) days following the date upon which the event giving rise to the discovery dispute occurred. Counsel shall meet and confer pursuant to the requirements of Fed. R. Civ. P. 26 and Local Rule 26.1(a).

(Doc. No. 112 at 3) (emphasis in original).

Defendants contend that they were unsure as to whether a spoliation motion would be brought before the District Judge by the dispositive motion filing deadline, or brought before this Court.  First, this Court has heard spoliation motions before and has provided reports and recommendations to the District Judges, as spoliation motions typically arise during the discovery phase of litigation.  Second, even if discovery or spoliation motions can be brought after the discovery cutoff date, Defendants failed to notify the Court of any dispute within 30 days of learning about the alleged spoliation. This Court's Chambers Rules require parties to notify the Court of a discovery dispute within 30 days of the date upon which the event giving rise to the dispute occurred. Judge Gallo's Chambers Rule IV(B).  Here, Defense counsel learned about the alleged spoliation on December 12, 2014.  Either because they mistakenly believed that this was a motion to be brought before the District Judge, or, as Defendants also stated at the Discovery Hearing, they were scrambling to locate additional wet paint samples, they failed to notify the Court of any issue in a timely manner.

Although a spoliation of evidence motion is not currently before the Court, accusations against Plaintiff have been briefed to the Court in connection with Defendants' request for an extension of time. Therefore, the Court will briefly address the accusations. Defense counsel contends that he was not sure whether the wet paint samples were critical when he learned about them at Mr. Ybarra's deposition on November 7, 2014. If Defense counsel did not think the samples were critical, then that argument applies equally to Plaintiff, and Plaintiff had the right to remove the paint samples for the business reasons outlined at the Discovery Hearing.

Despite Defendants' uncertainty, they took no steps to determine before whom a spoliation motion should be brought. In short, by failing to timely bring such a motion to this Magistrate Judge for resolution, when the odds of correcting, if possible, any spoliation if it occurred, Defendants unilaterally, by default, and implicitly determined that the motion ought to be brought before the District Judge, who may or may not conclude that the motion is untimely. This decision was made at the Defendants' peril.

The Court believes, however, that Defense counsel did recognize, although maybe not with certainty, the importance of the samples. Unfortunately for Defendants, they did nothing to obtain the samples in a timely manner. Even if it is proper for Defendants to wait to bring a spoliation motion before the District Judge, their failure to raise it in a timely manner in the context of the submission deadlines of expert reports, demonstrates a lack of due diligence. For the above and the other reasons stated herein, Defendants are not entitled to an extension of time to file the expert's supplemental report.

### C. PLAINTIFF'S DOCUMENT PRODUCTION

The Court is not persuaded by Defendants' argument that they have been prejudiced by Plaintiff's eleventh hour document production. Defendants allege that Plaintiff belatedly produced over 4,000 new documents along with its expert's initial report. Plaintiff claims that its January 16, 2015, document production included over

1    3,000 pages of a PDF printout of a formula express mix spreadsheet that Defendants

2    never requested during discovery.

3          This Court agrees with Plaintiff that Defendants clearly knew about the

4    formula express mix, as Defendants admitted that they also used this program to mix

5    formulas.  Knowing that it existed, Defendants did not request this information from

6    Plaintiff during discovery.  If they did, Defendants failed to notify the Court that

7    Plaintiff did not respond to a discovery request.

8          Additionally, Plaintiff conceded during the Discovery Hearing that it produced

9    150 pages of new PQRs along with its expert's initial report.  Plaintiff's expert had

10   from January 16, 2015 to February 13, 2015, to review these documents.  The Court

11   finds that this was sufficient time for Defendants' expert to review the documents, and

12   therefore, Defendants were not prejudiced by Plaintiff's January 16, 2015, document

13   production.

14         According to Plaintiff, Defendants' expert does not need this information to

15   conduct his testing and analysis.  Plaintiff claims that this accusation of an eleventh

16   hour document dump is simply another red herring asserted by Defendants in an effort

17   to obtain a deadline extension.  The Court agrees.

18         **D. SHIPPING MISHAP**

19         The Court has already determined that Defendants' expert's testing of wet

20   paint samples would not be used to rebut or contradict opinions in Plaintiff's expert's

21   initial report.  Therefore, Plaintiff is correct that the shipping mishap would only be

22   relevant if it occurred prior to the deadline to exchange initial expert reports, which it

23   did not.

