# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE SHERWIN-WILLIAMS COMPANY,<br><br>                              Plaintiff,<br>vs.<br>JB COLLISION SERVICES, INC. et al.,<br>                            Defendants. | CASE NO. 13cv1946-LAB (WVG)<br><br>**ORDER DENYING IN PART AND GRANTING IN PART SHERWIN-WILLIAMS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

This dispute arises from a pair of supply contracts between Sherwin-Williams, a paint company, and JB Collision Services, and JJT, Inc., automotive body shops owned by John Tyczki. Sherwin-Williams has filed a motion for partial summary judgment. (Docket no. 127.)

**I.    Factual Background**

    **A.    JB Supply Agreement**

The first communication between the parties occurred in June 2008 when a Sherwin-Williams sales representative, Jose Garcia, approached Tyczki about a potential exclusive automotive paint products supply contract. Tyczki became interested in Sherwin-Williams' new water-based paint line—AWX. Garcia allegedly represented that AWX was a tested, proven, and perfected product and, with it, a vehicle could go from "prime to shine" in 50 minutes. In September 2008, JB and Sherwin-Williams entered into a Supply Agreement (the "JB Supply Agreement").

Under the JB Supply Agreement, JB was to purchase all of its requirements for "Products" used at its body shops from Sherwin-Williams until the gross sales of its purchases of "SW Paint Products" reached $1.3 million. This was the "Term" of the agreement. "SW Paint Products" was defined in the contract as "automotive paints and coatings manufactured and sold by Sherwin-Williams under the 'Sherwin-Williams label.'" "Products" was defined as: "all automotive paints, coatings and related products, including, without limitation, the following: (i) primers; (ii) top coats; (iii) hardeners; (iv) abrasives, tapes, adhesives; and (v) all other associated products." In consideration of exclusivity, Sherwin-Williams gave JB a discount on certain products and a $275,000 advanced payment. The JB Supply Agreement stipulated that upon the occurrence of an "Acceleration Event," such as early termination, JB was required to refund a pro-rata amount of the advance payment.

**B.     JJT Supply Agreement**

In May 2011, JJT and Sherwin-Williams entered into a similar supply agreement (the "JJT Supply Agreement"). The Term of the contract was to last until gross sales of SW Paint Products to JJT reached $250,000. Sherwin-Williams made a $40,000 advance payment to JJT, and the entire amount was to be refunded in the case of an Acceleration Event. Tyczki signed a personal guaranty for consideration of the advance payment to JJT.

**C.     Contract Performance**

From September 2008 until early 2013, JB and JJT refinished about 12,000 vehicles with Sherwin-Williams paint products. From the inception of the JB Supply Agreement until Plaintiff filed suit for breach of contract in August 2013, Defendants filed four warranty claims on vehicles painted with AWX. Since then, Defendants filed an additional 28 warranty claims.

Defendants allege quality issues arose less than a month after entering the JB Supply Agreement, when JB began experiencing color-match defects with AWX. Defendants allege further that, during a meeting in September 2008, Sherwin-Williams admitted it had made false representations about AWX's quality. After the meeting, Sherwin-Williams took AWX out of JB's shops and installed a solvent-based paint line. Because JB hadn't contracted for

solvent-based products, Sherwin-Williams supplied them at no charge for the six months between September 2008 and March 2009, at which point the AWX line was reinstalled.

Starting again in July 2009, Defendants allege they had further complications with AWX, including dieback—a defect that occurs when paint loses its shine. Defendants allege they voiced their issues with the product line to Sherwin-Williams, usually to Garcia, numerous times each year from 2009 until 2013. And, while Garcia would provide "goodwill adjustments" to account for product defects, Defendants had to absorb the labor costs of repainting vehicles. In 2012, Defendants allege Tyczki met in-person with Garcia and Sherwin-Williams Vice-President David Sewell to discuss the problems. Tyczki alleges he never heard back from Sewell despite a promise that he'd "get to the bottom" of the issues.

