1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10
11

THE SHERWIN-WILLIAMS COMPANY,

CASE NO. 13cv1946-LAB (WVG)

12

Plaintiff,

**ORDER DENYING DEFENDANTS'
MOTION FOR SANCTIONS FOR
SPOLIATION OF EVIDENCE**

vs.

13

JB COLLISION SERVICES, INC. et al.,

14

Defendants.

15
16
17

    This lawsuit involves allegedly defective automotive paint products Sherwin-Williams

18

supplied Defendants, two auto body shops. Whether or not Sherwin-Williams' AWX paint line

19

is defective is an unresolved material factual question in this litigation. Defendants have filed

20

a motion for sanctions for spoliation of evidence, alleging Sherwin-Williams improperly

21

destroyed AWX paint products located at the Qualtech Auto Collision auto body shop.

22

(Docket no. 127.)

23

**I.      Factual Background**

24

    During a deposition on November 7, 2014, Defendants learned that another auto body

25

shop, Qualtech, possessed five cans of expired AWX paint line toner that may have been

26

manufactured during a time relevant to this litigation. (Docket no. 126-2 at 86–91.) Toner is

27

one product used in the process of refinishing an automobile. (Docket no. 126 at 4–5, n.3.)

28

The combination of several different products including toner, primers, base coats, clear

coats, reducers, and hardeners make up a paint line "system." (*Id.*) Defendants requested during the deposition that these cans of toner not be moved from their location—Sherwin-Williams' counsel did not agree to this request. (*Id.*)

A few days after the deposition, Sherwin-Williams representatives went to Qualtech unannounced and removed and apparently destroyed the toner. (Docket no. 126-7.) Defendants are understandably angry about this, and filed this motion for spoliation of evidence. In response, Sherwin-Williams explains that its representative that serviced Qualtech removed the cans of toner completely independent of this lawsuit, and did so because the toner was expired. (Docket no. 150 at 4–6.) Because its lead attorney on this case was traveling during the relevant time period, Sherwin-Williams apparently wasn't notified of Defendants' request. (*Id.* at 7.)

Defendants contend that their expert needs "wet" paint samples, as opposed to the dry ones that Defendants have, to determine whether the paint's chemical composition led to the alleged defects underlying this lawsuit. (Docket no. 126 at 3.) They have explained that, on December 9, 2014, their expert "requested that Defendants obtain 'wet' paint samples that were manufactured and packaged during the time period in which Defendants used Plaintiff's products." (Docket no. 137-1, ¶ 3.) The Qualtech wet samples weren't available because Sherwin-Williams had destroyed them, but on January 8, 2015 Defendants shipped the remaining wet paint samples left in their possession after their business relationship with Sherwin-Williams ended. (*Id.*, ¶ 4.) This wasn't sufficient. (*Id.* ¶ 6.) "On January 14, 2015, Defendants' paint expert informed [Defendants' counsel] that the paint samples sent on January 8, 2015 were not sufficient for his purposes because they were not a 'full system sample'; i.e. a complete sample set of all necessary paint components to complete a full paint job from start to finish." (*Id.*) Defendants don't allege that the destroyed AWX toner would give them a "full system sample," and don't contest Sherwin-Williams' argument that it wouldn't. Defendants apparently didn't request a wet, full system sample during discovery, and didn't learn of its need for one until after the fact discovery cutoff date. / / /

## II.     Timeliness

While fact discovery closed on November 7, 2014, Defendants didn't file its spoliation motion until March 13, 2015.  Defendants contend that they didn't learn of the alleged spoliation until December 2014, and used the time between then and March 13, 2015 "attempt[ing] to locate other comparable 'wet' paint samples in order to mitigate the prejudice in this matter."  (Docket no. 126 at 13.)  Sherwin-Williams argues the spoliation motion is untimely.

A spoliation motion doesn't need to be filed before the close of discovery.  *See Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 506 (D. Md. 2009) (collecting cases). But, it should "be filed as soon as reasonably possible after discovery of the facts that underlie the motion."  *Id.* at 508.  Defendants' three month delay indicates that they were dilatory in bringing their spoliation motion.  That Defendants learned of their experts' need for a wet, full paint sample after the close of discovery, and spent time attempting to locate a sample through other means, doesn't fully justify their delay.  Nonetheless, the Court declines to deny the motion as untimely because it was filed before Sherwin-Williams filed its motion for summary judgment and wasn't filed on the eve of trial.  *Id.* at 509 (refusing to deny spoliation motion as untimely, despite unexcused delay, where it was brought before dispositive motions were ruled on).

