**LANAK & HANNA, P.C.**
**MICHAEL K. MURRAY (265785)**
mkmurray@lanak-hanna.com
625 The City Drive South, Suite 190
Orange, California 92868
Telephone:  (714) 550-0418
Facsimile: (714) 703-1610

**YOUNG BASILE HANLON & MACFARLANE, P.C.**
**JEFFREY D. WILSON (P56376)**
wilson@youngbasile.com
**MICHAEL M. JACOB (P15391)**
jacob@youngbasile.com
**EDDIE D. WOODWORTH (OHIO: 90833)**
woodworth@youngbasile.com
3001 W. Big Beaver Road, Ste. 624
Troy, Michigan  48084
Telephone:  (248) 649-3333
Facsimile: (248) 649-3338


Attorneys for Plaintiff/Counter-Defendant
The Sherwin-Williams Company,
f/k/a Sherwin-Williams Automotive Finishes Corp.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE SHERWIN-WILLIAMS COMPANY, f/k/a SHERWIN-WILLIAMS AUTOMOTIVE FINISHES CORP.,<br><br>    Plaintiff,<br><br>  vs.<br><br>JB COLLISION SERVICES, INC., dba J&M AUTOBODY, and d/b/a EL DORADO COLLISION; and DOES 1 through 10, inclusive,<br><br>    Defendants.<br><br>AND RELATED COUNTER-CLAIMS | Case No.:  13-CV-1946 LAB (WVG)<br>*Consolidated with*<br>Case No.:  13-CV-1947 LAB (WVG) |

THE SHERWIN-WILLIAMS
COMPANY, d/b/a SHERWIN-
WILLIAMS AUTOMOTIVE FINISHES,

Plaintiff,

vs.

JJT, INC. d/b/a JOHN'S COLLISION
CENTER; JOHN TYCZKI, and individual;
and DOES 1 through 10, inclusive,

Defendants.

AND RELATED COUNTER-CLAIMS

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR ALTERNATIVELY A REMITTITUR OF DAMAGES/NEW TRIAL**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL/PROCEDURAL BACKGROUND ...................................... 1

III.    LEGAL STANDARD ........................................................................... 2

        A.    Judgment as a Matter of Law Under Rule 50 ........................... 2

        B.    New Trial Under Rule 59 ......................................................... 3

IV.     ARGUMENT ....................................................................................... 3

        A.    Defendants Did Not Present Substantial Evidence Of Essential

              Elements Of Their Fraud Claims ............................................. 3

              1.    Fraudulent Inducement ................................................. 3

              2.    Unpled Allegations ....................................................... 5

        B.    Defendants Did not Present Substantial Evidence That The

              Alleged Fraud Was False or Caused Non-Speculative Damages .............. 7

        C.    Defendants' Fraud Claims Fail Under the Economic Loss Rule ............. 8

        D.    Defendants Have Not Identified Competent Evidence of Damages ......... 9

        E.    Alternatively, This Court Should Order a New Trial Because The

              Damages Awarded Were Excessive And Not Supported by the

              Evidence ................................................................................ 14

              1.    The Damages Award on the Fraud Claims Provide Redress

                    for the Same Injury and thus Constitute a Double Recovery ....... 16

        F.    The Verdict Was Not Supported by The Evidence Presented At

              Trial, But Was a Product of Passion, Prejudice, and Attorney

              Misconduct ............................................................................ 18

V.      CONCLUSION .................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Aas v. Superior Court*,
  12 P.3d 1125 (Cal. 2000) .................................................................... 8

*Ambassador Hotel Co. v. Wei-Chuan Inv.*,
  189 F.3d 1017 (9th Cir. 1999) .................................................. 17, 18

*Anheuser-Busch, Inc. v. Nat. Beverage Distributors*,
  69 F.3d 337 (9th Cir. 1995) ............................................................ 19

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*,
  158 Cal. App. 4th 226 (DCA 2007) ................................................. 5

*Asetek Holdings, Inc. v. CoolIT Sys., Inc.*,
  2014 WL 4090400 (N.D. Cal. 2014) .............................................. 8

*B. Braun Med., Inc. v. Rogers*,
  163 F. App'x 500 (9th Cir. 2006) ................................ 4, 8, 9, 12, 13, 14

*U.S. ex rel. Belt Con Const., Inc. v. Metric Const. Co.*,
  314 F. App'x 151 (10th Cir. 2009) ................................................ 10

*Benefield v. Bryco Funding, Inc.*,
  2014 WL 4060252 (N.D. Cal. 2014) .............................................. 4

*Silberg v. Anderson*,
  50 Cal. 3d 205 (Cal. 1990) .............................................................. 9

*Castaneda v. Saxon Mortgage Servs., Inc.*,
  687 F. Supp. 2d 1191 (E.D. Cal. 2009) ......................................... 6

*Cataphora Inc. v. Parker*,
  2011 WL 6778792 (N.D. Cal. 2011) .............................................. 3

*City Sols., Inc. v. Clear Channel Commc'ns*,
  365 F.3d 835 (9th Cir. 2004) ............................................................ 8

*CSX Transp, Inc. v. Gilkison*,
  2007 WL 1795620 (N.D.W. Va. 2007) ......................................... 6

*D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*,
  692 F.2d 1245 (9th Cir. 1982) ....................................................... 14

*Draper v. Airco, Inc.*,
  580 F.2d 91 (3d Cir. 1978) ............................................................. 18, 23

*DuBarry Internat., Inc. v. Sw. Forest Indus., Inc.*,
  231 Cal. App. 3d 552 (Cal. Ct. App. 1991) ................................. 17

*Earp v. Nobmann*,
  122 Cal. App. 3d 270 (Cal. Ct. App. 1981) ................................... 9

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*,
  762 F.3d 829 (9th Cir. 2014) .......................................................... 3

*Fenner v. Dependable Trucking Co., Inc.*,
  716 F.2d 598 (9th Cir. 1983) ........................................................ 14

*Fineman v. Armstrong World Indus., Inc.*,
  980 F.2d 171 (3d Cir. 1992) ......................................................... 20

*Fisher v. City of San Jose*,
  558 F.3d 1069 (9th Cir. 2009) ........................................................ 2

*Fontana Products Inc. v. Spartech Plastics Corp.*,
  6 F. App'x 591 (9th Cir. 2001) .................................................... 15

*Freund v. Nycomed Amersham*,
  347 F.3d 752 (9th Cir. 2003) .......................................................... 2

*Gasperini v. Center for Humanities, Inc.*,
  518 U.S. 415 (1996) ....................................................................... 14

*Green Wood Indus. Co. v. Forceman Int'l Dev. Grp., Inc.*,
  156 Cal. App. 4th 766 (Cal. Ct. App. 2007) ......................... 10, 16

*Hardisty v. Moore*,
  2015 WL 6393884 (S.D. Cal. Oct. 22, 2015) ............................. 15

*Hern v. Intermedics, Inc.*,
  210 F.3d 383 (9th Cir. 2000) ........................................................ 18

*Hopson v. Riverbay Corp.*,
  190 F.R.D. 114 (S.D.N.Y. 1999) ................................................. 19

*Hovsepian v. Apple, Inc.*,
  2009 WL 2591445 (N.D. Cal. August 21, 2009) .......................... 4

MOTION FOR JUDGMENT AS A MATTER OF LAW
CASE NO. 13-CV-1946 LAB (WVG)
CASE NO.  13-CV-1947 L (RBB)

*Kaldenbach v. Mutual of Omaha Life Ins. Co.*,
    178 Cal. App. 4th 830 (2009) .................................................................... 4

*Kehr v. Smith Barney, Harris Upham & Co.*,
    736 F.2d 1283 (9th Cir. 1984) ................................................................ 18

*Cotton ex rel. McClure v. City of Eureka*,
    Cal., 860 F. Supp. 2d 999 (N.D. Cal. 2012) ........................................... 3

