UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE SHERWIN-WILLIAMS COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JB COLLISION SERVICES, INC. d/b/a J & M AUTOBODY d/b/a EL DORADO COLLISION *et al.*,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No.: 13-CV-1946-LAB(WVG)<br><br>**ORDER ON THIRD PARTY INTERVENOR Z-BEST BODY AND PAINT SHOPS, INC.'S MOTION FOR ORDER TO INTERVENE TO MODIFY JUNE 20, 2014 PROTECTIVE ORDER**<br><br>**[ECF No. 354.]** |

Z-Best Body and Paint Shops, Inc. ("Z-Best") is the plaintiff in a lawsuit currently pending in the Central District of California against The Sherwin-Williams Company. (*Z-Best Body and Paint Shops, Inc. v. The Sherwin-Williams Company, et al.*, C.D. Cal. No. 16-CV-2398.) Z-Best now seeks to intervene in the instant case to request that this Court modify the Protective Order that remains in effect in this case. (ECF No. 354.) Sherwin-Williams opposes the motion. (ECF No. 356.) Having considered the matter on the papers, Z-Best's Motion to intervene to modify the Protective Order is GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Instant Case

In the underlying litigation, Plaintiff Sherwin-Williams and Defendant JB Collision entered into a supply agreement in September 2008 whereby JB Collision agreed to buy all of its paints and coatings from Sherwin-Williams until the amount of its purchases equaled $1,300,000. (Sherwin-Williams Compl. ¶¶ 6-7, ECF No. 1.) In return, Sherwin-Williams agreed to sell its products to JB Collision at a discount with a $275,000 advance. (*Id.* at ¶ 8.)

In early 2013, JB Collision stopped buying all of its paints and coatings from Sherwin-Williams. (*Id.* at ¶¶ 10-11.) As a result, Sherwin-Williams brought suit against JB Collision for breach of contract on August 20, 2013. (*Id.*) JB Collision counterclaimed contract and tort causes of action that in essence alleged Sherwin-Williams' products were subpar. (*See* JB Collision Countercl., ECF No. 7.)

During the discovery process, the parties jointly requested and this Court enter a general protective order ("Protective Order") which provides "no document . . . produced pursuant to FRCP 26, in response to FRCP 33 Interrogatories, FRCP 34 Requests for Production, or any non-party in response to a party subpoena, which is designated as 'Confidential,' shall be disclosed . . . ." (ECF No. 35 at 2.) Accordingly, neither Sherwin-Williams nor JB Collision could disclose covered documents without observing the terms of the Protective Order. Z-Best was not a party to the Protective Order.

During a four-day trial in November 2015, a number of protected documents were marked as trial exhibits. (Notice of Subpoena 2, ECF No. 350.) Following the trial, the Court ordered the return of the exhibits and ordered that the parties continue to comply with the Protective Order. On August 8, 2016, judgment was entered in favor of Sherwin-Williams for $373,448.70, and in favor of JB Collision for $3,250,000. (ECF No. 282.)

### B. The Case in the Central District of California

Z-Best, which is also a body shop that entered into a supply agreement with Sherwin-Williams, claims to have relied on Sherwin-Williams' misrepresentations

regarding the quality of its paint and was damaged as a result. (ECF No. 354-1 at 6.) On November 21, 2016, Z-Best sued Sherwin-Williams in the Central District of California for breach of a supply agreement. (Walker Decl. Ex. 1, at 2, ECF No. 354-3.) Many of the pleadings filed by Z-Best are virtually identical to those filed by JB Collision in the instant case. (Opp'n at 2.)

On August 2, 2017, Z-Best served a subpoena on counsel for JB Collision seeking "any and all records and documents produced by [Sherwin-Williams] in related Case No. 13-CV-1946-LAB(WVG) and received by [JB Collision] during discovery, including but not limited to, all sets of [Sherwin-Williams'] documents produced." (ECF No. 350-1 at 6.) JB Collision gave notice to this Court of the subpoena and requested instruction on how to proceed. (ECF No. 350 at 1.) This Court affirmed the continued application of the Protective Order and declined to issue an advisory opinion or otherwise intervene in proceedings in another District or interfere with a subpoena issued by a sister court. (ECF No. 352 at 1-2.)