24   **VIII. RULING**

25         The parties have been warned that there will be no extensions to the

26   Scheduling Order absent good cause.  See Scheduling Order (Doc. No. 29 at 6) ("The

27   dates and times set forth herein will not be further modified except for good cause

28   shown.")  The facts provided by Defendants in the instant *Ex Parte* Application do not

     constitute good cause.  Rather, the facts simply demonstrate Defendants' poor planning

                                        17

1   and lack of diligence in timely retaining an expert, communicating with their expert,

2   and providing their expert with the discovery necessary to conduct analyses and prepare

3   a report. Fact discovery closed on November 7, 2014. (Doc. No. 75 at 2.) Defendants

4   retained their expert on November 21, 2014, the deadline to designate experts. This

5   deadline had already been extended by two weeks. At the time Defendants retained

6   their expert, his initial report was due on December 12, 2014, a mere three weeks later.

7   Although aware of Qualtech's wet paint samples, Defendants had not yet attempted to

8   obtain the samples.

9         On December 8, 2014, Defendants filed an *Ex Parte* Motion for Extension of

10  Time to Prepare Paint Expert Report. (Doc. No. 109.) With their paint expert's initial

11  report due in just four short days, Defendants were still unaware that the wet paint

12  samples had been removed from Qualtech. Plaintiff opposed Defendants' Motion.

13  (Doc. No. 110.) On December 11, 2014, the Court granted Defendants' Motion. (Doc.

14  No. 112.)

15        Defense counsel represented that he first learned that Plaintiff removed wet

16  paint samples from Qualtech on December 12, 2014, the day after the Court granted

17  Defendants' Motion and extended the paint experts' initial reports deadline to January

18  16, 2015. Once Defense counsel learned of the removal, even though their expert had

19  just over one month to prepare and produce his report by the extended deadline,

20  Defendants failed to inform the Court of the alleged spoliation of evidence. Thus,

21  Defendants had one month, with the Christmas and New Year's holidays included, to

22  locate additional wet paint samples and provide the samples to their expert. They also

23  had to allow their expert sufficient time to conduct all necessary testing and analysis,

24  and to prepare a written report. This timeline of events is the antithesis of diligent.

25        Defendants' justification for their latest extension request is full of blame for

26  everyone else, yet devoid of any facts showing Defendants' due diligence leading up

27  to this request. Fingers are pointed everywhere, at Plaintiff, the Court, and the third

28  party who packaged the paint shipment, but Defendants have failed to explain <u>what</u>

    <u>they did</u>, <u>or could not do</u>, to meet the supplemental expert report deadline.

They have failed to explain why they waited until the final day for expert designation to actually retain an expert.  The need for an expert was not a surprise to anyone, as Defendants' counterclaims involve allegations of defective paint. Defendants filed their counterclaims on October 1, 2013, and October 4, 2013, so they knew that they needed an expert for more than a year, but they waited until the very last day to retain an expert.  Thus, Defendants deprived themselves of the benefit of consulting with an expert when formulating discovery requests.  This is simply another factor demonstrating Defendants' nonchalant approach to this litigation.

Defendants also argue that, by the time they learned of the removal of the paint samples, it was too late to issue a subpoena because fact discovery closed on November 7, 2014, the same day as Mr. Ybarra's deposition.  This is yet another example of the parties in this litigation waiting until the last minute to complete critical tasks, leaving themselves no time to react to new information.

The Court is not a mere rubber stamp, and the parties must show respect for the Court's schedule and its repeated admonishments not to wait until the eleventh hour to complete discovery.  That is exactly what Defendants did in this case.

Defendants did nothing to obtain the samples from Qualtech after Mr. Ybarra's November 7, 2014, deposition.  Defendants did not bring any of this information to the Court's attention prior to the deadline for initial reports, and they waited until two days before the supplemental expert report deadline to file the instant *Ex Parte* Application.

Defendants argue that, through no fault of their own, their retained expert is unable to conclude his testing in time to prepare a complete supplemental expert report in compliance with the Court's Scheduling Order.  (Doc. No. 120 at 8.)  The Court disagrees and finds that Defendants' own conduct has placed them in the undesirable position of requesting an extension of the supplemental report deadline so that their expert can conduct testing that should have been completed prior to the initial report deadline. Defendants delayed in retaining an expert that could have provided guidance during the discovery process, waited too long to bring the alleged spoliation issue to

19

1   this Court's attention, and failed to show that Plaintiff's January 16, 2015 document

2   production, or the shipping mishap, caused any prejudice.

3          Defendants will not be permitted to augment their expert's initial report after

4   the January 16, 2015, deadline.  Therefore, Defendants' *Ex Parte* Application for

5   Additional Time for Defendants' Paint Expert's Supplemental Written Report is hereby

6   DENIED.[1/]

7   IT IS SO ORDERED.

8   DATED:  March 11, 2015

9

10                                              _____
                                                Hon. William V. Gallo
11                                              U.S. Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[1/] The Court hereby GRANTS in part Defendants' *Ex Parte* Application as it relates to
requesting clarification of the Court's Scheduling Order.