Further, although Defendants contend they were repeatedly assured they were the "only ones" experiencing issues with the AWX line, a number of other auto body shops reportedly experienced similar issues. The cause of these issues, specifically Defendants' problem with dieback, lies at the heart of Defendants' counterclaims. Defendants allege that they encountered problems because AWX is defective. Sherwin-Williams maintains that the product isn't defective, and the issues are within the painter's control.

Defendants allege that, beginning in March 2009, in response to the issues with the AWX product line, Plaintiff provided on-site technical training to Defendants' painters and eventually certified them for use of the AWX line. Defendants allege their problems persisted and, in 2012, Sherwin-Williams proposed the adoption of a "30-60-90 Plan" which was intended to improve Defendants' body shops by optimizing the area for painting vehicles. Ultimately, the 30-60-90 Plan was never completed because, in late 2012, Tyczki stated his intention for Defendants to completely terminate their business relationship with Sherwin-Williams upon completion of the Term of the JB Supply Agreement with JB, which he contended would occur once gross sales on that account reached $1.3 million.

**D.   Sherwin-Williams' Allegation that Defendants Breached**

On February 28, 2013, Sherwin-Williams sent JB and JJT letters stating their belief that both Defendants had breached their respective Supply Agreements by installing a

competitor's paint line in their body shops. Defendants maintain they didn't actually discontinue their exclusive relationship with Sherwin-Williams until the end of March 2013, once they believed they had satisfied the Supply Agreement's gross sales requirement. At that time Defendants had purchased $1.3 million in Sherwin-Williams *Products*, but, according to Sherwin-Williams, only about $900,000 worth of *SW Paint Products*. On April 3, 2013, Tyczki sent Sherwin-Williams a letter, enclosed with a $40,000 check refunding the advance payment, stating that JJT was terminating its Supply Agreement as of April 8, 2013.

Sherwin-Williams also alleges Defendants breached the Supply Agreements by purchasing covered products from Keystone Automotive. Prior to entering into the Supply Agreements, Defendants were in an exclusive contractual relationship with Keystone for the supply of Spies-Hecker paint products. While Defendants claim this relationship ended in 2008, discovery revealed that they continuously purchased supplies from Keystone well into 2012.

Sherwin-Williams' lawsuit for breach of contract followed.

### E. Defendants' Counterclaims

Defendants filed a counterclaim based on Sherwin-Williams' alleged defective products and unfulfilled promises. (Docket no. 36.) It contains causes of action for breach of contract, fraud, intentional misrepresentation, negligent misrepresentation, and unjust enrichment. (*Id.*)

### F. Sherwin Williams' Motion for Partial Summary Judgment

Sherwin-Williams' motion seeks:

(1) Summary judgment on its breach of contract claims against all Defendants;

(2) Summary judgment on Defendants' breach of contract claims;

(3) Summary judgment on Defendants' claim for consequential and incidental damages;

(4) Summary judgment on Defendants' unjust enrichment claims;

(5) Summary judgment on Defendants' fraud claims;

(6) Summary judgment on Defendants' misrepresentation claims

Defendants oppose Sherwin-Williams' motion, contending summary judgment is improper and Sherwin-Williams isn't entitled to attorney's fees based on the indemnity provision in the Supply Agreements.

## II. Legal Standard

Summary judgment is appropriate where the evidence shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence are drawn in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986). Where the moving party doesn't bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

If the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A fact is material if it "might affect the outcome of the suit under the governing law." *Id*.

## III. Discussion

### A. Breach of Contract Claims

#### 1. Summary Judgment on the Parties Breach of Contract Claims

Sherwin-Williams seeks summary judgment on its breach of contract claims against JB, JJT, and Tyczki. It also seeks summary judgment on Defendants' breach of contract claims against it.

Sherwin-Williams is correct that the plain language of the JB Supply Agreement required JB to purchase $1.3 million in "SW Paint Products," and the parties agree that JB didn't. *See Wohl v. Swinney*, 118 Ohio St. 3d 277, 280 (2008) ("When interpreting a contract, we will presume that words are used for a specific purpose and will avoid interpretations that render portions meaningless or unnecessary.").[1] Sherwin-Williams is also correct that JJT didn't purchase $250,000 in "SW Paint Products," as required by the JJT Supply Agreement, and the agreement doesn't limit potential damages to return of the advance. The Court finds no support for Defendants' argument that Tyczki's personal guaranty on the JJT Supply Agreement is unenforceable because he signed it before the JJT Supply Agreement became binding. Indeed, Tyczki doesn't dispute that the terms of the JJT Supply Agreement were known to him when he signed the guaranty.