## III.     Discussion

Spoliation is the destruction or significant alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.  *United States v. Kitsap Physicians Svs.*, 314 F.3d 995, 1001 (9th Cir. 2002).  A party's destruction of evidence doesn't necessarily mean that the party has engaged in sanction-worthy spoliation.  *Reinsdorf v. Skechers USA, Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013).  "Courts may sanction parties responsible for spoliation of evidence in three ways. First, a court can instruct the jury that it may draw an inference adverse to the party or witness responsible for destroying the evidence. Second, a court can exclude witness testimony proffered by the party responsible for destroying the evidence and based on the

destroyed evidence. Finally, a court may dismiss the claim of the party responsible for destroying the evidence." *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1066 (N.D. Cal. 2006) (citations omitted.)

### A.    Adverse Inference

A party seeking an adverse inference instruction based on the spoliation of evidence must establish the following three elements:

(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed;

(2) that the records were destroyed with a culpable state of mind; and

(3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Reinsdorf*, 296 F.R.D. at 626 (internal quotation marks omitted).

### 1.    Sherwin-Williams' Obligation to Preserve the Toner

"As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d at 1067.  "[C]ourts have extended the affirmative duty to preserve evidence to instances when that evidence is not directly within the party's custody or control so long as the party has access to or indirect control over such evidence." *World Courier v. Barone*, WL 1119196, at *1 (N.D. Cal. Apr. 16, 2007).  The duty applies to documents, electronically stored information, and physical evidence.  *In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. 297, 313–14 (S.D.N.Y. 2013).

This is a case about allegedly defective AWX paint products.  So, as soon as Sherwin-Williams learned of Defendants' claims, it should have preserved representative samples of relevant paint products.  Sherwin-Williams admits that the AWX toner product removed from Qualtech was introduced during its business relationship with Defendants. (Docket no. 150 at 18.)  And, Sherwin-Williams doesn't deny that the toner product was supplied to Defendants.  Thus, the evidence suggests that the toner removed from Qualtech was relevant to this case, and Sherwin-Williams should have preserved a representative sample of the product, whether obtained from Qualtech or another source.  *Cf. Zubulake v.*

*UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("A party . . . must retain all relevant documents[,] but not multiple identical copies. . . ."). This is especially true in light of Defendants' specific request that the toner not be removed.

Sherwin-Williams contends its employees removed the AWX toner from Qualtech independent from, and without knowledge of, the request to preserve the evidence. The Ninth Circuit has held that a party doesn't engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business. *United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009) (no indication that evidence destroyed with knowledge that it was relevant to litigation); *Kitsap*, 314 F.3d at 1001–02 (no spoliation where evidence destroyed in normal course of business and no indication that relevant to anticipated litigation); *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 720 (9th Cir. 2005) (same). Here, however, Sherwin-Williams *did* have notice of the potential relevance of the toner.

> It is no defense to suggest, as the defendant attempts, that particular employees were not on notice. To hold otherwise would permit an agency, corporate officer, or legal department to shield itself from discovery obligations by keeping its employees ignorant. The obligation to retain discoverable materials is an affirmative one; it requires that the agency or corporate officers having notice of discovery obligations communicate those obligations to employees in possession of discoverable materials.

*Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557–58 (N.D. Cal. 1987). The independent action of its employees is not relevant to whether Sherwin-Williams had an obligation to preserve the toner.

The unavailability of Sherwin-Williams' lead attorney around the time of the deposition is also irrelevant. Sherwin-Williams had a duty to preserve relevant evidence even without a request from Defendants. Moreover, Sherwin-Williams was represented by counsel at the November 7, 2014 deposition. Subordinate attorneys don't avoid discovery obligations by twiddling their thumbs until their boss arrives. Defendants have established the first element for an adverse inference instruction.

/ / /

/ / /

### 2.      Sherwin-Williams' State of Mind

Defendants argue that the timing of Sherwin-Williams' removal of the AWX toner from Qualtech suggests bad faith.  The Court finds reason to be suspicious.  *Escamilla v. SMS Ho ldings Corp.*, 2011 WL 5025254, at *4 (D. Minn. Oct. 21, 2011) ("The suspicious  timing of [the defendant's reinstallation of his computer's operating system] supports an inference that [he] acted in an intentional manner to destroy evidence or data on his computer."); *Sage Realty Corp. v. Proskauer Rose LLP*, 275 A.D.2d 11, 17 (2000) ("We also conclude that the destruction of the tapes was done in  bad faith, an inference also circumstantially supported by the nature of Kaufman's conduct and the timing .").