*In re Oracle Corp. Sec. Litig.*,
    2009 WL 1709050 (N.D. Cal. 2009) ................................................... 6, 9

*Oracle USA, Inc. v. XL Global Servs., Inc.*,
    2009 WL 2084154 (N.D. Cal. 2009) ................................................... 8, 9

*Pac. Fuel Co., LLC v. Shell Oil Co.*,
    416 F. App'x 607 (9th Cir. 2011) ......................................................... 17

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
    34 Cal. 4th 979, 102 P.3d 268 (Cal. 2004) ............................................ 8

*S. California Stroke Rehab. Associates, Inc. v. Nautilus, Inc.*,
    2012 WL 4364144 (S.D. Cal. 2012) ...................................................... 2

*Sanders v. Walsh*,
    219 Cal. App. 4th 855 (Cal. Ct. App. 2013) ....................................... 15

*Scott v. Wells Fargo Bank, N.A.*,
    2011 WL 3837077 (D. Minn. 2011) ...................................................... 6

*Sharp v. Donahoe*,
    2013 WL 3367557 (S.D. Cal. 2013) (Burns, J.) .................................... 2

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
    251 F.3d 814 (9th Cir. 2001) ................................................................. 3

*Tavaglione v. Billings*,
    4 Cal.4th 1150 (Cal. 1993) ................................................................... 17

*Tortu v. Las Vegas Metro. Police Dep't*,
    556 F.3d 1075 (9th Cir. 2009) ........................................................... 2, 3

*United States v. Elias*,
    285 F.3d 183 (2d Cir. 2002) ................................................................ 21

iv

1
2

*Walker v. Pac. Indem. Co.*,
    183 Cal. App. 2d 513 (Cal. Ct. App. 1960) ................................................. 10

3
4

*Whitehead v. Food Max of Mississippi, Inc.*,
    163 F.3d 265 (5th Cir. 1998) ........................................................................ 24

5

**Other Authorities**

6

Rule 9(b) ........................................................................................................................ 6

7

Rule 12(b)(6) ................................................................................................................. 6

8

Rule 50 ................................................................................................... 1, 2, 3, 9, 15

9

Rule 59 ..................................................................................................................... 1, 3

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

v

## I.    INTRODUCTION

Plaintiff, The Sherwin-Williams Company ("Plaintiff" or "Sherwin-Williams") hereby renews its Motion for Judgment as a Matter of Law, or in the alternative, seeks a remittitur/new trial on Defendants' JB Collision Services, Inc, JJT, Inc., and John Tyczki (collectively, "Defendants") counterclaims for Concealment, Intentional Misrepresentation, and Negligent Misrepresentation (the "Fraud Claims") pursuant to Federal Rules of Civil Procedure 50 and 59. Defendants have been fully heard on these issues at trial, and the evidence presented fails to establish that Plaintiff acted fraudulently, or that Plaintiff's conduct caused Defendants any damage.

## II.    FACTUAL/PROCEDURAL BACKGROUND

Procedural background of the matter is required to provide context to the instant Motion. In August 2013, Plaintiff filed its Complaint in this matter against Defendants alleging breach of contract. DE 1. In October 2013, Defendants filed counterclaims against Plaintiff, which were most recently amended in June 2014. DE 36 (the "Second Amended Counterclaims" or "SACC"). The SACC contains six counterclaims, including two claims for breach of contract, the three Fraud Claims, and unjust enrichment.

On November 17, 2015, this Court entertained a four-day jury trial. After the close of Defendants' case-in-chief, Plaintiff moved pursuant to Rule 50(a) for judgment as a matter of law. DE 280, Trial Tr. Day 4 at 64:9-65:17. Specifically, Plaintiff argued that 1) Defendants have not established fraudulent inducement,[1] and 2) Defendants have failed to present competent evidence of damages. This Court submitted the matters to the jury. In doing so, this Court noted that in the event of an adverse verdict, Plaintiff could get the transcript and "convince [the Court] that this was wrong, at this time there was not sufficient evidence." DE 280, Trial Tr. Day 4 at 122:11-19.

At the conclusion of the jury trial, the Jury returned a verdict in favor of Plaintiff on its breach of contract claims, and awarded Plaintiff 100% of its claimed damages. DE

---

[1] As discussed below, without competent evidence of fraudulent inducement, Defendants fraud claims fail as a matter of law under the economic loss doctrine. *E.g.* DE 56.

266. In so concluding, the Jury found that Sherwin-Williams "substantially performed its duties under the Supply Agreements." DE 266 at 2-3. With respect to Defendants' contract and unjust claims, the Jury found in favor of Plaintiff. With respect to the Fraud Claims, the Jury found for Defendants in the amount of $3,250,000.00 ($750,000 for concealment; $1,250,000 for intentional misrepresentation, and $1,250,000 for negligent misrepresentation). On January 11, 2016, this Court entered judgment. DE 282.

## III.   LEGAL STANDARD

### A. Judgment as a Matter of Law Under Rule 50

"Rule 50 requires a party seeking judgment as a matter of law to file a Rule 50(a) motion at any time before the case is submitted to the jury. If the jury later returns a verdict against the moving party, this party may then file a Rule 50(b) motion for judgment as a matter of law." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1081 (9th Cir. 2009). "A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion" *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003); *Tortu*, 556 F.3d at 108.

Under Rule 50, the question is whether, in "construing the evidence in the light most favorable to the police, the jury's defense verdict was supported by substantial evidence." *Fisher v. City of San Jose*, 558 F.3d 1069, 1074 (9th Cir. 2009). For purposes of a 50(b) standard, "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id* at 1074.

"In ruling on a JMOL, the Court may not make credibility determinations or weigh the evidence, as these are jury functions." *S. California Stroke Rehab. Associates, Inc. v. Nautilus, Inc.*, 2012 WL 4364144, at *1 (S.D. Cal. 2012). "Judgment as a matter of law is appropriate when, taking the evidence as a whole and construing it in the light most favorable to the nonmoving party, a reasonable juror could reach only one conclusion." *Sharp v. Donahoe*, 2013 WL 3367557, at *1 (S.D. Cal. 2013) (Burns, J.). Appeals courts review *de novo* a district court's renewed JMOL decision. *Fisher*, 558 F.3d at 1074.

## B. New Trial Under Rule 59

"Under Federal Rule of Civil Procedure 59, a district court has the discretion to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." *Cotton ex rel. McClure v. City of Eureka*, Cal., 860 F. Supp. 2d 999, 1008 (N.D. Cal. 2012). "The trial court may grant a new trial only if the jury's verdict was against the clear weight of the evidence." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009). An Appellate Court "will uphold a district court's grant of a new trial if any of its grounds for granting the new trial are reasonable." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001). "Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Cataphora Inc. v. Parker*, 2011 WL 6778792, at *4 (N.D. Cal. 2011).

"Unlike with a Rule 50 determination, the district court, in considering a Rule 59 motion for new trial, is not required to view the trial evidence in the light most favorable to the verdict. Instead, the district court can weigh the evidence and assess the credibility of the witnesses." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014). "The district court also is not limited to the grounds a party asserts to justify a new trial, but may *sua sponte* raise its own concerns about the damages verdict." *Id.*

## IV.    ARGUMENT

### A. Defendants Did Not Present Substantial Evidence Of Essential Elements Of Their Fraud Claims

#### 1.    Fraudulent Inducement

At the close of Defendants' proofs, Plaintiff moved pursuant to Rule 50(a) for judgment as a matter of law on the basis that Defendants did not offer evidence sufficient to support their fraudulent inducement claims. Specifically, Defendants have argued throughout this lawsuit that they were induced to enter into the agreements, and then

induced to not terminate the agreements. DE 280, Trial Tr. Day 4 at 68:23-69:6. At argument on the issue of fraudulent inducement, this Court identified three specific instances of alleged fraudulent inducement sufficient to submit the matter to the jury:

1. That Defendants were fraudulently induced into the second agreement by alleged promises of an $80,000 Advance instead of the $40,000 Advance Defendants ultimately received. DE 280, Trial Tr. Day 4 at 69:7-76:20.