On August 29, 2017, the United States District Court for the Central District of California granted Sherwin-Williams' motion to quash the subpoena. (Walker Decl. Ex. 1, at 6.) Citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1129 (9th Cir. 2003), the court reasoned that "the court that issued the order is in the best position to make the relevance assessment for it presumably is the only court familiar with the contents of the protected discovery."[1] (Walker Decl. Ex. 1, at 5.) Similarly, it found that

---

[1] To clarify, this Court's relevance assessment is only the limited context of modifying the Protective Order—not generally deciding whether future requested discovery is relevant in the litigation pending in the Central District. That determination is wholly separate and will be made, if necessary, on a case-by-case basis by that court. The case in this District has been closed for nearly two years and is not the proper forum in which to wage battles over the relevancy of *specific* items of discovery in an active case pending in another district. The narrow issue before this Court is whether the Protective Order should be modified such that such a battle can even be waged or whether the Protective Order should remain unmodified and thus serve as a barrier to requests for protected discovery.

1 "because the JB Collision Litigation is still pending . . . it would not require significant additional burden and expense for [Z-Best] to seek modification of the [P]rotective [O]rder before the United States District Court for the Southern District of California." (*Id*.) The court also suggested that the subpoena was overbroad because "it would necessarily encompass documents relating to [Sherwin-Williams'] business relationship with JB Collision, who is not a party to the instant action." (*Id*. at 5-6.)

Now before the Court is Z-Best's motion to intervene to modify the June 20, 2014 Protective Order.

## II. DISCUSSION

### A. Permissive Intervention

"On timely motion, the court may permit anyone to intervene who . . . (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(b). Third parties seeking access to a judicial record or modification of a protective order in a civil case may do so by seeking permissive intervention under Rule 24(b)(2). *San Jose Mercury News, Inc. v. Dist. Ct.*, 187 F.3d 1096, 1100 (9th Cir. 1999); *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992) (approving permissive intervention as a method for challenging protective order under Rule 26(c)).

Generally, permissive intervention under Rule 24(b) requires "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Beckman*, 966 F.2d at 473. An independent ground for jurisdiction and a common question of law and fact are not required, however, where the intervenor merely seeks to challenge a protective order. *Beckman*, 966 F.2d at 473-74 (reasoning independent jurisdictional grounds and strong nexus of fact or law unnecessary because party seeks to intervene only for the purpose of modifying a protective order and district court retained the power to do so). A motion for permissive intervention is directed to the sound discretion of the district court. *Beckman*, 966 F.2d at 472.

The Court finds that the motion was timely filed, and permissive intervention is the appropriate method by which to challenge a protective order. The Court GRANTS Z-Best's motion to intervene.

**B.     Access to Sealed Documents**

The Ninth Circuit strongly favors access to discovery materials to meet the needs of parties engaged in pending collateral litigation. *Beckman*, 966 F.2d at 475. "Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003); *Beckman*, 966 F.2d at 475; *see also United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990)*; Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980) ("[W]here an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification."). So long as "reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order so that collateral litigants are not precluded from obtaining relevant material should normally be granted." *Foltz*, 331 F.3d at 1132 (citing *Beckman*, 966 F.2d at 475).

That being said, modification of a protective order will not be automatically granted. Collateral litigants will not be allowed access to discovery materials merely as a means to subvert the limitations of the discovery process in the collateral litigation. *Id.* Collateral litigants seeking to modify a protective order must demonstrate the relevance of the protected discovery to the collateral litigation and its general discoverability in that case. *Id.* Once a relevance determination has been made, the court that issued the protective order must weigh the policy of avoiding duplicative discovery against the countervailing reliance interest of the party opposing modification. *Id.* at 1133.