But, summary judgment on the breach of contract claims is improper because issues of fact remain regarding whether the AWX paint product Sherwin-Williams supplied to JB and JJT was defective. As all parties agree, the Supply Agreement is a contract for the sale of goods governed by the Uniform Commercial Code. (Docket no. 25 at 6); (Docket no. 143 at 16); *see also Sherwin-Williams Co. v. Coach Works Auto Collision Repair Ctr., Inc.*, 2011 WL 709714, at *10 (D. Md. Feb. 22, 2011); *Alaska Pac. Trading Co. v. Eagon Forest Products, Inc.*, 85 Wash. App. 354, 359-60 (1997) (the UCC "replaced the common law doctrine of material breach . . ."). Because the Supply Agreement "authorizes the delivery of goods in separate lots to be separately accepted," it's an installment contract. Ohio Rev. Code Ann. § 1302.70(A). Installment contracts are only "breach[ed] in the whole" when "non-conformity or default with respect to one or more installments substantially impairs the value of the whole contract." *Id*. at § 1302.70(C). In that case, the buyer may cancel the contract, recover the price paid, "cover" by purchasing substitute goods, and recover damages. *Id*. at § 1302.85(A). Thus, if Sherwin-Williams provided nonconforming products,

---

[1] The Supply Agreements are governed by Ohio law. But, the choice of law provision is limited to claims arising from, or relating to, the contract. *See Wehlage v. EmpRes Healthcare Inc.*, 821 F. Supp. 2d 1122, 1127 (N.D. Cal. 2011). Thus, California law controls the fraud-based claims. *See Nat'l Seating & Mobility, Inc. v. Parry*, 2011 WL 4831198 at *4 (N.D.Cal. Oct.12, 2011).

or otherwise defaulted, and thereby substantially impaired the value of the Supply Agreements "in the whole," Defendants' performance would be excused and they could maintain a lawsuit for Sherwin-Williams' breach.

The evidence presented by the parties is susceptible to multiple interpretations. As Sherwin-Williams argues, a jury *could* view the low number of pre-suit warranty claims as evidence that Sherwin-Williams didn't provide defective products or otherwise substantially impair the value of the Supply Agreements. Conversely, a jury *could* view the warranty claims, Defendants' claimed oral complaints, and the uninstallation of the AWX paint line in JB's body shop as evidence that Sherwin-Williams did breach the contract as a whole. *McCullough v. Bill Swad Chrysler-Plymouth, Inc.*, 5 Ohio St. 3d 181, 186, 449 N.E.2d 1289, 1294 (1983) (stating that whether a defect amounts to substantial impairment is an issue of fact). That's especially true because "notice of nonconformity or rejection of the goods by the buyer need not be in any particular form and may be implied from conduct." *Coach Works*, 2011 WL 709714, at *12 (internal quotation marks omitted). Sherwin-Williams' motion for summary judgment on the breach of contract claims is **DENIED**.

### 2. Contract Damages Available to Defendants

In the Supply Agreements, Defendants disclaim any right to special, indirect, incidental, or consequential damages. This is a valid waiver of warranties. *See Sherwin-Williams Co. v. JJT, Inc.*, 2014 WL 2587483, at *2 (S.D. Cal. June 10, 2014). While Defendants don't contest the disclaimer's validity, they contend they're entitled to "direct contract damages in the amount of the value in materials and labor costs for warranty work that Defendants have performed and continue to perform in order to correct dieback defects on customer vehicles caused by S-W's AWX paint products." (Docket no. 143 at 16.)