But, suspicion notwithstanding, Defendants have not shown that the AWX toner was deliberately destroyed for the purpose of making it unavailable in this lawsuit.   And, Sherwin-Williams does provide an explanation.   While the explanation doesn't alleviate Sherwin-Williams of its obligation to preserve evidence, it does indicate that its destruction of evidence wasn't meant to prejudice Defendants.  Considering the evidence as a whole, the Court cannot conclude that Sherwin-Williams acted with intentional bad faith.  *See Pettit v. Smith*, 45 F. Supp. 3d 1099, 1114 (D. Ariz. 2014).  The Court does, however, find that Sherwin-Williams acted negligently in failing to preserve the AWX toner.  *Id.*  Indeed, despite its duty to preserve evidence, Sherwin-Williams doesn't allege that it took even minimum precautions, such as circulating a litigation hold letter, or otherwise providing its employees with a directive to preserve the allegedly defective paint products.  The "culpable state of mind" includes negligence.  *Cottle-Banks v. Cox Commc'ns, Inc.*, 2013 WL 2244333, at *14 (S.D. Cal. May 21, 2013).  Thus, the Defendants have established the second element for an adverse inference instruction.

### 3.      Relevance of the Qualtech Toner

When evidence is destroyed in bad faith, that alone demonstrates relevance. *Reinsdorf*, 296 F.R.D. at 626–27.  "By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanctions."  *Id.* at 627.  "[R]elevance for spoliation purposes is a two-pronged finding of relevance and prejudice because for the court to issue

sanctions, the absence of the evidence must be prejudicial to the party alleging spoliation of evidence." *Id.* To show prejudice, "[t]he innocent party must . . . show that the evidence would have been helpful in proving its claims or defenses." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 467 (S.D.N.Y. 2010) *abrogated on other grounds by Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135 (2d Cir. 2012); *but see Olney v. Job.com*, 2014 WL 5430350, at *20 (E.D. Cal. Oct. 24, 2014) ("If spoliation is shown, the burden of proof logically shifts to the guilty party to show that no prejudice resulted from the spoliation because that party is in a much better position to show what was destroyed and should not be able to benefit from its wrongdoing.").

The premise of Defendants' motion is that they need a wet, full system sample of AWX paint products, but don't have one. Defendants explain that toner is part of a full system sample (Docket no. 126 at 4–5, n.3.), but do not allege that Qualtech's toner was the missing piece that would make their system sample complete, i.e. they don't argue that they have access to relevant vintage AWX primers, base coats, clear coats, reducers, and hardeners which, if combined with the Qualtech toner, would provide a full, relevant, system sample. (*Id.*) Sherwin-Williams raised this argument in their opposition, and the only argument Defendants offer in response is that "the relevance of destroyed [evidence] cannot be clearly ascertained because [it] no longer exist[s]." (Docket no. 160 at 7.) It's true that Sherwin-Williams' destruction of the toner means that Defendants will never know what testing the toner would have revealed. But the evidentiary value of the toner isn't the basis for their motion (or their excuse for filing their motion well after the close of discovery). Instead, Defendants tout the evidentiary value of a full system sample. Without a definitive link between the destroyed toner and the wet, full system sample that they allege they need for testing, the Court finds that giving an adverse inference instruction would be improper. Although the Court declines to give an adverse inference instruction, this ruling does not foreclose Defendants' counsel from presenting evidence that the toner was destroyed after a request to preserve it had been made, and from arguing any reasonable inference that follows from such evidence.

1

**B.      Exclusion of Evidence**

The Court's inherent authority to impose sanctions for the wrongful destruction of evidence includes the power to exclude evidence that, given the spoliation, would "unfairly prejudice an opposing party."   *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992).  Defendants ask the Court to "preclud[e] testimony that the chemical composition and formulation of Plaintiff's AWX automotive paint products were not the cause of physical defects in Defendants' paint jobs."  (Docket no. 126 at 2.)  As discussed above, the Court finds no unfair prejudice.  Therefore, the Court declines Defendants' request.  However, the Court makes this ruling without knowing what evidence Sherwin-Williams might use regarding the chemical composition of AWX paint products. Thus, the Court denies Defendants' request without prejudice.  If Sherwin-Williams presents evidence that is unfairly prejudicial in light of its improper destruction of Qualtech's toner, the Court will reevaluate its ruling.  For example, Sherwin-Williams can't rely on its analysis of paint or paint compounds if its destruction of evidence has denied Defendants the opportunity to examine an identical compound.

**C.      Dismissal**

Dismissal is an extreme remedy that is only warranted in extraordinary circumstances. *Lewis v. Ryan*, 261 F.R.D. 513, 522 (S.D. Cal. 2009).  Here, there is no evidence that the documents were destroyed in order to prevent Defendants from receiving them, and dismissal isn't necessary to counteract the prejudice from the destruction of Qualtech's toner. *Id.*  The Court declines to order dismissal.

**IV.    Conclusion**

Defendants haven't carried their burden to establish that spoliation sanctions are appropriate.  Their spoliation motion is **DENIED**.

**IT IS SO ORDERED**.

DATED:  July 3, 2015

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

- 8 -

13cv1946