2. That Defendants were "the only ones" experiencing the defects that they complained of. DE 280, Trial Tr. Day 4 at 121:1-19.

3. That Jose Garcia continued to promise that Sherwin-Williams was working on a solution to fix Defendants' problems. DE 280, Trial Tr. Day 4 at 121:20-122:4.

The elements of a claim of fraudulent inducement to enter into a contract are "(a) a misrepresentation, false representation, concealment or nondisclosure; (b) knowledge of falsity; (c) intent to defraud or to induce plaintiff to enter into a contract or breach a contract; (d) justifiable reliance; and (e) resulting damage." *Benefield v. Bryco Funding, Inc.*, 2014 WL 4060252 (N.D. Cal. 2014).[2] The elements of fraudulent concealment are: (a) concealment of a fact; (b) duty to disclose the fact; (c) concealment with intent to defraud; (d) plaintiff's unawareness of the fact; and (e) damages resulting from the concealment. *See Hovsepian v. Apple, Inc.*, 2009 WL 2591445 (N.D. Cal. August 21, 2009). The elements of intentional misrepresentation are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity; (c) intent to defraud; (d) justifiable reliance; and (e) resulting damage. *See Kaldenbach v. Mutual of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (2009) *citing Lazar v. Superior Court*, 12 Cal. 4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996). The elements of negligent misrepresentation are (1) misrepresentation of a material fact, (2) without reasonable

---

[2] This Court has previously ruled that fraudulent inducement is necessary for Defendants to survive application of California's economic loss rule. *E.g.* DE 56. "California courts have rejected the theory that a party duped into performing an existing contractual obligation has suffered damage." *B. Braun Med., Inc. v. Rogers*, 163 F. App'x 500, 508 (9th Cir. 2006)

ground for believing it to be true, (3) with intent to induce another's reliance, (4) justifiable reliance, and (5) resulting damage. *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243, (DCA 2007).

### 2. Unpled Allegations

As to the first two instances of inducement (the $80,000/$40,000 switch, and that Defendants were the "only ones"), Plaintiff pointed out that throughout two years of litigation, <u>Defendants have never pled these allegations</u> as a basis to support their fraudulent inducement claim. DE 280, Trial Tr. Day 4 at 70:13-73:19; 121:1-123:19. On the record, this Court asked Defendants to specify where in the Second Amended Counterclaims they alleged the $80,000/$40,000 switch. DE 280, Trial Tr. Day 4 at 70:13-73:19. When Defendants' counsel could not find any such allegation, this Court stated:

> All right. Yeah, okay. Well, tell me, point some evidence that would support a jury, a rational jury finding fraud here. <u>I mean I'm buffeted here, Mr. Sorrentino, because it's apparent to me that the problems with the paint were already known to Mr. Tyczki at the time he entered into the JJT contract, some of those problems had begun to emerge; so to say I was misled about the quality of the paint is little late in the day.</u> It seems to me from the evidence that the driving motivation entering into the second contract was the up-front money. Turned out to be less than what he wanted, but now you tell me that even when you pled this, you knew it was 40,000, not 80,000, so that can't be the basis for the the fraud claim either.

DE 280, Trial Tr. Day 4 at 73:20-74:7. Defendants' inability to identify any citation in their Second Amended Counterclaims for the $80,000/$40,000 switch as a basis for fraud is easily explained. DE 280, Trial Tr. Day 4 at 70:13-76:20. <u>It was never previously pled</u>.

Similarly, Defendants never pled that they were fraudulently induced by supposed comments by Plaintiff that Defendants were the "only ones" experiencing any appearance defects. Moreover, <u>at no point in this two-year litigation</u> did Defendants move to amend their counterclaims to add this alleged misrepresentation as a claim for fraud, nor did they make a motion to conform the pleadings to the proofs.

1   Rather, the thrust of Defendants' counterclaims from the inception of this lawsuit

2   has been that Sherwin-Williams misrepresented the quality of its paint, and then told

3   Defendants that it was working on a solution to fix it. *See generally* DE 36 (describing

4   various alleged misrepresentations). Through three (3) iterations of their counterclaims,

5   Defendants have been required to clarify the fraud allegations in response to a Rule

6   12(b)(6) motion (which was brought in part pursuant to Rule 9(b)),[3] and at <u>no point</u>

7   during these three iterations did Defendants identify the "$80,000/$40,000 switch" or the

8   "only ones" allegation as a basis to support their fraud claims.

9   In fact, the first and only time Defendants raise the "only ones" allegation in this

10  lawsuit is through a passing, uncited reference in response to a Summary Judgment

11  Motion. DE 143. Accordingly, Plaintiff respectfully submits that these allegations cannot

12  serve as a basis for fraud. *See In re Oracle Corp. Sec. Litig.,* 2009 WL 1709050, at *18

13  (N.D. Cal. 2009) (refusing to allow Plaintiff to rely on unpled fraud theory in securities

14  fraud case in response to <u>summary judgment motion</u>); *Scott v. Wells Fargo Bank, N.A.*,

15  2011 WL 3837077, at *10 (D. Minn. 2011) ("Plaintiff cannot, late into the litigation of

16  this matter, assert unpled allegations in an effort to avoid summary judgment, especially

17  given the requirement that allegations of fraud be pled with particularity"); *CSX Transp,*

18  *Inc. v. Gilkison*, 2007 WL 1795620, at *4 (N.D.W. Va. 2007) (rejecting unpled fraud

19  claims on 12(c) motion: "The clear intent of Rule 9(b) is to eliminate fraud actions in

20  which all the facts are learned through discovery after the complaint is filed.").

21  Indeed, Plaintiff submits that the Jury's inconsistent verdict was the product of

22  these and other unpled "fraud" allegations. Here, the Jury found that Sherwin-Williams

23  made misrepresentations about the quality of its paints sold to Defendants under the

24  contracts, but also found that "Sherwin-Williams substantially performed its duties under

---

25  [3]  Fed. R. Civ. P. 9(b) provides that "In alleging fraud or mistake, a party must state with

26  particularity the circumstances constituting fraud or mistake." The Ninth Circuit has held

    that a party alleging fraud must include the "who, what, when, where, and how" of the

27  fraud. *Castaneda v. Saxon Mortgage Servs., Inc.*, 687 F. Supp. 2d 1191, 1199 (E.D. Cal.

28  2009) (*quoting Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

the Supply Agreements." DE 266 at 2-3.  This inconsistency is additional reason to conclude that the Jury relied upon one of the unpled allegations in returning their verdict.

**B. Defendants Did not Present Substantial Evidence That The Alleged Fraud Was False or Caused Non-Speculative Damages**

Alternatively, Defendants are left with the allegation that that they have made from the outset: that Sherwin-Williams misrepresented the quality of its products, and then misrepresented its efforts to cure the defects. As to the first point, this Court has already noted that if defects in the paint existed, they were known to Defendants since September 2008.  Those claims are clearly time-barred.  As such, the only actionable fraud claims actually pled by Defendants are purported <u>false</u> assurances that Sherwin-Williams was working to fix its quality problems.

But, Defendants have offered <u>no evidence to support the falsity of this statement.</u> In other words, even if evidence was offered by Defendants that Sherwin-Williams actually told Defendants that it was working on a solution or "fix" to the alleged defects in its paint, <u>Defendants never offered evidence that this representation was in fact not true</u>. At most, Defendants provided evidence that Sherwin-Williams said it was trying to fix its paint and Defendants relied on those statements to continue purchasing paint products as required by contract.  Defendants did not prove that Sherwin-Williams was not trying to fix its paint. This is an essential element of their inducement claims, yet Defendants failed to identify any evidence that such statements were false when made.[4]

Moreover, and with respect to all three instances of fraudulent inducement ($80,000/$40,000 switch, "only ones," and "efforts to cure defects"), Defendants have identified <u>no evidence of causation</u> to their damages. "<u>Under California law, a complete causal relationship between the fraud or deceit and the plaintiff's damages is required.</u>"

---

[4] To the contrary, Defendants introduced testimony from their expert claiming that Sherwin-Williams' testing documents show the Company's attempts to improve the product's performance in high humidity environments. DE 279, Trial Tr. Day 3 at 224:19-252:25.