### 1. Relevance Analysis

The court that issued the protective order should confirm that the protected discovery is sufficiently relevant to the collateral litigation such that "a substantial amount of duplicative discovery will be avoided by modifying the protective order." *Id.* at 1132. Such a determination depends on the "degree of overlap in the facts, parties, and issues between the suit covered by the protective order and the collateral proceedings." *Id.* This is to be a rough estimate; the issuing court is not to embroil itself in the specific discovery disputes applicable only to the collateral suit by deciding whether the collateral litigants will actually obtain the materials. *Id.* at 1133-34 (citing *United Nuclear*, 905 F.2d at 1428).

Here, Z-Best is engaged in litigation against Sherwin-Williams with allegations substantially similar to those involved in the instant case. (Motion at 1.) Z-Best accuses Sherwin-Williams of fraudulently inducing it to continue purchasing Sherwin-Williams' defective products beyond the term of the supply agreement during a period of time overlapping that involved in the instant case's fraud and misrepresentation claims. (Opp'n Ex. B, ECF No. 356-2 at 5.) Both involve claims by body shops against Sherwin-Williams alleging misrepresentations made by Sherwin-Williams regarding the quality of its automotive paint products. Z-Best moved to modify the Protective Order to permit access to the instant case's discovery materials for use in the collateral litigation, arguing that much of the discovery necessary in the Z-Best case has already been produced in the instant action. (P&A at 6.) Sherwin-Williams opposes modification on four grounds.

First, Sherwin-Williams contends that Z-Best's request should be denied because the motion failed to specify concrete changes to the Protective Order. (Opp'n at 4.) However, Z-Best was not required to specify concrete changes to the Protective Order. As the issuer of the Protective Order, this Court makes only a rough estimate of relevance in order to determine whether the order will bar the collateral litigant from gaining access to the discovery already conducted. *Foltz*, 331 F.3d at 1132-33. Any disputes over the ultimate discoverability of specific materials covered by the Protective Order are to be resolved by the court handling the Z-Best case. *Id.* at 1133.

Second, Sherwin-Williams argues that because the Central District Court concluded that Z-Best's Subpoena was overbroad, Z-Best is trying to "do indirectly that which it cannot do directly" and "deprive Sherwin-Williams of the discovery protections set forth in Rule 26." (Opp'n at 5-6.) However, as Sherwin-Williams itself pointed out, this Court "does not decide whether the collateral litigants [here, the parties before the Central District] will ultimately obtain the discovery materials—a decision that is to be made by the collateral courts [here, the Central District of California]." (*Id.* at 5 (citing *In re Dynamic Random Access Memory (DRAM) Antitrust* Litigation, 2008 WL 4191780 at *1) (internal quotations omitted).) This Court decides whether the modifying order will eliminate the potential for duplicative discovery and, if the order is modified, the Central District Court may freely control the discovery process without running up against the Protective Order. *See Foltz*, 331 F.2d at 1133. Sherwin-Williams will not be deprived of its discovery protections.

Third, Sherwin-Williams contends that any modification of the Protective Order, absent the specific consent of the Central District, would be an abuse of discretion. (Opp'n at 6.) However, as the Central District Court pointed out in its order granting Sherwin-Williams' motion to quash Z-Best's Subpoena, the court that issued the Protective Order is in the best position to make the relevance assessment in order to modify the Protective Order because it is familiar with the contents of the Protective Order. (Walker Decl. Ex. 1, at 5.) Indeed, the court acknowledged that modification of the Protective Order was properly administered by this Court, stating that "because the JB Collision Litigation is still pending . . . it would not require significant additional burden and expense for [Z-Best] to seek modification of the [P]rotective [O]rder before the United States District Court for the Southern District of California." (*Id.*) Modification is appropriate so long as a rough estimate of relevance is found and the policy of avoiding duplicative discovery is adequately weighed against the countervailing reliance interest of the party opposing modification.