This sort of injury proximately resulting from a breach of contract falls squarely into the definition of consequential damages. Ohio Rev. Code Ann. §§ 1302.86(B), 1302.88(B), 1302.89(B); *cf. Contempo Metal Furniture Co. v. East Texas Motor Freight Lines, Inc.*, 661 F.2d 761, 765 (9th Cir. 1981) (labor costs wasted in an attempt to use materials damaged in shipping are consequential damages). Thus, the damages Defendants can recover are

limited to the difference in value between the products received from Sherwin-Williams and the value of those products as warranted under the Supply Agreement. *See Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Products Inc.*, 2007 WL 894833, at *27 (S.D. Ohio Mar. 22, 2007).

### 3. Attorney's Fees Available to Sherwin-Williams

Citing a general indemnification provision in the Supply Agreements, Sherwin-Williams contends Defendants must indemnify it for attorney's fees arising out of this lawsuit. (Docket no. 127 at 3.) Courts are split on whether an indemnification provision authorizes the award of attorney's fees with regard to claims between the parties to the agreement. *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 471 (Iowa 2010) (collecting cases). Some jurisdictions have found that "indemnification provisions do not authorize the award of attorney fees with regard to claims between the parties to the agreement because indemnification provisions only apply to third-party claims." *Id*. Ohio falls into this category. *Am. Premier Underwriters, Inc. v. Marathon Ashland Pipeline, LLC*, 2004 WL 937316, *5 (Ohio Ct. App. 2004) ("The agreement contemplates that indemnity is available only for 'suits, costs and expenses' brought by a third party and not for a dispute between the parties to the agreement concerning the meaning of their contract."); *Cf. Wilborn v. Bank One Corp.*, 121 Ohio St. 3d 546, 548 (2009) ("Attorney fees may be awarded when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees."). Thus, the indemnification provision doesn't provide Sherwin-Williams a basis to collect its attorney's fees from Defendants in this case.

### B. Unjust Enrichment Claim

"[A] claim for unjust enrichment may be pled in the alternative when the existence of an express contract is in dispute and may be maintained despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality." (Docket no. 56 at 15) (quoting *Cheers Sports Bar & Grill v. DirecTV, Inc.*, 563 F. Supp. 2d 812, 819 (N.D. Ohio 2008)). The Court explained it interprets *Cheers* to stand for the proposition that, whether or not the existence of an express contract is up for debate, an unjust enrichment claim may

be pled in the alternative where there are also allegations of fraud. *Id*. Sherwin-Williams now seeks summary judgment on Defendants' unjust enrichment claim, contending it arose before October 1, 2010, so it's time barred under the three year statute of limitations for fraud claims.

The statute of limitations on a cause of action doesn't begin to run until "all of its elements" have occurred. *Pooshs v. Philip Morris USA, Inc.*, 51 Cal. 4th 788, 797 (2011). "Under Ohio law, a plaintiff must prove the following elements to succeed in an action for unjust enrichment: (1) a benefit conferred by the plaintiff upon the defendant, (2) defendant's knowledge of the benefit, and (3) improper retention of the benefit without the defendant's rendering of payment to plaintiff for same." *Cheers*, 563 F. Supp. 2d at 819 (internal quotation marks omitted). The parties' allegations are susceptible to multiple interpretations regarding when Sherwin-Williams' retention of the benefits of the Supply Agreements became unjust. For example, Defendants allege the JJT Supply Agreement wasn't entered until May 2011, and that, from 2011 through 2013, Sherwin-Williams verbally assured Defendants that they would correct the alleged defects. (Docket no. 36, ¶¶ 20(h)-(l). From these allegations, a jury could determine that Defendants' unjust enrichment claim didn't accrue until October 1, 2010, or later. Thus, Sherwin-Williams' motion for summary judgment on Defendants' unjust enrichment claim is **DENIED**.

### C. Fraud and Misrepresentation Claims

Defendants allege Sherwin-Williams made knowing misrepresentations from 2008 to 2013. These alleged misrepresentations fall into two categories: (1) false statements about the quality of Sherwin-Williams' products and (2) ultimately unfulfilled promises to cure defects. (Docket no. 56 at 7.) The misrepresentations are the basis for Defendants' causes of action for fraud, intentional misrepresentation, and negligent misrepresentation. Sherwin-Williams moves for summary judgment on these claims, contending: (1) the majority of the fraud allegations are time barred; (2) Defendants can't establish the scienter or intent to defraud elements of misrepresentation; and (3) Defendants can't establish the justifiable reliance element of misrepresentation.