7

*City Sols., Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 840 (9th Cir. 2004); *B. Braun Med., Inc. v. Rogers*, 163 F. App'x 500, 507 (9th Cir. 2006) (*citing Kruse v. Bank of America*, 202 Cal.App.3d 38 (1988) ("Under California law, it is axiomatic that to obtain a recovery for fraud, a claimant must prove, inter alia, that damages were sustained as a proximate cause of the fraudulent conduct. Deception without resulting loss is not actionable fraud."); *See also Service by Medallion, Inc. v. Clorox Co*., 44 Cal.App.4th 1807, 1818 (Cal.App.1996)). Here, Defendants failed to present <u>any evidence</u> of the link between the misrepresentations, and their damages of needing to repaint every vehicle.

It is well settled that a false statement and causation are essential elements of Defendants' Fraud Claims. *See* Section IV(a)(1). When the nonmoving party bears the burden of proof, as Defendants do with their claims, the court should grant judgment where there has been a "complete failure of a proof concerning an essential element." *See, e.g. Asetek Holdings, Inc. v. CoolIT Sys., Inc*., 2014 WL 4090400 (N.D. Cal. 2014). Since Defendants have failed to prove these elements, the Fraud Claims cannot stand.

### C. Defendants' Fraud Claims Fail Under the Economic Loss Rule

Plaintiff further submits that Defendants' fraud claims fail under the economic loss rule. Specifically, Defendants have not put forth substantial evidence to support a finding that they were "induced" to not terminate the contracts. <u>Indeed, Defendants admitted that they would not have left the contracts when they did had he known he had not completed the agreement</u>. *E.g.* DE 279, Trial Tr. Day 3 at 327:25-328:23.

Generally, a Plaintiff in California under the economic loss rule may not recover in tort for the breach of duties that merely restate contractual obligations. *Aas v. Superior Court*, 12 P.3d 1125, 1135 (Cal. 2000). Quite simply, the economic loss rule "prevent[s] the law of contract and the law of tort from dissolving one into the other." *Robinson Helicopter Co., Inc. v. Dana Corp*., 34 Cal. 4th 979, 988, 102 P.3d 268, 273 (Cal. 2004). Plaintiff submits that Defendant's claims are similar to *Oracle USA, Inc. v. XL Global Servs., Inc*., 2009 WL 2084154 (N.D. Cal. 2009). In *Oracle USA*, the court noted that:

> In summary, the fundamental rule in California is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement. Exceptions have been permitted only where: a breach of duty causes a physical injury; the covenant of good faith and fair dealing is breached in an insurance contract; an employee was wrongfully discharged in violation of a fundamental public policy; or a contract was fraudulently induced.

*Id*. The *Oracle* court went on to hold that the defendant's failure to pay for services rendered by the plaintiff was quintessentially economic in nature. *Id*. Indeed, the *Oracle* plaintiff even alleged that the defendant's promises of payment ***induced*** it to provide additional services that it would not have provided, but for the misrepresentations, and the Court <u>still held</u> that the plaintiff's claim was <u>economic in nature</u>. Moreover, the court noted that the defendant's breach did not expose the plaintiff to the possibility of physical injury, or to any third party for physical injury or other loss resulting from the defendant's conduct.

In other words, the *Oracle* defendant promised to perform on its contract obligations, but failed to do so, and the breach of the defendant's promise did not create a risk of physical injury or loss. This is precisely what Defendants argue—that Sherwin-Williams sold defective paint. Defendants did not offer substantial evidence of a risk of physical injury or loss.  Accordingly, Judgment as a matter of law is appropriate.

### D. Defendants Have Not Identified Competent Evidence of Damages

In addition to not establishing fraudulent inducement, Defendants failed to identify competent damages evidence, and instead offered only speculative/contingent damages. Accordingly, Plaintiff moved pursuant to Rule 50(a) on the basis that Defendants have not identified cognizable damages. DE 280, Trial Tr. Day 4 at 64:9-65:19.

"It is fundamental that damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery." *Earp v. Nobmann*, 122 Cal. App. 3d 270, 294 (Cal. Ct. App. 1981) *disapproved of on other grounds by Silberg v. Anderson*, 50 Cal. 3d 205 (Cal. 1990); *B. Braun Med., Inc. v. Rogers*, 163 F. App'x 500, 508 (9th Cir. 2006) ("Under California law, speculative fraud

damages are not actionable"). Accordingly, the Jury was instructed that it "may only award damages in amounts that are reasonably certain and have been proved by a preponderance of evidence -- of the evidence. You may not award damages that are remote or that require you to speculate." *E.g.* DE 280, Trial Tr. Day 4 at 169:8-11.

Because speculative damages are not compensable, California law closely scrutinizes damage theories based upon *potential* third party liability. "Under California law, a plaintiff—whether the plaintiff's claim sounds in contract or tort—generally cannot recover damages alleged to arise from a third-party claim against the plaintiff when caused by the defendant's misconduct." *Green Wood Indus. Co. v. Forceman Int'l Dev. Grp., Inc.*, 156 Cal. App. 4th 766 (Cal. Ct. App. 2007). Indeed, "the mere possibility that one will be required to pay damages to a third party does not warrant even nominal damages." *Walker v. Pac. Indem. Co.*, 183 Cal. App. 2d 513, 517 (Cal. Ct. App. 1960). "Damages that result from a liability to a third party are not recoverable unless the party seeking the damages proves to a reasonable certainty that the liability could and would be enforced by the third party [that is,] that the party seeking the damages "could and would satisfy the obligation." *U.S. ex rel. Belt Con Const., Inc. v. Metric Const. Co*., 314 F. App'x 151, 155 (10th Cir. 2009) (*quoting Green Wood*, 67 Cal. Rptr. 3d at 632) (applying California law). Accordingly, "[i]t may be that existing California authorities generally require payment of the liability in order to include the liability as damages. "But even if a liability to a third party might be included as damages without actual payment, more certainty is necessary than just evidence of an obligation to pay a third party." *Green Wood*, 156 Cal. App. 4th at 777-78.

Throughout this lawsuit, Defendants have tossed around a variety of damage figures exceeding $20 million. *E.g.* DE 280, Trial Tr. Day 4 at 53:18-55:13; DE 36. This cocktail napkin valuation contemplates that a total of 10,000 cars were painted with the AWX paint system from 2008 to 2013, and each vehicle costs, on average $2,000.00 to repaint. *E.g.* DE 280, Trial Tr. Day 4 at 53:18-55:13. In other words, Defendants admit that they are speculating that 9,960 vehicles they painted 3 to 8 years ago might someday

1  need a $2,000 repair due to alleged gloss problems about which said owners never

2  complained.

3       During trial, Defendants "revised" their damages calculation, and offered

4  Defendant Tyczki's unsupported testimony that on average, each vehicle costs $3,200.00

5  to repaint. *E.g.* DE 280, Trial Tr. Day 4 at 53:18-55:13.[5] In other words, Defendants were

6  now seeking $32 million. Defendants have conceded that they do not know if all 10,000

7  cars need to be repaired, and submitted no evidence to this point. *E.g.* DE 280, Trial Tr.

8  Day 4 at 53:18-55:13. Defendants also conceded that if there was no paint defects on the

9  vehicle (e.g. dieback, sanding scratches, solvent popping, etc.), then a repair would be

10  unwarranted. *E.g.* DE 280, Trial Tr. Day 4 at 53:18-55:13. Defendants also put forth no

11  evidence as to whether all 10,000 vehicles (some of which were painted seven years ago)

12  <u>were still even on the road</u>. Finally, Defendants conceded that they have not hired an

13  expert to verify or attest to their damages calculation. *E.g.* DE 279, Trial Tr. Day 3 at

14  337:25-338:2.

15       Since this lawsuit was filed, Defendants have submitted approximately 40 warranty

16  claims valuing approximately $120,000. Based on these 40 claims, as well as anecdotal

17  and highly suspect allegations of an additional 100 vehicles repainted during the 4½ years

18  of the parties' contracts (which Defendants have repeatedly assured that they are not

19  claiming damages for (*e.g.* DE 223)), Defendants assumed that every vehicle they painted

20  with AWX will be repainted under the warranty. During argument on Plaintiff's Motion,

21  this Court recognized the problematic nature of Defendants' damages theory:

22       Now, the question is is it likely or credible that he's going to have to repaint
         every one of those cars. I think the answer to that is probably no. I mean for
23       one thing, you know, he can do it as a good will gesture if he wants. He has
         testified that he's concerned about the reputation of his business, that he's not
24       going to wait for customers necessarily to contact him, he's going to offer
25       repaints if they come in. But it's still unlikely in my judgment that 10,000

26

27  ────────────────────────
    [5] To the extent that Defendants base their $3,200 estimate on warranty claim estimates
28  created after the lawsuit began, this new estimate is a grossly implausible extrapolation of
    the cost of repainting 9,960 cars based on disputed estimates of only 40 repaints.

11

would come in. It's not even clear that those 10,000 cars are still on the road, still being driven around; that would be very unlikely. So I do have some question about whether the damages that they're seeking can be sustained. But I also have the option to see what a reasonable jury would do, and if it doesn't comport with my view of the evidence, then I can always reduce it by remittitur, you know, based on factors that I'm talking about. Now, I'm hesitant to do that going into the case, and I don't think that comports with the Rule 50 standard for me to say well, I'm going to limit you to $10 million in damages or $8 million in damages. Suffice it to say the formula that the defense has raised on their claims for damages is problematic, it has problems.

DE 280, Trial Tr. Day 4 at 67:4-25.

In *B. Braun Med., Inc. v. Rogers*, 163 F. App'x 500, 508 (9th Cir. 2006), the Ninth Circuit held that a district court erred when it did not grant judgment as a matter of law as to a fraud claim because the plaintiff failed to demonstrate specific evidence of damages. Rather, counsel conceded in his closing argument that calculating damages was "tough." *Id.* Previously acknowledging that he did not have an expert, plaintiff's counsel argued:

I'm going to have to leave it to your good judgment to figure out what the damage award should be. What is it—you know, and you're allowed broad latitude in this endeavor. If an inventor has a dream and he's successful and he puts out a wonderful product, the patent—I'm not saying the device itself but that patent that can be useful, and he's deprived of its use, what is that worth on an independent basis from everything else you've heard. I don't know that I'm even so much talking about the strict economic value as much as the rest of it, the value of getting the satisfaction of the recognition of yourself as someone who made a significant contribution into the world.

That 114 patent had significant value. We know that. In 1992 they were willing to pay $300,000 plus 250—right at—350 plus 250 right up front. It had significant value. **Where could he have gone? What could he have sold it for? I don't think this is going to be a big number. We saw big numbers. This is not going to be a number in that magnitude**.

**But I would submit to you that it's also not a small thing. It should not be demeaned or diminished. I think myself your damage award for fraud should be in the area of $1,000,000. I think it should be enough to let Braun know that they shouldn't play with their power, that they**

**can't be one of the 800–pound gorillas**. I told you not to punish them as a corporation. In fact, punishment would come later if we get to that stage, but don't let them walk around with impunity just because they're big. Treat them by the same standards that you'd treat other human beings.

*Id.* at 507-08 (emphasis added). In reversing the district court's denial of judgment as a matter of law, the Ninth Circuit noted: "counsel implied in his closing argument—and Rozi now argues on appeal—that Rozi would have terminated its contract with Braun and sold its rights for more money had it know of Braun's actions. However, the only evidence in the record to support this theory consists of generalized market speculations, such as that there was "serious competition" during the relevant period." *Id.* at 508. Moreover, the Ninth Circuit noted: "California courts have rejected the theory that a party duped into performing an existing contractual obligation has suffered damage." *Id.* (*citing Auerbach v. Great Western Bank*, 74 Cal.App.4th 1172, 1185 (Cal.App.1999)). Finally, the Ninth Circuit noted that while there was evidence that the plaintiff lost three years of development, there was no specific proof of the damage suffered as a result of this loss. *Id.* Accordingly, the district court erred in not granting judgment as a matter of law.

Like the attorney in *Braun,* counsel here essentially <u>admitted</u> that there is no competent evidence of damages during his closing argument:

But I want to talk to you about damages very briefly. John Tyczki painted 12,000 cars, there's true, but ten -- about 10,000 was painted with the AWX system. Every car that he had seen that's come back had dyeback [sic], every car, and he's been fixing them; he's fixed them, he's got people on the waiting list, and he knows there are more coming. Just like these guys all testified that they have; every car that they keep -- get back that they've painted with AWX has dyed back. It's just -- not just limited to John Tyczki.

So are we asking that all 10,000 cars be compensated for and -- whether it be by partial -- partial on the breach of contract, the warranty, the fraud claim, the unjust enrichment? No, no, we're not, because we don't know, <u>we can't tell how many cars are still on the road, but we -- but we can use our common sense and say that perhaps half of them are still out there</u>. And the cost of repairing the cars, as you heard initially, was $2,000 a car, but that was two and a half years ago about, and as you saw from the final bills under

warranty, that cost has gone up to $3,200 a car. And you can do the math. If you go with half the number of cars and you times it by what needs to be fixed, the 1300, it comes to 16 million. <u>And if you say well, you know, I don't think it's that many -- you know, don't base it on my experience, you're the jury -- and it's not that many or it's more, then you can do that math</u>.

DE 280, Trial Tr. Day 4 at 239:2-240:9 (emphasis added). Moreover, and again similar to counsel's argument in *Braun*, counsel here <u>negotiated</u> with the jury and invited them to speculate what damages Defendants <u>might incur</u> if some fraction of the vehicles they painted that <u>might still</u> be on the road and <u>might someday</u> be returned for a repaint. DE 280, Trial Tr. Day 4 at 239:2-240:9. This request that the Jury speculate about potential future damages was unsupported by evidence, and was instead only lawyer argument. Defendants failed to present an expert to vouch for their calculation, and failed to present any evidence as to the numbers of cars painted with AWX may still be on the road.[6]

In other words, and as in the *Braun* case, Defendants' damage calculation is the work of speculation, <u>but more so</u> because Defendants' calculation impermissibly presupposes what some third parties may or may not do. And because these damages are wildly speculative and not compensable, this Court should enter judgment as a matter of law in favor of Sherwin-Williams.

### E. Alternatively, This Court Should Order a New Trial Because The Damages Awarded Were Excessive And Not Supported by the Evidence

Once a trial court determines that damages are excessive, it has only two alternatives – either order a new trial, or deny the new trial, conditioned on the prevailing party accepting a remittitur. *Fenner v. Dependable Trucking Co., Inc.*, 716 F.2d 598, 603 (9th Cir. 1983). The standard for remittitur is the same as that for a motion for new trial based on excessive damages. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433 (1996). The proper amount of a remittitur is the *maximum amount of damages that can be sustained by the evidence in the record*. *D & S Redi-Mix v. Sierra Redi-Mix &*

---

[6] Additionally, and as will be further explained, Defendants' Counsel acted improperly by negotiating with the Jury on damages and arguing facts not supported by the evidence.

*Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982). Here, the Jury's award of $3,250,000.00 was excessive based upon the record. Accordingly, Plaintiff submits that if Defendants provided enough evidence to survive this Motion under Rule 50(b), this Court should order a new trial, conditioned upon Defendants' rejection of a remittitur.

Here, the only possible evidence of compensable damages are the unpaid warranty claims which Defendants have submitted to Sherwin-Williams, which are $106,357.07.[7] DE 279, Trial Tr. Day 3 at 309:9-14; DX 563.[8] As previously discussed, Defendants' theory presupposes that all 10,000 cars painted with AWX will need to be repainted at an average cost of $2,000 to $3,200 per vehicle. This cost continuum is based on the statistically insignificant sample size of 40 vehicles Defendants have repainted since the start of this lawsuit. Defendants conceded that they do not know if all 10,000 cars need to be repaired, and submitted no evidence. *E.g.* DE 280, Trial Tr. Day 4 at 53:18-55:13. Defendants also conceded that if there were no defects on the vehicle (e.g. dieback), then a repair would be unwarranted. *E.g.* DE 280, Trial Tr. Day 4 at 53:18-55:13. Defendants also put forth no evidence as to whether all 10,000 vehicles (some of which were initially painted over seven years before the verdict in 2008) were still even on the road. Finally, Defendants acknowledged that they have not hired an expert to verify or attest to their calculation. *E.g.* DE 279, Trial Tr. Day 3 at 337:25-338:2.

---

[7] Plaintiff submits that Defendants' so-called reputational damages cannot support the damages award.  While a fraud plaintiff may recover damages for reputational harm, such damages must be demonstrated with reasonable certainty. *Hardisty v. Moore*, 2015 WL 6393884, at *14 (S.D. Cal. Oct. 22, 2015).  For example, reputation damages may be proven through expert testimony (*Fontana Products Inc. v. Spartech Plastics Corp.*, 6 F. App'x 591, 595 (9th Cir. 2001)), testimony from others as to the plaintiff's standing in the community (*Sanders v. Walsh*, 219 Cal. App. 4th 855, 873 (Cal. Ct. App. 2013)); or even through a loss of customers (*Sanders v. Walsh*, 219 Cal. App. 4th 855, 873 (Cal. Ct. App. 2013)). Here, Defendants presented no evidence regarding its alleged loss of reputation.

[8] This figure is calculated by subtracting the cost of the paid warranty claims from the total dollar amount stated in the supplemental response to Interrogatory No. 7 on DX 563.

From these evidentiary holes, the Jury apparently concluded that an award of $3,250,000.00 on the Fraud Claims was proper. Assuming a cost of $3,200.00 per vehicle to repair, the Jury apparently found that 1,015 cars will need to be repainted, and assuming a cost of $2,000.00 per vehicle, the Jury found that 1,625 cars will need to be repainted. <u>There is no evidence anywhere in the record to support this conclusion.</u>

At trial, Defendants have presented anecdotal testimony that approximately 100 complaints/re-do's were made during the life of the Supply Agreement. However, Defendants have repeatedly affirmed throughout this lawsuit that they are not seeking compensation for these pre-lawsuit repaints. *E.g.* DE 223 at 3.

Additionally, Defendants presented generic testimony that some 50-65 others are waiting to have their cars inspected and repaired. *E.g.* DE 279, Trial Tr. Day 3 at 309:15-310:8. Defendants presented no evidence as to the cost to repair these vehicles, whether these vehicles in fact needed to be repainted, or whether these cars were even painted with AWX in the first place. In short, Defendants have never previously disclosed these vehicles, and could only testify in generalities. Accordingly, these claims are not compensable. *See Green Wood*, 156 Cal. App. 4th at 777-78. But even if the 100 pre-termination complaints and the 50-65 future claims are compensable, which they are not, <u>this does not amount to 1,000+ repaints to support the $3,250,000.00 damage award</u>. Accordingly, this Court should remit the damages award to $106,357.07.[9]

### 1. The Damages Award on the Fraud Claims Provide Redress for the Same Injury and thus Constitute a Double Recovery

Alternatively, if this Court concludes that Defendants provided enough evidence to sustain a larger damages award, this Court should nonetheless cap recovery on the three Fraud Claims at $1,250,000, total. It is an undeniable truth that litigants are not entitled to

---

[9] As Plaintiff will demonstrate more fully, this verdict was the product of improper conduct. Throughout closing, counsel advocated that the compensatory damage award would NOT go to Mr. Tyczki, but would be used to repaint vehicles. In other words, the Jury was misled that money awarded would be put into escrow for third party customers.

MOTION FOR JUDGMENT AS A MATTER OF LAW
CASE NO. 13-CV-1946 LAB (WVG)
CASE NO.  13-CV-1947 L (RBB)

a double recovery. "Regardless of the nature or number of legal theories advanced by the plaintiff, [he or she] is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence. *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1032 (9th Cir. 1999) (*quoting Tavaglione v. Billings*, 4 Cal.4th 1150, 1158–59 (Cal. 1993). "Double or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited." *Tavaglione*, 4 Cal. 4th at 1159. Where damage awards are duplicative, the Court should modify the judgment by striking the duplicative damage award. *See DuBarry Internat., Inc. v. Sw. Forest Indus., Inc.*, 231 Cal. App. 3d 552, 578 (Cal. Ct. App. 1991) (modifying judgment to strike duplicative compensatory damages). "Whether a jury award is duplicative is a legal question." *Pac. Fuel Co., LLC v. Shell Oil Co.*, 416 F. App'x 607, 610 (9th Cir. 2011).

The damages awarded by the Jury for each of the three Fraud Claims (concealment, intentional misrepresentation, and negligent misrepresentation) are duplicative.[10] There is no doubt that the Fraud Claims sought redress for the same injury—the cost to repaint vehicles painted with the AWX product. Indeed, the prayers for relief in Defendants' Counterclaims are <u>identical</u>. *E.g.* SACC ¶¶ 47; 55; & 63.

Accordingly, the Jury in this case awarded damages multiple times for the same element of damages under different theories. That the Jury may have awarded different dollar amounts under different theories is inconsequential. *See, e.g. Pac. Fuel Co., LLC v. Shell Oil Co.*, 416 F. App'x 607, 610 (9th Cir. 2011) (affirming strike of $468,000 concealment award as duplicative of $1,000,000 fraud damages because the claims were presented as a single claims, and based on the same facts and damages). Moreover, that

---

[10] Initially, this Court also seemed to believe that these damage awards were duplicative. *E.g.* DE 281, Trial Tr. Day 5 at 9:13-20 ("I had supposed from the pretrial briefing, Mr. Sorrentino, including yours, that these were simply different ways of asserting the same claim. I mean I can't imagine that it would garner two awards when the -- you know, one conduct is intentional, the next is negligent, even understanding that there's some differences between those claims. But we'll see what they say. And then, you know, it could be subject to any post-trial motions").

17

1   the claims are based on different conduct or mental states is <u>irrelevant</u> – plaintiffs are

2   entitled to <u>one recovery for distinct items of damage</u>. *Ambassador Hotel Co*., 189 F.3d at

3   1032.  There is no evidence presented that Defendants experienced injury as a result of

4   the concealment, which was distinct from the intentional misrepresentation, which was

5   distinct from the negligent misrepresentation.  Defendants sought relief for all of the cars

6   they will allegedly have to repaint under <u>alternative theories</u>.  Accordingly, this Court

7   should strike the damages awarded, and limit recovery to $1.25 million.

8         As previously argued, this Court should remit the damages award to $106,357.07,

9   since Defendants have not established their damages with sufficient certainty.

10  Alternatively, Plaintiff submits that if this Court concludes that Defendants have put forth

11  sufficient non-speculative evidence of their damages, this Court should strike the awards

12  as duplicative, and award $1.25 million, given the repetitive nature of these claims.

13        **F. The Verdict Was Not Supported by The Evidence Presented At Trial, But**

14            **Was a Product of Passion, Prejudice, and Attorney Misconduct**

15        Plaintiff submits that this Court should order a new trial as to liability and damages

16  on the Fraud Claims only because misconduct permeated the trial. "To warrant reversal

17  on grounds of attorney misconduct, the flavor of misconduct must sufficiently permeate

18  an entire proceeding to provide conviction that the jury was influenced by passion and

19  prejudice in reaching its verdict." *Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d

20  1283, 1286 (9th Cir. 1984) (*quoting Standard Oil Co. of California v. Perkins,* 347 F.2d

21  379, 388 (9th Cir.1965)). While the failure to timely object may foreclose relief, constant

22  objections are certainly not required, as they could antagonize the jury. *Hern v.*

23  *Intermedics, Inc*., 210 F.3d 383 (9th Cir. 2000) (*quoting Kehr*, 736 F.2d at 1286. "In

24  [evaluating the propriety of arguments, courts do not] rely on any of the individual

25  instances or types of impropriety. Rather, [courts] have assessed the argument as a whole.

26  *Draper v. Airco, Inc*., 580 F.2d 91, 97 (3d Cir. 1978). "A jury which is prejudiced with

27  respect to its finding of liability is not likely to be free from prejudice in awarding

28  damages." *Id.* Accordingly, a new trial must deal with liability and damages.

1    Among other issues, Plaintiff submits that Defendants' counsel drew highly

2  inappropriate analogies, argued facts that were not in evidence, mischaracterized

3  Defendants' fraud claims, improperly raised home state/wealth bias, and negotiated with

4  the Jury. While this Court sustained Plaintiff's objections, Plaintiff could not object to

5  each and every instance for fear of further inflaming the Jury. Of the ten hours

6  Defendants were allotted, two hours were dedicated to Defendants' summation. Plaintiff

7  submits that the confluence of these arguments inflamed the Jury against Sherwin-

8  Williams, resulting in the verdict. Counsel's misconduct included the following:

9  <u>Drawing inappropriate analogies</u>

10  • During closing argument, Defendants' counsel compared Sherwin-Williams to The

11    Ford Motor Company's conduct in the Pinto Case from the 1970s. DE 280, Trial Tr.

12    Day 4 at 203:14-204:3. This Court described Defense Counsel's statements as "over

13    the top" and "more than rhetorical flourish." DE 280, Trial Tr. Day 4 at 244:20-22.

14    Additionally, this Court recognized that "the difference is between automobiles that

15    were blowing up and immolating people and between paint that's not as shiny as it

16    should be. And reasonable people aren't going to see a connection between those

17    things unless they're inflamed in some way. That's the vice here. That's the vice with

18    it." DE 280, Trial Tr. Day 4 at 245:3-8. Plaintiff requested and received a curative

19    instruction. DE 280, Trial Tr. Day 4 at 243:21-246:13.

20  <u>Arguing facts that were plainly false</u>[11]

21  • Counsel implied that Sherwin-Williams prevented the Jury from viewing evidence.

22    Counsel stated that the Toyota Sequoia (the vehicle at the center of Defendants'

23    claims) must be seen in person to see the dieback, and while Defendants wanted the

24    Jury to see the vehicle, <u>Sherwin-Williams somehow obstructed the Jury from viewing</u>

25    <u>it</u>. DE 280, Trial Tr. Day 4 at 266:12-267:10. Importantly, Defendants <u>never requested</u>

26

27  [11] Unfounded or inaccurate statements may also serve as grounds to order a new trial.
   *Hopson v. Riverbay Corp.*, 190 F.R.D. 114, 122 (S.D.N.Y. 1999); *Anheuser-Busch, Inc.*
28  *v. Nat. Beverage Distributors*, 69 F.3d 337, 347 (9th Cir. 1995).

19

a jury viewing of the Sequoia, and accordingly, Sherwin-Williams never objected to a jury viewing. Plaintiff objected to this rhetoric, and the Court reminded the jury that lawyer statements are not evidence. DE 280, Trial Tr. Day 4 at 266:12-267:10.

- Defendants twice argued in closing that the first time Sherwin-Williams tested the effects of humidity on the AWX paint was in 2012. DE 280, Trial Tr. Day 4 at 235:17-235:23; 261:11-262:3. Defendants knew that Sherwin-Williams was only required to produce testing documents on AWX from 2008 to the present. DE 85 at 6. Accordingly, it was reckless to argue that the "first" time that Sherwin-Williams tested for humidity was in 2012, when the limited document production in discovery started in 2008, which is years after AWX was developed and introduced to market.

Arguing facts not in evidence[12]

- Counsel argued facts related to the Qualtech Toners that were not in evidence. In response to Plaintiff's objection, this Court admonished Defendants to not refer to things outside the evidence. DE 280, Trial Tr. Day 4 at 236:16-237:19. Defendants compounded their misconduct and argued their expert was unable to perform any testing because of Sherwin-Williams' conduct. DE 280, Trial Tr. Day 4 at 238:19-22.

- Counsel essentially testified as a percipient witness and vouched for his witnesses. DE 280, Trial Tr. Day 4 at 231:17-25 ("I even drove around. That's how I found Bob Stall Chevrolet, because I'm kind of a Chevy guy, so I said ah, haven't been there in a while, I got to pick up a part, went in there. Hey, what are you guys spraying with. Well, we're spraying with this right now, but we used to spray with that. I said I want to talk to the collision manager, okay, and then I find out this information. That's how that kind of stuff happens. There's no documentation."); DE 280, Trial Tr. Day 4 at 232:25-233:8 ("…like Triston Miller, who said no, I never met him. He's never met me. Shook his hand. Triston Miller's just walk in, tell the truth, I want to ask you a few questions. I asked you a couple on the phone when I first got him on the phone,

---

[12] Reference to extraneous evidence during summation can constitute reversible error. *E.g. Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 210 (3d Cir. 1992).

MOTION FOR JUDGMENT AS A MATTER OF LAW
CASE NO. 13-CV-1946 LAB (WVG)
CASE NO.  13-CV-1947 L (RBB)

1  he had to get off quick. I – I knew what the problem was going to be. I asked him,

2  hey, you got free product too? Yeah, I did. Did you ever get any documentation? No.

3  They come in, they paint the cars? Yeah. Got documentation? No.")

4  • Implying additional evidence was not shown to the Jury. DE 280, Trial Tr. Day 4 at

5  203:6-8 ("We have the documents. We went through documents. There's a lot more

6  documents. We could have been here for probably ten days going through those

7  boxes").

8  • Implying that other body shops had similar problems, but there was no evidence to

9  support this. DE 280, Trial Tr. Day 4 at 241:2-6 ("They didn't just do it to him. They

10  did it to seven body shop owners who showed up and the others who didn't show up

11  and -- look, they can't be that big of a company…")

12  • Counsel argued that the body shop customers who testified did not know about an

13  internal SW survey, but this was unsupported. DE 280, Trial Tr. Day 4 at 258:3-16.

14  • Counsel also argued that Sherwin-Williams agreed to pay for warranties at Clymer's

15  shop. DE 280, Trial Tr. Day 4 at 230:22-231:1. This fact was not in evidence due to

16  sustained objections. DE 280, Trial Tr. Day 4 at 82:8-83:17. This fact is also irrelevant

17  and misleading because Defendants implied that Sherwin-Williams has acknowledged

18  its problems, when the purpose of a settlement is to resolve disputed claims.

19  • Counsel argued that painter Arredondo was fired because Sherwin-Williams told

20  Defendants that their painters were to blame. This fact was not in evidence. *C.f.* DE

21  280, Trial Tr. Day 4 at 62:2-6; 216:6-14.

22  Mischaracterizing Defendants' Fraud Claims[13]

23  • Argued that the paint labels constituted "fraud, trickery, and plain old dishonesty." DE

24  280, Trial Tr. Day 4 at 218:17-219:5. This claim was never raised.

25  _____

26  [13] It is improper to mischaracterize claims for the purposes of inflaming the jury. *See e.g.*
*United States v. Elias*, 285 F.3d 183, 191 (2d Cir. 2002) (improper to mischaracterize
27  mistaken identity claim as attack on a battered victim). Similarly, here, the actionable
fraudulent inducement has been limited to three discrete statement classifications,
28  contrary to Defendants' counsel's representations.

21

- Argued that the circumstances of the guaranty constitute "fraud and trickery," and that the guaranty was signed two weeks later. DE 280, Trial Tr. Day 4 at 220:14-20; 222:8-14. Defendants have never raised a fraud claim with the Guaranty.

- Argued that the $80k/40k switch was fraud: "John Tyczki signed this in reliance upon all of those promises, not -- not the least of which was he thought he was going to get $80,000, and by the time he found out he was getting 40, it was -- he had spent 120 and he was stuck. He would have never opened the shop. Never would have opened the shop." DE 280, Trial Tr. Day 4 at 221:14-18.

- Invited the Jury to disregard the jury instructions DE 280, Trial Tr. Day 4 at 213:10-16 ("Now, the Court has ruled that it says what it says, and being intellectually honest, I will tell you I understand what the Court is saying. I can understand. And I am being intellectually honest about it, and I say okay, Judge, I agree. But look at the language because the language explains why John Tyczki believed that everything was included…").

- Argued that purchases of all products went towards the completion of the Supply Agreement. DE 280, Trial Tr. Day 4 at 221:25-222:7. This Court has already held that this is not what the Supply Agreements says. DE 173 at 6.

- Argued that it was fraud that Sherwin-Williams told Defendants that the new shop had buy from Sherwin-Williams. DE 280, Trial Tr. Day 4 at 221:25-222:7. This claim is barred by the parol evidence rule, and has never served as a basis of the Fraud Claims.

- Defendants argued that it was "fraud" that Sherwin-Williams' damages under the Supply Agreement were not limited to a return of the Advance. DE 280, Trial Tr. Day 4 at 222:15-223:2. Defendants again repeated the argument that Plaintiff's damages were limited to a return of the Advance. DE 280, Trial Tr. Day 4 at 257:8-13. This argument has been rejected by this Court. DE 173 at 6.

<u>Wealth Disparity Bias</u>[14]

- Counsel inflamed the passions of the jury by referencing wealth disparity. DE 280, Trial Tr. Day 4 at 217:25-218:3 ("okay -- this is really important because it tells you how Sherwin-Williams got to be this multibillion dollar company -- it says, The company makes no warranties of any kind relating to the paint systems"); DE 280, Trial Tr. Day 4 at 232:9-11 ("This is a 10 or 20 -- they're a multibillion dollar company, and they don't have even a simple policy like that?"); DE 280, Trial Tr. Day 4 at 233:9-12 ("This is not a sophisticated operation, these small body shops. It's not sophisticated. They're asking them whether they did documentation when the 10, $20 billion company didn't do documentation"); DE 280, Trial Tr. Day 4 at 233:9-12 ("You're the guys with the getting $10 billion a year out of your sales. Your policies, you don't have paperwork, you don't have -- your -- your -- you want to blame the body shop owners, the little body shop owners?"); DE 280, Trial Tr. Day 4 at 264:22-25 ("They keep talking about quality control at these little body shops. Well, they're a multibillion dollar company. Why didn't they have quality control? This is evidence. This is evidence.")

<u>Improperly commented on discovery issues</u>

- During the cross-examination of Dr. Brown on Day 4, Defendants displayed DX 307, which contained properly redacted privileged communications, and asked whether the drafts were "top secret." DE 280, Trial Tr. Day 4 at 100:13-101:19. This Court sustained Plaintiff's objection on privilege and relevance grounds. DE 280, Trial Tr. Day 4 at 100:13-101:19. Thereafter, Counsel compounded his misconduct by commenting on the privileged redactions in his closing argument. DE 280, Trial Tr. Day 4 at 211:12-17 ("And then he did six or seven, eight, or nine drafts of his report that we had to work off of, which, by the way, didn't say what he said. And then when

---

[14] References to wealth disparity are also inappropriate. *Draper v. Airco, Inc*., 580 F.2d 91, 95 (3d Cir. 1978)

MOTION FOR JUDGMENT AS A MATTER OF LAW
CASE NO. 13-CV-1946 LAB (WVG)
CASE NO.  13-CV-1947 L (RBB)

I asked about the -- you know, how that was done, oh, it was between emails with me and my attorney. Look. I think we're working with the NSA. Everything's redacted.").

- Counsel referred to AEO designations to imply that Sherwin-Williams acted underhandedly. DE 280, Trial Tr. Day 4 at 257:25-258:16; 260:8-16. The designations were made pursuant to a stipulated protective order. DE 35.

- Defendants also commented on documents that they ostensibly don't have, but in reality, they never requested in discovery. *E.g.* DE 280, Trial Tr. Day 4 at 232:12-16 (commenting on lack of documentation for months of free clear coat allegedly provided to a third-party witness).

<u>Hometown Bias</u>[15]

- Throughout the closing, Defendants inflamed the passions of the jury through hometown bias. DE 280, Trial Tr. Day 4 at 218:17-219:5 ("Even the paint label. If that's not fraud, if that's not trickery, if that's not just plain old dishonesty, then what is?…Oh, but it's okay under the laws of the state of Ohio. Well, I say, I say when it comes to fraud -- maybe it is for contract, maybe that's the way they do business there; but I say in California, it's not the way we do business. It's not the way we treat each other."); DE 280, Trial Tr. Day 4 at 217:16-22 ("In the next column near the bottom -- and of course we have the old laws of the state of Ohio -- I guess business is tough in Ohio because I've never seen anything like this…"); DE 280, Trial Tr. Day 4 at 241:13-17 ("The only way is to punish them for punitive damages and -- for their conduct because if you don't, if you don't set a standard now here in San Diego right now, this is going to continue").

<u>Jury Nullification/Negotiation</u>

- With respect to damages, Defendants' counsel improperly argued that money awarded as compensatory damages would not go to John Tyczki, but would instead go to third-party customers. DE 280, Trial Tr. Day 4 at 239:11-243:2 ("But here's the key, and

---

[15] Arguments which incite a hometown bias are improper. *E.g. Whitehead v. Food Max of Mississippi, Inc.,* 163 F.3d 265, 277 (5th Cir. 1998).

MOTION FOR JUDGMENT AS A MATTER OF LAW
CASE NO. 13-CV-1946 LAB (WVG)
CASE NO.  13-CV-1947 L (RBB)

this is really the most important thing to remember about what I'm asking you to do. This money's not going to John Tyczki. This money is going to fix those cars…. This isn't money for him. This is money to fix the cars, period. And whatever you give will be money to fix the cars.").

- Defendants further argued that <u>only</u> punitive damages would go to Mr. Tyczki. DE 280, Trial Tr. Day 4 at 239:11-243:2 ("The other item of damages is punitive damages. Now, punitive damages are something that will go to John Tyczki.").

- This Court <u>sustained Plaintiff's objection</u>: "Hold on a second. That's improper argument. The damage award is limited to the defendant." DE 280, Trial Tr. Day 4 at 239:11-243:2.

Plaintiff submits that when these statements are taken as a whole, the conclusion is inescapable that the verdict was the product of inflamed passions and prejudices, and repeated misrepresentations about what Defendants have actually pled in this case. Accordingly, a new trial on liability and damages as to the Fraud Claims only is warranted.

## V.   CONCLUSION

For the foregoing reasons, Sherwin-Williams requests this Court enter judgment in its favor, or in the alternative, remit Defendants damages to $106,357.07, conditioned on Defendants' rejection of a new trial, or in the alternative, order a new trial on liability and damages as to the Fraud Claims.

Respectfully submitted,

DATED: January 15, 2016          YOUNG BASILE HANLON &
                                  MACFARLANE, P.C.

By:   _/s/ Jeffrey D. Wilson_
      Jeffrey D. Wilson
      Michael M. Jacob
      Eddie D. Woodworth
      Attorneys for Plaintiff, Counter-Defendant