Finally, Sherwin-Williams argues that the protected discovery materials are not sufficiently relevant because Z-Best's claims have been narrowed to those that occurred after their agreement ended in September 2014—eighteen months after JB Collision stopped buying from Sherwin-Williams. (Opp'n at 7.) Relevance is assessed according to the "degree of overlap in the facts, parties, and issues between the suit covered by the protective order and the collateral proceedings." *Foltz,* 331 F.2d at 1132. A lack of overlap in time does not necessarily amount to a lack of overlap in facts, parties, or issues. As Sherwin-Williams points out, "[m]any of the pleadings filed by Z-Best in the Central District Case . . . copy the pleadings that were filed by [JB Collision] in this matter." (Opp'n at 2.) Z-Best lists numerous documents that are properly protected discovery in the instant case and relevant in the collateral suit: "misrepresentations made by Sherwin-Williams to JB Collision regarding the AWX product line; all claims and complaints made by JB Collision regarding the AWX product line; all Product Quality Reports prepared by Sherwin-Williams regarding JB Collision's claims and complaints regarding the AWX product line; the formulation of the AWX product line; and developmental testing of the AWX product line." (Reply 4-5, ECF No. 357.) These documents appear to be relevant as to Sherwin-Williams' knowledge of the defective paint, as to its misrepresentations regarding the quality of the paint, and that other body shops were having analogous problems with the paint.

Z-Best has offered sufficient basis for this Court to find a rough estimate of relevance such that duplicative discovery may be avoided. The court overseeing the collateral litigation can settle any disputes as to whether particular documents are discoverable or admissible in that litigation.

### 2. Reliance Interest

Once a relevance determination has been made, the court that issued the protective order must weigh the policy of avoiding duplicative discovery against the countervailing reliance interest of the party opposing modification. *Foltz,* 331 F.2d at 1133. "[R]eliance will be less with a blanket [protective] order, because it is by nature overinclusive."

*Beckman*, 966 F.2d at 476. This is because a party seeking protection of the court by means of a blanket protective order typically does not make the required Rule 26(c) "good cause" showing for any particular documents. *Id.* In such a case, "[a]ny legitimate interest . . . in continued secrecy as against the public at large can be accommodated by placing [the collateral litigants] under the same restrictions on use and disclosure contained in the original protective order." *United Nuclear*, 905 F.2d at 1428; *see also Beckman*, 966 F.2d at 476.

In a footnote, Sherwin-Williams argues that its "rights (1) to assert discovery challenges available under Rule 26 to Z-Best's discovery requests in the Central District case, and (2) under the [P]rotective [O]rder entered in this case are placed at risk by this Motion." (Opp'n at 5 n.3.) As noted above, if the Protective Order is modified, the Central District of California will decide whether Z-Best ultimately obtains the discovery materials without running up against the Protective Order in this case. *See Foltz*, 331 F.2d at 1133. Z-Best's right to assert Rule 26 discovery challenges is not in peril.

Sherwin-Williams did not make a particularized showing of good cause with respect to any individual document produced under the blanket Protective Order, therefore any argument of reliance on the Protective Order is an insufficient reason not to modify it. Particularly with regards to those records marked as trial exhibits in open court and which were the primary focus of argument to the jury, as the Ninth Circuit strongly favors access to such court records. *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (recognizing strong presumption in context of civil trial). Any information Sherwin-Williams wants protected can be protected by placing Z-Best under the same use and disclosure restrictions contained in the Protective Order. As it appears that a protective order will be instituted in the collateral litigation, any documents subject to this Court's Protective Order can also be protected by the protective order in that litigation. (Opp'n at 4.) The Court finds the policy of avoiding duplicative discovery outweighs any countervailing reliance interest of Sherwin-Williams.

### III. CONCLUSION

For the foregoing reasons, Z-Best's motion to intervene for modification of the Protective Order is GRANTED. The June 20, 2014 Protective Order (ECF No. 35) is hereby modified to allow access solely to the parties to *Z-Best Body and Paint Shops, Inc. v. The Sherwin-Williams Company, et al.* pending in the United States District Court for the Central District of California for the purposes of litigating that action. This Order is conditioned on the filing of a protective order in the collateral case and in no way limits the collateral court's ability to decide whether the litigants before it should ultimately obtain the specific discovery materials.

DATED: December 5, 2017

Hon. William V. Gallo
United States Magistrate Judge