### 1. Statute of Limitations

Pursuant to California Code of Civil Procedure § 338(d), there is a three-year statute of limitations for "[a]n action for relief on the ground of fraud or mistake," which "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." "[T]he elements of intentional misrepresentation, or actual fraud, are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." *Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1296 (S.D. Cal. 2011) (internal quotation marks omitted). "Since a cause of action *accrues* when the *elements* of the cause of action, including damage occur, the appreciable and actual harm that results in accrual must be harm of the specific type that is recoverable as damages on that type of cause of action." *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008) (internal quotation marks omitted). "Although this ordinarily occurs on the date of the plaintiff's injury, accrual is postponed until the plaintiff either discovers or has reason to discover the existence of a claim, i.e., at least has reason to suspect a factual basis for its elements." *Id*. (internal quotation marks omitted).

The Court previously explained that "any claim accruing on or after October 1, 2010 will not be barred by the statute of limitations." (Docket no. 56 at 10.) Defendants allege Sherwin-Williams made fraudulent misrepresentations both before and after this date. (Docket no. 36, ¶¶ 17-20).

Sherwin-Williams now argues that any fraud claims based on misrepresentations made before October 1, 2010 are time-barred. Defendants correctly point out that the statute of limitations doesn't accrue until all elements of fraud occur, and argue that they didn't know of their damages until they were sued by Sherwin-Williams and "learned that [it] had been lying to them all along." (Docket no. 143.) But, this is contradicted by Defendants' allegations that, in 2008, Sherwin-Williams admitted it made false representations to induce JB to enter into the JB Supply Agreement. (Docket no. 36, ¶ 20(c),(d),(f).) And, since Defendants allege they absorbed the labor costs associated with repainting vehicles due to

product defects (*id.*, ¶ 20(g)), they can't claim they weren't aware of the damages stemming from these misrepresentations. Thus, the representations made to induce Defendants to enter the JB Supply Agreement are time barred. Issues of fact remain regarding when the claims arising out of the remainder of the alleged misrepresentations accrued. Sherwin-Williams' motion for summary judgment on Defendants' fraud claim on statute of limitations grounds is **GRANTED IN PART AND DENIED IN PART**.

### 2. Scienter

"The intent element of promissory fraud entails more than proof of an unkept promise or mere failure of performance." *Mazed v. JP Morgan Chase Bank, NA*, 2014 WL 1364929, at *6 (C.D. Cal. Apr. 7, 2014) (internal brackets and quotation marks omitted). "If [a claimant] adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury." *Id*. (internal brackets and quotation marks omitted). Based on this authority, Sherwin-Williams alleges Defendants haven't gone beyond alleging an unkept promise. It is wrong. Defendants allege Sherwin-Williams told them they were the "only ones" experiencing defects, but later learned that multiple other Sherwin-Williams customers experienced, and complained to Sherwin-Williams about, product defect issues. From this evidence, a jury could conclude Sherwin-Williams acted with knowledge of falsity and intent to defraud. Sherwin-Williams' motion for summary judgment on Defendants' fraud claim for lack of scienter is **DENIED**.

### 3. Justifiable Reliance

Sherwin-Williams also contends that any reliance by Defendants wasn't reasonable. "Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a [claimant's] reliance is reasonable is a question of fact." *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995). This isn't the rare case. Defendants allege numerous misrepresentations, and whether they justifiably relied on them is an issue of fact for trial. Sherwin-Williams' motion for summary judgment on Defendants' fraud claim for lack of justifiable reliance is **DENIED**.

/ / /

**IV. Conclusion**

Sherwin-Williams' motion for summary judgment on the breach of contract claims and unjust enrichment claims is **DENIED**. Its motion for summary judgment on Defendants' fraud claims is **GRANTED IN PART AND DENIED IN PART**. The alleged misrepresentations made to induce Defendants to enter the JB Supply Agreement are time barred.

**IT IS SO ORDERED**.

DATED: June 29, 2015

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge